United States District Court
District of South Dakota
Southern Division

Stanley J Maday, Plaintiff,                                    civil no.  17-4168

v.

Robert Dooley,                                          verified complaint

Dennis Kaemingk,                                       with jury demand

Mary Carpenter,

Jennifer Stanwick-Klimek,

Rebecca Schieffer,

Alejandro Reyes,

Brent Fluke,

Josh Klimek,

Travis Tjeerdsma,

Tammy DeJong,

Michael Joe Hanvey,

Brad Adams,

Stephan Schroeder,

Misty Totsma-Hanvey,

Lindsey Rahlass,

Robin Myer,

Candice Fejfar,

Dayna Klawitter,

Dennis Cropper,

Thomas Huitema,

Michael Meyerx,

Lori Stratman,

Mike Grosshuesch,

Nicole St Pierre,

Muriel Namminga,

Catherine Schlimgen

①

CBM Food Services,

Unknown CBM Food Services employees,

Unknown South Dakota DOC employees,

Unknown South Dakota DOH employees,

Jon E. Litscher,

Katharine A. Ariss,

Thomas B. Maloney,

Unknown Wisconsin DOC employees, Defendants.

Stanley J Maday deposes the following under penalty of perjury:

## I. Introduction

This is a verified civil rights complaint brought by the Plaintiff, Stanley J Maday, pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights under the Bill of Right and Amendment Fourteen and the Americans with Disabilities Act.

## II. Jurisdiction

1. This court has jurisdiction over Plaintiff's claims of constitutional violations pursuant to 28 U.S.C. § 1331(i) and § 1343.
2. This court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C. § 1367.
3. All of the events described herein occurred within Mike Durfee State Prison in Springfield, South Dakota.

## III  Parties

### A. Plaintiff

4. The Plaintiff, Stanley J Maday, is a Wisconsin inmate being held in South Dakota for security and safety concerns. Plaintiff was a correctional officer in the state of Wisconsin employed at Columbia correctional Institution in Portage, Wisconsin for 21 years. Plaintiff held the rank of sergeant for approximately 18 of his 21 years of experience.

### B. Defendants

5. Bob Dooley is the Chief Warden at Mike Durfee State Prison and is employed by the South Dakota Department of Corrections, hereafter DOC. He is sued in his individual and official capacities.

6. Dennis Kaemingk is the Secretary of the South Dakota DOC and is employed by the state of South Dakota. He is sued in his individual and official capacities.

7. Doctor Mary Carpenter is the director of the Department of Health, hereafter DOH, Correctional Health Services and is employed by the state of South Dakota. She is sued in her individual and official capacities.

8. Jennifer Stanwick-Klimek is the Deputy Warden at Mike Durfee State Prison and is employed by the South Dakota DOC. She is sued in her individual and official capacities.

9. Rebecca Schieffer is an Associate Warden at Mike Durfee State Prison and is employed by the South Dakota DOC. She is sued in her individual and official capacities.

10. Alejandro Reyes is an Associate Warden at Mike Durfee State Prison and is employed by the South Dakota DOC. He is sued in his individual and official capacities.

11. Brent Fluke was an Associate Warden at Mike Durfee State Prison and is employed by the South Dakota DOC. He is sued in his individual and official capacities.

12. Josh Klimek is a Unit Manager at Mike Durfee State Prison and is employed by the South Dakota DOC. He is directly supervised by his wife Deputy Warden Jennifer Stanwick-Klimek. He is sued in his individual and official capacities.

13. Travis Tjeerdsma was a Case Manager at Mike Durfee State Prison and is employed by the South Dakota DOC. He is sued in his individual and official capacities.

14. Tammy DeJong is a Case Manager at Mike Durfee State Prison and is employed by the South Dakota DOC. She is sued in her individual and official capacities.

15. Michael Joe Hanvey P.A. was the medical provider at Mike Durfee State Prison and is employed by the South Dakota DOH. He has since transferred to South Dakota State Penitentiary in Sioux Falls. He is sued in his individual and official capacities.

16. Brad Adams P.A. is the medical provider at Mike Durfee State Prison and is employed by the South Dakota DOH. He is sued in his individual and official capacities.

17. Doctor Stephan Schroeder was a medical provider at Mike Durfee State Prison and is/was employed by the South Dakota DOH. He is sued in his individual and official capacities.

18. Misty Totsma-Hanvey is the Nursing Supervisor at Mike Durfee State Prison and is employed by the South Dakota DOH. She is sued in her individual and official capacities.

19. Lindsey Bahhass is a nurse at Mike Durfee State Prison and is

④

employed by the South Dakota DOH. She is sued in her individual and official capacities.

20. Robin Myer is a nurse at Mike Durfee State Prison and is employed by the South Dakota DOH. She is sued in her individual and official capacities.

21. Candice Fejfar is a nurse at Mike Durfee State Prison and is employed by the South Dakota DOH. She is sued in her individual and official capacities.

22. Dayna Klawitter is a nurse at Mike Durfee State Prison and is employed by the South Dakota DOH. She is sued in her individual and official capacities.

23. Dennis Cropper is a correctional officer at Mike Durfee State Prison and is employed by the South Dakota DOC. He is sued in his individual and official capacities.

24. Thomas Huttema is a correctional officer at Mike Durfee State Prison and is employed by the South Dakota DOC. He is sued in his individual and official capacities.

25. Michael Meyer is a correctional officer at Mike Durfee State Prison and is employed by the South Dakota DOC. He is sued in his individual and official capacities.

26. Lori Stratman is a correctional officer at Mike Durfee State Prison and is employed by the South Dakota DOC. She is sued in her individual and official capacities.

27. Mike Grosshuesch is a correctional officer at Mike Durfee State Prison and is employed by the South Dakota DOC. He is sued in his individual and official capacities.

28. Nicole St. Pierre was a correctional officer at Mike Durfee State Prison and was employed by the South Dakota DOC. She is sued in her individual and official capacities.

29. Muriel Namminga was the laundry supervisor at Mike Durfee State

Prison and was employed by the South Dakota DOC. She is sued in her individual and official capacities.

30. Catherine Schlimgen is Legal Counsel for the South Dakota DOC and is employed by same. She is sued in her individual and official capacities.

31. CBM Food Services is the meal and commissary provider for the South Dakota DOC. It is sued in its official capacity.

32. Unknown CBM Food Services employees are sued in their individual and official capacities.

33. Unknown South Dakota DOC employees are sued in their individual and official capacities.

34. Unknown South Dakota DOH employees are sued in their individual and official capacities.

35. Jon E. Litscher is the Secretary of the Wisconsin DOC and is employed by the State of Wisconsin. He is sued in his individual and official capacities.

36. Katharine A Ariss is Assistant Legal Counsel for the Wisconsin DOC and is employed by same. She is sued in her individual and official capacities.

37. Thomas P. Maloney is the Library Services and Education Technology Coordinator for the Wisconsin DOC and is employed by same. He is sued in his individual and official capacities.

38. Unknown Wisconsin DOC employees are sued in their individual and official capacities.

## IV. Exhaustion of Remedies

39. Plaintiff has exhausted all state remedies available to him at this time.

## V. Facts
### A. Deliberate Indifference

40. Plaintiff arrived in South Dakota on 12 August 2017 at the Jameson Unit of the South Dakota State Penitentiary in Sioux Falls. I was given a pair of canvas shoes as part of my clothing issue that were too narrow and immediately began to cause blisters which turned into very painful calluses. I sent a kite to the laundry supervisor, whose name is unknown to me at this time, requesting wide shoes. I was sent to laundry a few days later at which time the supervisor denied my request. As a result I continued to develop blisters and very painful calluses.

41. Upon arrival at Mike Durfee State Prison I sent a kite to main laundry again requesting wide shoes. A few days later I was sent to main laundry where the supervisor, Muriel Namminga, measured my foot. She then stated I should have been issued wide at Jameson Unit. I was then supposedly given wide leather shoes with velcro closures.

42. During this process of trying to obtain properly fitting shoes I saw numerous inmates walking around wearing New Balance cross training shoes along with other types of shoes/boots. When I asked about the New Balance shoes I was told they were for diabetic inmates and/or inmates with foot problems.

43. I am being treated as a chronic care inmate with a history of diabetes, hypertension, hypothyroidism, foot problems and respiratory disorders. I also have mobility issues because of my many foot problems which make me a qualified individual with disabilities under the Americans with Disabil-

ities Act (ADA).

44. Since the supposedly wide leather shoes with velcro closures could not be properly secured to my feet I continued to develop blisters and painful calluses on both feet.

45. During a sick call visit at medical on 5 September 2013 I complained to an unknown nurse that the calluses on my feet were extremely painful and asked how I could obtain a pair of New Balance shoes so that I could have a pair of properly fitting shoes. I was told that unit staff had to issue New Balance shoes. Unit staff consist of a Unit Coordinator, a Case Manager and a Unit Manager. Unit staff are not medically trained and should not be involved in medical decisions for necessary and required footwear.

46. I then asked Unit Coordinator Tammy DeJong and Case Manager Travis Tjeerdsma to approve me for New Balance shoes since I was a diabetic experiencing foot problems. They told me I had to be approved for New Balance shoes by medical.

47. At a subsequent chronic care visit, date unknown, with medical staff Michael Joe Harvey and Misty Tolsma-Harvey I again complained of extremely painful calluses and again requested New Balance shoes. Again, despite my complaints of severe pain, I was told that New Balance shoes had to be issued by unit staff

48. I then asked Unit Manager Josh Klimek and Unit Coordinator Tommy DeJong for approval for New Balance shoes explaining that I was a diabetic with foot problems. I was again told that New Balance shoes had to be approved by medical staff.

49. This back and forth game continued for over a year during which time I received no relief from extremely painful calluses on both feet.

50. On 16 November 2014 I went to sick call to again complain of extremely painful calluses to both feet. As of this date I was on my third pair of the supposedly wide leather velcro closure shoes with the same result being extremely painful calluses on both feet. No action was taken by medical staff at this visit.

51. I returned to medical for a sick call visit on 19 November 2014 to again complain of painful calluses to both feet with inflammation and swelling to my right big toe. I again requested New Balance shoes and was again told it was a unit staff responsibility. I was also instructed to wear proper fitting shoes which I had been requesting for over a year by this date. I was seen by an unknown medical staff member at this visit.

52. On 21 November 2014 I was called back to medical for a follow up visit from a complaint of a rash to my lower extremities. Even though I again complained of painful calluses to both feet this issue was not addressed. I left medical without any relief and my complaint was never documented in my chart.

⑨

53. I was called to medical on 24 November 2014 for a visit with the provider, Michael Joe Harvey, with a chief complaint of extremely painful calluses to both feet. I again requested New Balance shoes and was again told that New Balance shoes could only be issued by unit staff. Despite medical staff instructing me to wear proper fitting shoes they were not provided nor prescribed.

54. Went to medical on 3 December 2014 for a sick call visit with a complaint of painful calluses to both feet with an open sore near the callus of my right big toe with drainage and swelling. Was told to continue to monitor the site of the sore. I also renewed my request for New Balance shoes and was again told it was a unit staff decision.

55. I again requested New Balance shoes from Unit Manager Josh Klimek, Case Manager Travis Tjeerdsma and Unit Coordinator Tammy DeJong explaining that I was a diabetic with worsening foot problems. I was again told that I needed an order from medical for New Balance shoes. Diabetics are at risk of amputation due to infected calluses on their feet.

56. On 17 December 2014 I returned to medical for a sick call visit with a complaint of increased pain and tenderness to the callus of my right big toe with a black spot on the callus. The callus also exhibited a reddish purple coloration. I was told by an unknown nurse that my follow up appointment with the provider would be moved up to the next day. My request for New Balance shoes was renewed and I was again told that it was a unit staff responsibility.

57. On 18 December 2014 I returned to medical for a follow up visit with the provider. My chief complaint remained the extreme pain and swelling to my right big toe. As the provider was examining the affected area it began to ooze a significant amount of what was identified as a purulent fluid. The callus was then pared down with a number 10 blade scalpel revealing an ulceration approximately 8mm in width by 2cm in length. The ulcer was then cleaned and Diabicline was applied to the wound. The wound was then dressed and I was instructed to return to medical once a day for two weeks for a dressing change and Diabicline application. It should be noted that Diabicline is a special anti-biotic medicine for use on diabetics. I was also placed on a limited activity restriction for two weeks. After treatment medical staff Michael Joe Hanvey and Misty Tatsma-Hanvey finally emailed Unit Manager Josh Klimek and told him I would greatly benefit from better fitting shoes. If medical staff and unit staff would have addressed this issue when first brought to their attention my pain and suffering would have been avoided.

58. Unit Manager Josh Klimek contacted laundry staff and informed them that I needed New Balance shoes. I was sent to laundry to have my feet measured and New Balance shoes were ordered. I was finally issued a pair of properly fitting shoes about six weeks later when the New Balance shoes arrived. Since I began wearing the New Balance shoes I have not developed any new blisters or painful calluses. The calluses caused by the improperly fitting shoes I was initially issued have begun to go away.

59. At no time did medical or unit staff acknowledge the severe pain I was experiencing in both feet let alone address the issue.

60. During the spring of 2015 the large rec yard adjacent to the West Crawford living unit was opened to inmates for occasional usage. Usage was sporadic due to staff shortages. I began utilizing this rec yard by walking laps. My efforts were hampered due to the condition of the rec yard which included numerous potholes, large rocks, chunks of broken asphalt and generally all around uneven terrain.

61. Shortly after I began walking laps in this rec yard I began to experience pain in my right heel. This pain was identical to the pain I had to deal with when I was diagnosed with Plantar's Fasciitis in Wisconsin prior to my incarceration. I then tried to get rid of this pain by using stretching exercises I was given as treatment at that time. I was unsuccessful in alleviating this pain and it gradually worsened.

62. On 27 July 2015 I went to sick call where I complained of back pain and severe foot pain. I was told to use warm compresses on my back but the pain in my foot was not addressed.

63. During my chronic care visit on 28 July 2015 I told PA Michael Joe Hanvey that I had severe pain in my right heel that was identical to the pain I had during a previous bout of Plantar's Fasciitis. I told him it felt like someone was driving a large nail up into my heel. I also told him the inflammation of the tendons in my foot was so severe that in my previous bout of Plantar's Fasciitis I had to sleep while wearing a walking cast/boot to keep the tendons stretched. PA Hanvey told me there was nothing he could do for my heel pain and I was left untreated despite a complaint of severe pain.

12

64. On 11 September 2015 I went to sick call where I complained of a lesion underneath my left big toe nail and severe pain in my right heel. I was told I would be scheduled for a follow up with the provider by RN Rachel Pravecek-Tysz.

65. On 14 October 2015 I was called to medical for a follow up to my sick call visit of 11 September 2015. I was seen by P.A. Brad Adams at which time we discussed the lesion under my left big toenail and the severe pain in my right heel. I was scheduled for a consult with a podiatrist for the toenail and then given arch support inserts for my heel pain. These arch support inserts were on site and did not have to be special ordered indicating that they could have been provided to me during my chronic care visit in July 2015. I was also scheduled for x-rays of my right heel to rule out a bone spur as the cause of my pain.

66. The evening of 14 October 2015 I was directed to report to the barracks, which is where the x-ray machine is located, so that x-rays of my right heel could be taken. These x-rays showed that a bone spur was not the cause of my right heel pain thereby confirming a diagnosis of Plantar's Fasciitis.

67. On 23 October 2015 my left big toenail was removed for biopsy by Doctor Terence Pederson, DPM, at Avera Medical Group Podiatry clinic in Yankton South Dakota. As a result of this procedure the severe limp I had from Plantar's Fasciitis became worse. I began to develop pain in my right foot other than in my heel. This pain was midway between my toes and my heel on the right side of my foot. This pain worsened over time.

⑬

68. As a result of extreme pain in my right foot the evening of 3 November 2015 I went to sick call on 4 November 2015 and my sick call request was processed by R.N. Lindsey Rohrbas. At this time I told her I had severe pain in a new area of my foot. I requested a cane or crutches and was told they could only be issued with a doctors order. I then requested a medical lay in meal tray so that I didn't have to walk on my foot. I was then told I could report to medical four times a day for protocol Tylenol. At no time was a physical examination of my foot conducted and I was not sent to a hospital for x-rays despite swelling to my foot, a severe limp and a complaint of extreme pain.

69. On 5 November 2015 the pain in my foot was now excruciating so I returned to sick call. My sick call request was processed by R.N. Robin Myer. Again my foot was not examined despite a severe limp and a complaint of excruciating pain. I again requested a cane or crutches and again I was told they could only be issued with a doctors order. I was reminded of the order for protocol Tylenol and my medical lay in meal tray was extended for another 24 hours. At no time did Tylenol alleviate the pain in my foot and I was not sent to a hospital for x-rays.

70. It should be noted that protocol Tylenol requires an inmate to walk to medical four times a day at med pass. As I am diabetic I would have to report to medical four other times a day to check my blood glucose levels. The medical building is about 200 yards away from the West Crawford living unit. It is accessible by walking on an uncovered side walk which is exposed to the elements (usually rain and snow at this time of year).

71.  On 6 November 2015 I went to sick call because the pain in my foot was still unbearable and the swelling was affecting the fit of my shoe. My sick call request was processed by RN Candice Fejfar. During this visit I was finally asked to remove my shoe so that my foot could be examined. The swelling to my foot was so severe that I was not asked to remove my other shoe for comparison. During this visit I asked RN Fejfar if it was that I had a stress fracture in my foot. Her response to my question was to shrug her shoulders and state "I don't know." When I asked RN Fejfar if it would help if I put ice on my foot she replied "It couldn't hurt." I again requested a cane or crutches and again was told they could only be issued with a doctor's order. I was reminded of the order for protocol Tylenol and my medical lay in meal tray was extended through the weekend because sick call is not available on the weekends. Once again, despite swelling to my foot, a severe limp and a complaint of excruciating pain I was not sent to a hospital for x-rays or treatment. At no time did Tylenol alleviate the pain I was experiencing.

72.  On 6 November 2015 upon arrival back on my living unit after my sick call visit I attempted to get ice for my foot but was denied by Corporal Dennis Cropper because I did not have a current medical order.

73.  On 9 November 2015 the pain in my foot was still unbearable so I again reported to sick call. My sick call request was processed by RN Robin Myer. My foot was not examined and my request for a cane or crutches was again denied. My medical lay in meal tray was extended and I was reminded that Tylenol was available. Even though I had swelling to my foot, a severe limp and a complaint of extreme pain I was not sent to a hospital for treatment.

74. On 10 November 2015 I returned to sick call because I was still having excruciating pain in my foot. My sick call request was not processed as I had finally been scheduled for a follow up with a provider. About eight hours later I was called back to medical for an appointment with Doctor Stephan Schroeder. Dr Schroeder ordered x-rays on site in the barracks and extended my medical lay in meal tray pending the results of the x-rays. I was not given a cane or crutches despite swelling to my foot, a severe limp and a complaint of debilitating pain.

75. The evening of 10 November 2015 I was directed to report to the barracks for x-rays. The barracks is about 250-300 yards away from West Crawford living unit. It is accessible by traversing an uncovered sidewalk and roadway exposed to the elements (usually rain, snow and ice this time of year). After the x-rays were taken I returned to West Crawford living unit.

76. My x-rays were read by Doctor Daniel Fritz on 11 November 2015 at 10:24 a.m. where he clearly noted I had an acute non-displaced fourth metatarsal shaft fracture. 11 November 2015 was a Wednesday, yet no action was taken until Friday 13 November 2015 regarding the results of my x-rays.

77. The morning of 13 November 2015 I was told to report to medical. During this visit I was told by P.A. Michael Joe Hanvey I had an acute stress fracture of the fourth metatarsal of my right foot. I was then emphatically and repeatedly told to stay off of my foot or risk further injury. I was given a scrip for Tylenol and issued a pair of used mismatched crutches of unequal length. I was then placed in a walking cast/boot which, ironically enough, was identical to the boot I was issued in Wisconsin for treatment of Plantars Fasciitis.

I was then told I would be scheduled for a visit with a podiatrist in
Yankton, South Dakota.

78. On 25 November 2015 I was brought to Yankton, South Dakota where I was
seen by Doctor Terence Pederson, DPM at Avera Medical Group Podiatry Clinic.
When I was shown the x-rays of my foot it looked as if the bone had shattered.
During this visit I was told of the need to stay off my foot when not wearing
the walking cast/boot as it increased the risk of displacement and the possib-
ility of the adjoining metatarsal also fracturing. I was told that if I used
my foot without the walking cast/boot the bone would not heal. Dr Pederson
stated that it was probable that the stress fracture was caused by the severe
limp I had from my Plantars Fasciitis not being treated for so long. I
was also told that walking on my foot while wearing the walking cast/
boot and also using the arch support insert was permissible.

79. Due to the severity of the fracture in my foot my convalescence took about 12
weeks. During this time I was constantly hindered by Corporal Cropper whenever I
tried to get ice for my foot. Despite wearing a walking cast/boot and having to
use crutches I was told by Corporal Cropper that I could only get ice when the
dayhall was open. It should be noted that the dayhall was a virtual obstacle
course due to the large number of inmates using it. Corporal Cropper justified
his disregard for my safety by stating he wasn't going to give me any
special treatment even though I had a med order for ice. I told him I
wasn't looking for any special treatment just compliance with the
medical treatment I had been prescribed. Corporal Cropper was the
only staff member to hinder my attempts to get ice for my foot.

17

80. Even though I was told to stay off my foot when not wearing the walking cast/boot I was not given access to a handicap accessible shower during my convalescence.

81. On or about 25 March 2016, during a shakedown of my room, Corporal Cropper confiscated my medically ordered arch support inserts. When I informed Corporal Cropper that I had a med order for arch support inserts he ignored me and refused to return them. A few days later when I asked Corporal Cropper where my arch support inserts were he stated that he threw them away because I didn't need them since all I do is sit around all day. When I addressed this issue with Unit Manager Josh Klimek he said he would look into it. After about a week I again asked Unit Manager Klimek about my arch support inserts to which he replied he was waiting for medical to get back to him. This is just another example of deliberate indifference by Unit Manager Klimek because all medical orders and appliances are listed on the Comprehensive Offender Management System (COMS). During this waiting period I began to develop a constant ache at the site of the fracture in my foot. The inflammation of my Plantars Fasciitis in my right foot also returned resulting in a severe limp in my gate. On 7 April 2016 a new pair of arch support inserts were issued from medical.

82. On or about 5 July 2016 I attended sick call with a complaint of increased inflammation and pain of my Plantars Fasciitis and a constant ache at the site of the fracture in my right foot. I was given a handout with a regimen of various stretching exercises and told the exercises would speed up the healing process. One of the exercises included using a can of frozen juice concentrate placed on the floor and rolled along the bottom of my foot to stretch

the tendons. Since I did not have access to a can of frozen juice concentrate I substituted a plastic 18 ounce peanut butter jar filled with water and frozen in the freezer behind the officer's desk in West Crawford living unit. Case Manager Tammy DeJong wrote on the lid of the peanut butter jar that this practice was approved by her per a medical order. Corporal Cropper took personal offense to this because an inmate item was taking up space normally occupied by his many food items. Corporal Cropper told me that inmate items were not allowed in "his" refrigerator. On or about 20 July 2016 Corporal Cropper threw this improvised medical device in the trash even though it was approved by Case Manager DeJong. This action, taken by Corporal Cropper, was an act of deliberate indifference toward my medically ordered treatment. When I complained of this incident to Unit Manager Josh Klimek he told me the exercises were not a med order but only a suggestion. Even though Case Manager Tammy DeJong had already determined that this exercise regimen was a med order Unit Manager Josh Klimek overruled this in order to excuse and condone Corporal Cropper's actions. Plaintiff was exhibiting full compliance with this regimen and in his opinion the exercise in question was the most beneficial.

83. On 9 August 2016 I reported to medical for a chronic care visit with P.A. Brad Adams. At this appointment I asked him if it was normal to have constant pain at the site of a fracture after it was supposed to have healed. He stated that it was not unheard of for a patient to experience pain at the site of a fracture after it had healed. As a result of the explanation given by P.A. Brad Adams I did not pursue further action towards the pain in my foot until it began to worsen.

84. On 7 September 2016 I reported to sick call with a complaint including three areas of concern. The pain in my foot at the site of the fracture was getting worse, I had an infection of some type on my neck near my throat and I was suffering from stabbing pain in the first knuckle of both index fingers. Even though I told R.N Dayna Klawitter the pain in my foot was in the exact same spot as the fracture from October/November 2015 I was given stretching exercises for my ankle. I was then told I would be scheduled for a follow up with the provider.

85. Although I went to sick call on 7 September 2016 with a complaint including three areas of concern (constant pain in my foot, infection to my neck and stabbing pain in both index fingers) the only follow ups I received were related to the infection on my neck with visits to medical on 12 and 16 September. I continued to perform the exercises I was given despite the fact that they provided no relief to the constant pain in my foot. Due to disorganized lines of therapeutic responsibility I was never called back to medical for a follow up for the pain in my foot.

86. On 7 February 2017 I reported to medical for a chronic care visit with P.A. Brad Adams. During this appointment I complained of constant pain in my foot at the site of the stress fracture. I told P.A. Brad Adams that I had complained of this during a sick call visit on 7 September 2016 but was never called back for a follow up. Again due to disorganized lines of therapeutic responsibility I was denied treatment. This is just another example of how medical staff only treat symptoms instead of addressing the cause of an issue. Since I have a history of arthritis P.A. Brad Adams ordered X-rays be taken of my foot.

(20)

87. On 10 February 2017 I was directed to report to the barracks for x-rays. This involved a trip of about 250 - 300 yards over uneven ice and snow covered terrain.

88. On or about 13 February 2017 during a visit to medical to check my blood glucose levels I was told by RN Rachel Aravecek - Tycz that she had a walking cast/boot for me. When I asked her what the boot was for she replied that she didn't know what it was for only that she had orders to give one to me. The walking cast/boot was too small for me. It left all of my toes hanging over the front edge of the walking cast/boot exposing them to further harm or other injury. Since the boot did not fit I left medical without any type of support for what turned out to be an aggravation of the stress fracture in my right foot. I was also not issued a cane, crutches or a wheelchair. I was not provided meals to my unit. Despite the fracture in my foot I was still required to walk everywhere unassisted. This included trips off of my living unit for meals and trips to medical to check my blood glucose levels. Again, the medical building is about 200 yards away from my living unit and the chow hall is an additional 50-100 yards further away. Both venues are accessible by walking on an unsheltered sidewalk and roadway, exposed to the elements, which are ice and snow covered at this time of year.

89. On 15 February 2017 I was called to medical for a follow up visit to the x-rays taken on 10 February 2017. I was seen by P.A. Brad Adams. I was then told the stress fracture to the fourth metatarsal of my right foot was now worse with a partial displacement. During this visit my foot was placed in a home made splint with two ace wraps because medical

21

did not have a properly fitting walking cast/boot in stock. I was also finally issued a pair of used mismatched crutches of unequal length. During this visit P.A. Brad Adams told me that my blood work revealed that I was suffering from vitamin B12, vitamin D and calcium deficiencies along with an elevated rheumatoid factor.

90. Later in the day on 15 February 2017 the edema in my lower extremities became so great the splint and ace wraps were causing me pain and had to be removed. Due to my arthritis and the attendant inflexibility, it caused I was unable to reapply the splint by myself. It should be noted that when the splint and ace wraps were first applied it was a two person operation. As a result of these difficulties I refused the splint treatment on 17 February 2017.

91. On 20 February 2017 I was brought to Avera Medical Group Podiatry Clinic in Yankton, South Dakota where I was again seen by Doctor Terence Pederson, DPM. During this visit I was finally shown x-rays of my foot which showed the extent of the damage and displacement. My foot was placed in an air cast and we began to discuss treatment options. It was recommended that I use an ultrasonic bone growth stimulator to accelerate the healing process. I was told that if the bone growth stimulator did not work I would probably need surgery. I was told that if I had to walk on my foot without the aircast I was to place all of my weight on my heel to keep my weight off of the fracture. Doctor Pederson then told me that walking on my foot while wearing the air cast and using the arch support insert was permissible because the boot and arch support would keep my foot in the proper position to promote healing. Crutches were not needed

22

for short trips to the day hall or bathroom. These instructions were witnessed by the escorting staff member, Officer Dickes (male).

92. Upon my return to Mike Durfee State Prison I was seen in medical by RN Lindsey Rahbass who stated they would review Doctor Pederson's orders and let me know of any changes.

93. On 1 March 2017 I began treatment using the ultrasonic bone growth stimulator which was 20 minutes long, everyday for 12 weeks. I was 100% compliant with my treatment with the last day of treatment being 27 May 2017.

94. On 3 March 2017 I was told by Unit Manager Josh Klimek that Misty Tolsma-Hanvey was recommending disciplinary action be taken against me if I was not using crutches to move about the unit while wearing the aircast. This was contrary to the orders given to me by Doctor Pederson regarding movement while wearing the aircast. These orders were witnessed by Officer Dickes (male) on 20 February 2017 in Doctor Pederson's office at Avera Medical Group in Yankton, South Dakota.

95. As of this date, 29 November 2017, I still have constant pain in my right foot at the site of the fracture despite being given a clean bill of health by Doctor Pederson.

B. Unnecessary and arbitrary Censorship

96. In February 2015 my Sports Illustrated Swimsuit Edition was denied by mailroom supervisor Officer Nicole St. Pierre because it supposedly contained nudity. There was no nudity displayed in the magazine. Lt. Dykstra and Officer Schroeder both said they could not find any pictures with nudity depicted in them within their copies of the 2015 Sports Illustrated Swimsuit Editions. This issue was available for purchase by any 12 year old in any newsstand, bookstore or other outlet in America. This issue was the subject of a documentary on network television. The photos displayed in this issue were shown unedited on network television.

97. In February 2016 my Sports Illustrated Swimsuit Edition was denied by mailroom supervisor Mike Grosshuesch due to "sexually explicit" material. There were no sexually explicit materials in this issue. Lt Dykstra again said that he could not find any sexually explicit photos displayed within his copy of the 2016 Sports Illustrated Swimsuit Edition. This issue was available for purchase by any 12 year old in any newsstand, book-store or other outlet in America. This issue was the subject of a documentary shown on network television. The photos depicted in this issue were shown unedited on network television.

98. All pictures displayed in the 2015 and 2016 Sports Illustrated Swimsuit Editions fail to rise to the level of nudity available to inmates through the GTL tablets that were issued to all inmates in June 2017. These tablets give inmates access to photos depicting bare breasts and buttocks which are supposed to be denied per policy.

(24)

99. On 21 November 2016 I received notice from property supervisor Lori Stratman that a hardcover book sent to me by a dying friend through a publisher/distributor was being denied per policy. Policy states that inmates are not allowed to receive hardcover books from any source. Contrary to policy the prison provides inmates access to hundreds if not thousands of hardcover books through the library. Inmates may check out and have in their possession up to four hardcover books for up to a month. Inmates are also allowed to possess a hardcover Bible or Quran. There is no legitimate penalogical interest in not allowing an inmate to receive a hardcover book from a publisher or distributor. Since inmates are allowed to have hardcover Bibles or Qurans in their possession there is no legitimate penalogical interest in not allowing inmates to have hardcover books from a publisher/distributor in their possession. In addition prison officials refuse to allow inmates or their families to purchase used books from a distributor. There is no legitimate penalogical interest in this broad spectrum censorship.

C. Impeding access to the Courts

100. As noted herein I am a Wisconsin inmate being held in South Dakota for security and safety concerns. On 5 April 2017 the Wisconsin Supreme Court issued a final ruling in my direct appeal. Since this ruling was against me I am left with a collateral attack. I began to go to the Law Library in an attempt to learn what I could about filing a petition for a writ of habeas corpus. It was found that there was no Wisconsin law available to me. Neither codified law nor case law. In June 2017 all inmates were issued electronic tablets with an app for LexisNexis. Only South Dakota and federal law were available through the LexisNexis app.

㉕

When I was issued the tablet I found the lack of Wisconsin law on the Lexis Nexis app and asked how I could obtain access to Wisconsin law. Unit staff were unable to answer this question. When I filed a grievance requesting access to Wisconsin law my grievance and access were denied. The denial was based on advice given to South Dakota DOC by Legal Counsel to South Dakota DOC Catherine Schlimgen.

101. I then submitted numerous letters to the Wisconsin Department of Corrections including a letter addressed specifically to Secretary Jon E. Litscher in an attempt to gain access to Wisconsin law. I was denied any and all assistance. The response I received denying any and all assistance was written by Katharine A. Ariss, Assistant Legal Counsel for the Wisconsin DOC. I also received a response denying assistance from Thomas P Maloney, Library Services and Education Technology Coordinator. His letter included the addresses for the Wisconsin State Law Library and the State Bar of Wisconsin. Since I do not know which state statutes are applicable to my case or which case laws to cite the Wisconsin State Law Library address is all but useless to me.

102. I then sent letters to the State Bar of Wisconsin pleading for help. The response I received stated they could not help me. In trying to send out my letter to the State Bar of Wisconsin my legal mail was denied by mailroom supervisor Mike Grosshuesch. He stated that policy does not allow mailings to any state bar. This is incorrect as policy states that "Mailings to the State Bar of South Dakota and it's committees are not considered privileged." Policy does not address state bars outside the state of South Dakota. When I attempted to send a letter to Attorney Deanne M Kelly

which is allowed per policy, it was again denied because the address included "Care of State Bar of Wisconsin."

103. As of this date, 29 November 2017, I still do not have access to any Wisconsin law. I still have not been able to secure counsel. As a result of the actions of South Dakota DOC staff and Wisconsin DOC staff my deadline for filing a writ of certiorari has come and gone. The interstate compact officers from South Dakota DOC and Wisconsin DOC should also be held responsible for failing to ensure that I have any and all legal resources available to me to file an appeal or to exercise my constitutional rights to access the courts.

### D. Retaliation for Protected Complaints

104. Having made numerous complaints to Unit Manager Josh Klimek about Corporal Cropper, and his refusing to allow me to comply with my medical order for ice, Corporal Cropper conducted a shakedown of my room on 25 March 2016. During this shakedown Corporal Cropper laundry belonging to all three occupants of the room in the middle of the room. He then confiscated all laundry items including my shoes which contained my prescribed arch support inserts. Per policy I am allowed to have shoes and prescribed arch support inserts.

105. As a result of the shakedown of my room by Corporal Cropper on 25 March 2016 all three occupants had to have both towels and clothing items replaced because Corporal Cropper was ignorant of the policy governing allowable laundry issue. In addition Corporal Cropper confiscated two of my washcloths which I received in a care pack purchased by my family. Washcloths are

an allowable property item per policy. All three occupants of my room were issued V-15 disciplinary reports, for having items in excess... etc. All three occupants of my room were disciplined as a result of these disciplinary reports even though, seperately, we did not have excess items. This is just another example of the constant arbitrary and capricious disciplinary actions being taken against all inmates at Mike Durfee State Prison.

106. Several days after the 25 March 2016 shakedown Corporal Cropper was making a round and I asked him where my shoes and arch support inserts were. He stated that he "threw them away because I didn't need them since all I do is sit around my room." I told Unit Manager Josh Klimek about this statement and the disposal of my footwear and arch support inserts but he simply ignored me and in a dismissive fashion added "I'll look into it." This is Unit Manager Josh Klimek's standard response yet when you try to address the same issue a few days later he always says "I forgot" or "I don't see an email on that." Unit Manager Josh Klimek rarely if ever follows through on issues brought to him by inmates. His inactivity and apathy towards inmate concerns allow staff such as Corporal Cropper to make up their own rules and policies. By allowing staff such as Corporal Cropper, and others, to implement their own policies inmates can never expect any consistency and are subject to staff's whim of the day.

107. I grievanced the issue of Corporal Cropper taking my two washcloths, which were purchased by my family via a care pack. The response to my grievance is typical of Mike Durfee State Prison. Tammy DeJong conducted a parody of an investigation and avoided the issue and Warden Dooley just "rubber stamped" her indifferent response.

108. Even though there is a grievance policy in place it is never followed. Staff never properly investigate an inmate's claims against other staff they just send an email and wait for a reply. This is evident by the responses inmates receive when their grievance forms are returned. This apathetic and indifferent application of policy by staff renders the grievance process ineffective. As a result of this practice inmate concerns are never resolved and staff are allowed to do whatever they want since they are never held accountable for their actions.

109. On 9 August 2016, under the guise of a room inspection, Officer Thomas Huitema entered my room and confiscated my TV because it did not have a "security sticker" over the USB port. My TV has never had a security sticker over the USB port. I filed a grievance against Officer Huitema at 11:00 a.m. concerning the confiscation of my television and the fact that I was being harassed by him since he stated he never looked at my roommate's TV because he was sitting right there.

110. Minutes after I filed the grievance Officer Huitema came back to my room and confiscated my roommates TV and told him "Since your cry baby roommate snitched on you Klimek told me to confiscate your TV too." My roommate had self reported that his TV did not have a security sticker to both Officer Huitema and Unit Coordinator Brittany Ulmer shortly after room inspections. At that time neither Officer Huitema nor Unit Coordinator Ulmer confiscated my roommates TV despite being shown the alleged security violation. My roommates TV was confiscated and I was labeled a snitch by Officer Huitema only after I filed a grievance against him. Klimek ordered all inmates in my room be written up.

111. My TV had been through property several times prior to this incident and Property Officer Lori Strodman was either too lazy or too inept to inspect my TV and apply a security sticker.

112. I was not in my room when my roommates TV was confiscated. Upon my returning to my room my roommate told me what Officer Huitema had said and that he had implied that I was a snitch. When I went to the desk to confront Officer Huitema about his labeling me as a snitch he wrote me up for insolence and I was sent to the SHU less than an hour later. Officer Huitema placed my life in danger by calling me a snitch in front of other inmates after I filed a grievance against him.

113. Unit Manager Josh Klimek is directly supervised by his wife Deputy Warden Jennifer Stanwick-Klimek. Based on my 21 years of experience and training as a correctional officer in Wisconsin it appears as if Josh Klimek does not have the qualifications to be a unit manager and holds his position as the result of his wife's influence. Due to his apathy, indifference and lack of experience he allows Mike Durfee State Prison staff that work in East and West Crawford living units to harass and intimidate inmates at will.

114. It should be noted that on two different occasions since 9 August 2016 all of the TVs on my living unit (West Crawford) were inspected and each time more than 30 TVs were found without security stickers. Not one single inmate was issued a disciplinary report for not having a security sticker over the USB port. This is just another example of the incompetence of Unit Manager Klimek and Officer Strodman. When I told Unit Manager Klimek my write up should be expunged he laughed and said "no."

(30)

115. On 9 January, 2017 I filed a grievance with PREA implications concerning predatory homosexual behavior on first floor. Even though I expressed a concern that I believed the administration was encouraging this behavior I was the one placed in the SHU for my "protection". An obvious attempt to punish me since this was my second complaint with PREA implications. Neither one of which was investigated. As a result of this complaint the predatory behavior did not stop. The first PREA complaint was filed with the South Dakota Division of Criminal Investigation which passed it back to the South Dakota DOC. I never heard another word from DOC officials concerning this complaint.

E. Americans with Disabilities Act Violations

116. I am a qualified individual with diabetes, hypertension, hypothyroidism and a respiratory disorder. Due to numerous issues with my feet I also have mobility impairment.

117 The health care providers at Mike Durfee State Prison have told me that the diet provided by CBM Food Services is detrimental to diabetes and that Doctor Mary Carpenter, Director of Prison Health Care, South Dakota Department of Health, has been notified of the poor diet on numerous occasions but does nothing to change it. The diet being the root cause of my health issues I am entitled to a diet that meets my dietary needs as a diabetic.

118. My health care providers simply treat my symptoms which include: vitamin B12, vitamin D and calcium deficiencies as well as elevated

(31)

hemoglobin A-1-C levels. I was prescribed a diabetic diet but never received one.

119. CBM Food Services provides a diet that is based on a calorie count and not nutritional values. They provide false information concerning the amount of proteins and carbohydrates inmates are served. Because CBM Food Services does not follow its own menu and does not prepare meals per their own guidelines inmates are receiving a diet far below nutritional standards. Health care providers will no longer prescribe me a diabetic diet because I will not receive one. CBM Food Services will not prepare a diabetic diet because it is not in their interests to do so since this will interfere with their profit margin. The CBM dietician alleges that a diabetic diet meal is provided but one is never issued at meal times.

120. CBM Food Services does not provide fresh fruit on its regular meal trays. For over two years whenever CBM Food Services listed fruit, canned fruit or fresh fruit on its deceptive menus applesauce was served every single time. CBM Food Services does not prepare meals on its menus with conventional recipes.

121. CBM Food Services regularly runs out of menu items in the middle of serving a meal and substitutes whatever they want. I some cases they just continue serving the meal without replacing the missing item.

122. Based on CBM Food Services abysmally poor diet it is impossible to get the necessary nutritional elements to control diabetes. They also fail

32

to provide the recommended daily allowance of vitamins necessary to maintain good health. By refusing to provide a diabetic diet CBM Food Services is retaliating against me because I am a diabetic. They do not want to incur the additional cost it would require to provide a diabetic diet. Therefore I am being denied a program or service under Title II of the Americans with Disabilities Act.

123. I am unable to recreate during West Crawford recreation time (10:00am) because blood glucose level checks are scheduled between 10:00 and 10:30 a.m. everyday.

124. I am unable to use the recreation yard or the large Crawford rec yard due to the uneven rocky terrain. I fear breaking bones in my feet or refracturing the same spot because of the hazards in the rec yard. I am entitled to the benefit of recreation.

125. Mike Durfee State Prison has an alternative recreation area in the gym but medical will not allow me to use it. While I was in a walking cast/boot I was not able to attend recreation for months resulting in muscle atrophy. This could have been avoided by allowing me to use the handicap recreation area, a reasonable accomodation that is already in place and would require no additional cost to the South Dakota DOC.

126. I had no access to a handicap accessible shower while my foot was broken and had to use the standard inmate shower which has no hand rails and a slick tile floor making this a hazard in itself. Medical has a handicap

(33)

accessible shower but I was not allowed to use it.

127. On 24 November 2014 I was issued a medical order for diabetic socks. This was a stop gap measure designed to placate me because of the numerous requests I made for proper fitting shoes. In a misguided effort to save the state a few pennies Laundry Supervisor Muriel Namminga procured what were supposedly one size fits all diabetic socks from Walmart. She told me the salesperson from Walmart told her these were the best diabetic socks they had. These supposedly one size fits all diabetic socks were made of 100% cotton and would shrink in the wash. This shrinkage would render an already too small diabetic sock even smaller which caused me pain due to the edema in my lower extremities. Even after numerous complaints involving medical staff, unit staff and laundry staff I was never provided properly fitting diabetic socks. The pain these too small, supposedly diabetic socks, caused me contributed to my mobility issues. Based on my experience it is readily apparent that one size does not fit all. Other inmates have been issued oversized diabetic socks made by Dr. Comfort so there is no excuse for not providing me with the same accomodation.

128. Due to my 15 month long struggle with medical staff and unit staff I was denied properly fitting medically necessary shoes. As a result of this struggle I sustained a life long injury(s) which are the root cause of my mobility impairment. This denial of service, under Title II of the Americans with Disabilities Act, was the result of the South Dakota DOC's failure to issue me properly fitting footwear.

## VI. Legal Claims
### A. Cruel and Unusual Punishment

Claim 1.

129. An unknown laundry supervisor at South Dakota State Penitentiary, Jameson Annex, and Muriel Namminga, laundry supervisor at Mike Durfee State Prison, were deliberately indifferent to my serious medical needs by refusing to provide proper fitting footwear which resulted in the infliction of cruel and unusual punishment. This is a violation of my Eighth Amendment rights under the United States Constitution.

Claim 2.

130. The South Dakota DOC's policy of not allowing medical personnel to prescribe necessary footwear and instead leaving these decisions up to non-medically trained DOC unit staff, results in deliberate indifference to serious medical needs. Robert Dooley, Dennis Kaemingk, Doctor Mary Carpenter, Jennifer Stanwick-Klimek, Rebecca Schieffer, Brent Fluke, Alejandro Reyes and Misty Tdsma-Harvey are responsible for making this policy, that resulted in my being subjected to cruel and unusual punishment, a violation of my Eighth Amendment rights under the United States Constitution.

Claim 3.

131. Michael Joe Harvey, Misty Tdsma-Harvey, Josh Klimek, Travis Tjeerdsma and Tammy DeJong refused to provide me assistance when I sought medical treatment and was told to wear proper fitting footwear but medical refused to prescribe the necessary "proper fitting" footwear. Unit staff also failed to provide the "proper fitting" footwear and as a

result were deliberately indifferent to my serious medical needs which resulted in my being subjected to needless pain and suffering for 15 months, a violation of my right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

Claim 4.

132. Dr Mary Carpenter, Michael Joe Hanvey, Misty Tolsma-Hanvey and other unknown DOH employees are responsible for the policies and protocol for sick call visits for which I presented with severe pain in my right foot on 4 November 2015, again on 5 November 2015 and also on 6 November 2015, which was a Friday. There is no sick call on Saturday or Sunday. I returned to sick call on 9 November 2015 with severe pain and again no action was taken. The pain was so severe I again attended sick call on 10 November 2015 and was told I would see a provider later that day. I saw Doctor Stephan Schroeder on 10 November 2015 at about 3:00 p.m. at which point he ordered x-rays be taken. On 10 November 2015 at about 8:00 p.m. x-rays were taken. These x-rays were read by Doctor Daniel R Fritz on 11 November 2015 at 10:24 a.m. where a fracture was noted. I was not called to medical until 13 November 2015, two days after the fracture was noted and diagnosed. Due to the staff interpretation of "medical protocol" I was forced to walk around the facility for 10 days on a broken fourth metatarsal causing me excruciating pain. This violates my right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

Claim 5.

133. Michael Joe Hanvey, Misty Tolsma-Hanvey, Lindsey Rabtass, Candice Fejfas,

(36)

Robin Myer and other unknown staff failed to treat my Plantar's Fasciitis which, according to Doctor Terence Pederson, contributed to the stress fracture. They then failed to provide me any assistance or relief after the fracture occurred. This deliberate indifference resulted in the wanton and unnecessary infliction of pain and suffering which violates my right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

   Claim 6.

134. Corporal Dennis Cropper conducted a room search of my living area on 25 March 2016 and took my shoes which contained my prescribed arch support inserts that were issued on 14 October 2015. This medical order was good through October 2016. After taking these arch support inserts I told Corporal Cropper that they were prescribed by a doctor. Corporal Cropper told me that I did not need the arch support inserts and that he had thrown them away. Corporal Cropper then told me that if medical wanted me to have arch support inserts they could issue me another pair. I believe this time without my prescribed arch support inserts caused the displaced mal-union fracture in my foot because during this period without my arch support inserts the pain in my foot started again at that spot. Corporal Cropper deliberately interfered with my prescribed medical care which resulted in injury and caused me severe pain. This is a violation of my right to be free from cruel and unusual punishment as defined by the Eighth Amendment to the United States Constitution.

Claim 7.

135. After Corporal Cropper took my prescribed arch support inserts I approached Unit Manager Josh Klimek and explained that Corporal Cropper had taken my prescribed arch support inserts. My prescribed arch support inserts were not replaced for two weeks and I was forced to walk around the facility without them. I believe this led to the refracture of the fourth metatarsal of my right foot. Again this caused severe pain and further unnecessary suffering. Unit Manager Josh Klimek refused to intervene on my behalf and allowed Corporal Cropper to continue to harass and retaliate against me. Corporal Cropper made his own rules in West Crawford which included not allowing me to get prescribed ice and further interfering with a prescribed medical treatment by throwing away my improvised medical appliance which was used to treat my Plantar's Facitis. Unit Manager Josh Klimek then imposed his own interpretation on my medically ordered treatment plan to excuse and condone Corporal Cropper's improper behavior. This a violation of my right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

Claim 8.

136. On 9 August 2016, I spoke with P.A. Brad Adams about the pain in my foot and was told by him that it was normal. On 7 September 2016, I went to sick call and complained of severe pain in my foot at the site of the former fracture. RN Dayna Klawitter issued me a handout with exercises for my ankle which I performed daily. I was never called back to medical for a follow up on the pain issue in my foot. In addition I made numerous requests for proper fitting diabetic shoes and socks which medical and unit staff ignored. Medical staff ignored

my complaints of pain in my foot until February 2017 when it was found
that the fracture was not only worse it was now displaced and
forming a mal-union. To date I am still experiencing pain at the site
of the fracture. This is a violation of my right to be free from cruel and
unusual punishment under the Eighth Amendment to the United States
Constitution.

Claim 9.

137. Upon the x-rays taken on 10 February 2017 revealing that my foot was
refractured I was told on 13 February 2017 that I needed a walking
cast/boot. However, the walking cast/boot I was given on 13 February
2017 did not fit. I then left medical without a walking cast/boot
and without knowing why I needed one. I was called back to medical
on 15 February 2017 and told that the fourth metatarsal of my right
foot had broken in the same spot and was now displaced. Still not
having the proper fitting walking cast/boot in stock a makeshift splint
was devised and applied to my foot but was unusable due to severe
edema to my lower extremities. I did not receive a walking cast/
boot until 20 February 2017 when I was seen by Doctor Terence Pederson
in Yankton. I was again forced to navigate the facility, for days, on
a broken foot without the necessary walking cast/boot I had been
prescribed. This is clearly cruel and unusual punishment in violation
of the Eighth Amendment to the United States Constitution.

B. Unnecessary and Arbitrary Censorship

(39)

Claim 10.

138. In February 2015, mailroom supervisor Nicole St. Pierre denied my Sports Illustrated Swimsuit Edition for nudity. The issue of pornography was grievanced and my grievance was denied because of "policy." At no time did the administration review this denial. There was no nudity in this issue and it was simply denied for arbitrary and capricious reasons. This is a violation of my First Amendment rights under the United States Constitution.

Claim 11

139. In February 2016 mailroom supervisor Mike Grosshuesch denied my Sports Illustrated Swimsuit Edition for "sexually explicit" material. There was no "sexually explicit" material in this issue. The photographing of this Sports Illustrated Swimsuit Edition was the subject of a documentary which was broadcast on network television. There was no reason to censor this issue other than Mike Durfee State Prison Administration officials endeavoring to be the "morality police." I again filed a grievance and again the grievance was denied with no administrative review of the materials, with staff simply quoting policy as the reason for denial. There was no reason for this censorship of my publication other than arbitrary and capricious reasons. This is a denial of my First Amendment rights under the United States Constitution.

Claim 12.

140. On 21 November 2016, a hardcover book sent to me direct from a publisher was denied per an arbitrary policy. The library at Mike Durfee State Prison contains thousands of hardcover books and inmates

are allowed hardcover Bibles and Qurans. This policy is certainly not the least restrictive means. In addition policy also disallows used books from a bookstore or internet sales store. Books can easily be inspected for contraband new, used or hardcover. This is a violation of my rights under the First Amendment to the United States Constitution.

<u>C. Impeding access to the Courts</u>

<u>Claim 13</u>

141. I am a Wisconsin inmate incarcerated in South Dakota for security and safety concerns. I have no access to Wisconsin law. I am attempting to file a habeas corpus petition to attack unconstitutional aspects of my criminal conviction. Interstate compact requires the DOC to provide me with access to Wisconsin state law. I have attempted to gain access to the information I need from both states with no result. My time to file a federal habeas corpus petition under the A.E.D.P.A. continues to run. I am unable to file my Wisconsin habeas corpus petition because I have no access to Wisconsin law or a Wisconsin attorney. I attempted to send mail to Attorney Deana Koll which was rejected by an unknown person in the Mike Durfee State Prison mailroom. Policy allows me to send mail to attorneys. This arbitrary rejection of legal mail is believed to be retaliatory in nature. I have asked for help, via the grievance procedure, from Robert Dooley, Jennifer Stanwick-Klimek, Rebecca Schieffer, Alejandro Reyes and Catherine Schlimgen. None of these administrators have attempted to assist me and simply ignore or reject my grievances. I have also contacted the Wisconsin DOC, including correspondence with Secretary Jon E Litscher

Katharine Ariss and Thomas Maloney, about my inability to access the courts
and they have refused to assist me. Under the guidelines of Interstate
Compact and the United States Constitution I am entitled to access the courts.
As of this filing my time to file a writ of certiorari to the United States
Supreme Court has expired. This harm is irreversible. As a result of
defendants actions I am not able to file my Wisconsin state habeas corpus
petition. This denial of access to the courts is a violation of my rights
under the First, Fifth, Sixth and Fourteenth Amendments to the United
States Constitution. In addition Josh Klimek violated those rights by refusing my grievances.

### D. Retaliation for Protected Complaints

#### Claim 14.

142. Due to my complaints and grievances Unit Manager Josh Klimek and
Correctional Officer Dennis Cropper, Thomas Huitema and Michael Meyer
have retaliated against me at will. Complaints of officer conduct and
grievances are acts protected by the First and Fourteenth Amendments
to the United States Constitution. Despite the Constitutional protections I
am entitled to these officers and staff member have embarked on a
campaign of harassment and retaliation including false disciplinary
reports, placement in the SHU and the taking of personal property.

#### Claim 15.

143. I have filed two complaints with PREA implications concerning the
action of a staff member and physical plant conditions at Mike Durfee
State Prison both of which have been ignored. The first concerned
Corporal Dennis Cropper and the second concerned predatory homosexual

behavior by other inmates. Neither complaint was investigated and I was retaliated against by being placed in the SHU by Unit Manager Josh Klimek. My right to petition the government for redress of grievances was violated under the First Amendment to the United States Constitution. In addition, as a result of being retaliated against, I will not file another PREA complaint regardless of the circumstances.

### E. Americans with Disabilities Act

#### Claim 16.

144. CBM Food Services, the South Dakota DOC and the South Dakota DOH are violating my rights under the Americans with Disabilities Act by failing to provide me a diabetic diet necessary for the control of my diabetes. My health care providers are aware of the fact CBM Food Services provides an unhealthy diet, because they have told me so, but they do nothing to fix the problem. I am entitled to access to food services under the Americans with Disabilities Act.

#### Claim 17.

145. Due to the scheduling of blood glucose level checks I am unable to use the recreation yard because recreation and blood glucose level checks are both around 10:00 a.m. I do not use the outside recreation areas due to uneven rocky terrain and broken concrete sidewalks. I am entitled to a recreation program and facility that meets my needs based on my disabilities under the Americans with Disabilities Act. An alternative recreation area exists but prison officials do not let inmates utilize it, instead it sits empty all day, everyday. In addition, inmates that

are mobility impaired are entitled access to a handicap accessible shower and mobility impairment exceptions, such as meals on the unit and medications delivered to the unit, under the Americans with Disabilities Act.

Claim 18.

146. Even though I have a medical order for diabetic socks I have never received proper fitting diabetic socks. I also have a medical order for proper fitting footwear however the shoes I have been issued are inferior and do not last one full year even though Unit Manager Josh Klimek makes inmates wait a year before they can be replaced. I am entitled to medically necessary prescribed footwear, which are services, as defined by the Americans with Disabilities Act.

Claim 19

147. Catherine Schlimgen is Legal Counsel to the South Dakota DOC and has, according to Mike Durfee State Prison Administration, approved all of the changes to the law library, contract staff attorney, Delmar "Sonny" Walter, and the implementation of the LexisNexis app on the electronic tablets. Due to her uneducated counsel to the South Dakota DOC she has allowed inmates rights to be violated under the infamous "Settlement agreement," and now violates inmates' rights of access to the courts under Amendments I, V and XIV to the United States Constitution by failing to provide "meaningful access."

## VII Requested Relief

148. A special master be appointed to oversee prison operations since the South Dakota DOC is incapable of operating its facilities within the parameters established by the United States Constitution. The South Dakota DOC is also incapable of adequately staffing its facilities to the point of negatively affecting the operations of its facilities causing disruptions in scheduled inmate activities, services and programs.

149. An order from this court withholding all federal funding from the South Dakota Department of Corrections until it is in full compliance with all aspects of the Americans with Disabilities Act.

150. A temporary and permanent injunction placing a stay on my A.E.D.P.A. tolling for my federal habeas corpus action and resetting my time to file a writ of certiorari to the United States Supreme Court. Also, the appointment of counsel from this court to assist me in preparing these filings and its hearing. I was unable to file a writ of certiorari to the United States Supreme Court because neither the trial court nor the Wisconsin DOC nor the South Dakota DOC would provide me the necessary assistance to appeal my conviction. I am not versed in the law and cannot afford counsel.

151. A declaration stating that all listed defendants have violated my civil rights guaranteed under the United States Constitution and the Americans with Disabilities Act.

152. A permanent injunction requiring the South Dakota DOC and laundry supervisors to provide proper fitting quality footwear and issue them within three days or less upon request for all inmates. An inmate should not have to wait months for proper fitting shoes because he has oversized feet.

153 A permanent injunction requiring South Dakota DOC staff, unit staff and security staff to stay out of decisions for medically necessary items such as footwear and diabetic socks and to comply with all medical orders as written. South Dakota DOC staff should not be allowed to interpret medical orders on their own but should follow them as written by medical staff which includes orders for diets directed to CBM Food Services.

154 An order from this court requiring the South Dakota DOC to change its vague policy on censorship and allow photos into its facilities that meet the requirements of the Bureau of Prison's definition and replacing my 2015 and 2016 Sports Illustrated Swimsuit Editions as well as the hardcover book that was confiscated and I was forced to send out.

155 A permanent injunction requiring the South Dakota DOC to provide access to an adequate law library as defined by this court, a staff attorney to assist all inmates, including those on interstate compact, to gain meaningful access to the court as agreed to in a previous settlement agreement and rescinding the recent revisions to policy for legal assistance. In addition, charging .25¢ per page for printing and copies and the two hour limit per week for typing should be deemed

unconstitutional. The practice of charging .25¢ per page for forms which are free of charge upon request from the courts should be investigated as fraud, and the South Dakota DOC officials who are responsible for this policy should be prosecuted to the fullest extent of the law.

156. A permanent injunction requiring the South Dakota DOC to rewrite its vague rules and policies that allow staff to interpret them in an arbitrary and capricious manner which results in the creation of a confrontational and hostile environment where inmates and staff do not know what the rules actually are.

157. A permanent injunction requiring the South Dakota DOC, specifically Mike Durfee State Prison, to place doors on all toilet stalls and erect privacy curtains for all showers in the facility. Even though the people incarcerated at Mike Durfee State Prison bear the title of "inmate" they are still entitled to retain their dignity.

158. A permanent injunction requiring the South Dakota DOC to comply with its own policy concerning PREA complaints and to investigate and resolve all complaints regardless of the circumstances. While the South Dakota DOC states that it is in compliance it simply ignores and fails to report complaints.

159. A permanent injunction requiring the South Dakota DOC to allow inmates with disabilities and injuries to receive meals and medications on the unit. And provide access to handicapped recreation facilities with the same

47

frequency as all other inmates.

160. A permanent injunction requiring the South Dakota DOC to train all unit staff, supervisory staff and correctional officers in civil rights protections as guaranteed by the United States Constitution.

161. Nominal damages in the amount of $1.00 against all listed defendants for violations of my constitutional rights as described and listed in this complaint.

162. Compensatory damages in the amount of $100,000 against all listed defendants, jointly and severally, for their deliberate indifference resulting in cruel and unusual punishment, arbitrary and unnecessary censorship, impeding access to the courts, retaliation for protected complaints and ADA violations.

163. Punitive damages in the amount of $300,000 against all listed defendants, jointly and severally, for their deliberate indifference resulting in cruel and unusual punishment, arbitrary and unnecessary censorship, impeding access to the courts, retaliation for protected complaints and ADA violations.

164. A trial by jury on all issues triable by jury.

165. All of my costs associated with this complaint.

166. Any other relief deemed appropriate by this court.

48

Dated this 6th day of December 2017

Stan Maday

Stanley J Maday #34947

Mike Durfee State Prison

1412 Wood Street

Springfield, SD 57062

Subscribed and sworn to me this
6th day of December, 2017

_Brittany Ulmer_

BRITTANY ULMER
(SEAL)  NOTARY PUBLIC  (SEAL)
SOUTH DAKOTA

My Commission Expires Aug. 29, 2022

49