UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| STANLEY J. MADAY,<br><br>    Plaintiff,<br><br> vs.<br><br>BOB DOOLEY, CHIEF WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; DENNIS KAEMINGK, SECRETARY OF THE SOUTH DAKOTA DOC, INDIVIDUAL AND OFFICIAL CAPACITY; DR. MARY CARPENTER, DIRECTOR OF THE DEPARTMENT OF HEALTH, INDIVIDUAL AND OFFICIAL CAPACITY; JENNIFER STANWICK-KLIMEK, DEPUTY WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; REBECCA SCHIEFFER, ASSOCIATE WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; ALEJANDRO REYES, ASSOCIATE WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; BRENT FLUKE, ASSOCIATE WARDEN AT MIKE DURFEE STTAE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; JOSH KLIMEK, UNIT MANAGER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; TRAVIS TJEERDSMA, CASE MANAGER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; TAMMY DEJONG, CASE MANAGER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; PA MICHAEL JOE HANVEY, | 4:17-CV-04168-KES<br><br><br><br><br><br><br>ORDER FOR SERVICE |

MEDICAL PROVIDER AT MIKE
DURFEE STATE PRISON, INDIVIDUAL
AND OFFICIAL CAPACITY; PA BRAD
ADAMS, MEDICAL PROVIDER AT MIKE
DURFEE STATE PRISON, INDIVIDUAL
AND OFFICIAL CAPACITY; DR.
STEPHAN SCHROEDER, MEDICAL
PROVIDER AT MIKE DURFEE STATE
PRISON, INDIVIDUAL AND OFFICIAL
CAPACITY; MISTY TOLSMA-HANVEY,
NURSING SUPERVISOR, AT MIKE
DURFEE STATE PRISON INDIVIDUAL
AND OFFICIAL CAPACITY; LINDSEY
RABBASS, NURSE AT MIKE DURFEE
STATE PRISON, INDIVIDUAL AND
OFFICIAL CAPACITY; ROBIN MYER,
NURSE AT MIKE DURFEE STATE
PRISON, INDIVIDUAL AND OFFICIAL
CAPACITY; CANDICE FEJFAR, NURSE
AT MIKE DURFEE STATE PRISON,
INDIVIDUAL AND OFFICIAL CAPACITY;
DAYNA KLAWITTER, NURSE AT MIKE
DURFEE STATE PRISON, INDIVIDUAL
AND OFFICIAL CAPACITY; DENNIS
CROPPER, CORRECTIONAL OFFICER
AT MIKE DURFEE STATE PRISON,
INDIVIDUAL AND OFFICIAL CAPACITY;
THOMAS HUITEMA, CORRECTIONAL
OFFICER AT MIKE DURFEE STATE
PRISON, INDIVIDUAL AND OFFICIAL
CAPACITY; MICHAEL MEYER,
CORRECTIONAL OFFICER AT MIKE
DURFEE STATE PRISON, INDIVIDUAL
AND OFFICIAL CAPACITY; LORI
STRATMAN, CORRECTIONAL OFFICER
AT MIKE DURFEE STATE PRISON,
INDIVIDUAL AND OFFICIAL CAPACITY;
MIKE GROSSHUESCH,
CORRECTIONAL OFFICER AT MIKE
DURFEE STATE PRISON, INDIVIDUAL
AND OFFICIAL CAPACITY; NICOLE ST.
PIERRE, CORRECTIONAL OFFICER AT
MIKE DURFEE STATE PRISON,
INDIVIDUAL AND OFFICIAL CAPACITY;
MURIEL NAMMINGA, LAUNDRY

SUPERVISOR AT MIKE DURFEE STATE
PRISON, INDIVIDUAL AND OFFICIAL
CAPACITY; CATHERINE SCHLIMGEN,
LEGAL COUNSEL FOR THE SOUTH
DAKOTA DOC, INDIVDUAL AND
OFFICIAL CAPACITY; UNKNOWN CBM
FOOD SERVICES EMPLOYEES,
INDIVIDUAL AND OFFICIAL
CAPACITIES; UNKNOWN SOUTH
DAKOTA DOC EMPLOYEES,
INDIVIDUAL AND OFFICIAL
CAPACITES; UNKNOWN SOUTH
DAKOTA DOH EMPLOYEES,
INDIVIDUAL AND OFFICIAL
CAPACITIES; JON E. LITSCHER,
SECRETARY OF THE WISCONSIN
DOC, INDIVIDUAL AND OFFICIAL
CAPACITY; KATHARINE A. ARISS,
ASSISTANT LEGAL COUNSEL FOR THE
WISCONSIN DOC, INDIVIDUAL AND
OFFICIAL CAPACITY; THOMAS P.
MALONEY, LIBRARY SERVICES AND
EDUCATIONAL TECHNOLOGY
COORDINATOR FOR THE WISCONSIN
DOC, INDIVIDUAL AND OFFICIAL
CAPACITY; UNKNOWN WISCONSIN
DOC EMPLOYEES, INDIVIDUAL AND
OFFICIAL CAPACITIES; AND CBM
FOOD SERVICES, MEAL AND
COMMISSARY PROVIDER FOR THE
SOUTH DAKOTA DOC, OFFICIAL
CAPACITY;

Defendants.

## INTRODUCTION

Plaintiff, Stanley J. Maday, is an inmate at the Mike Durfee State Prison

in Springfield, South Dakota. Plaintiff has filed a *pro se* civil rights lawsuit

pursuant to 42 U.S.C. § 1983 and has, as required, paid his initial partial

filing fee. This matter has been referred to this magistrate judge for handling pretrial matters pursuant to 28 U.S.C. § 636(b)(1) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge. The purpose of this opinion is to screen Mr. Maday's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) to determine if it states any claims upon which relief may be granted.

**FACTS**

The facts are taken from Mr. Maday's complaint, which is all the court has before it at this point. The complaint contains 19 separate claims and names 34 separate defendants. Mr. Maday was convicted of sexual contact with a child in Wisconsin state court. However, because he was a corrections officer in the Wisconsin state prison system, through an interstate compact between South Dakota and Wisconsin, Mr. Maday is serving his Wisconsin sentence in a South Dakota prison.

Liberally construed, Mr. Maday's complaint alleges defendants have violated the Eighth Amendment prohibition against cruel and unusual punishment (claims 1-9) because they have been deliberately indifferent to his serious medical needs. Specifically, Mr. Maday alleges he is diabetic and defendants have denied him properly fitting diabetic shoes and socks, have failed to provide proper medical care through its policies and the application of those policies to him, have delayed medical treatment of a fractured metatarsal bone in his foot, have failed to treat his plantar fasciitis, have denied him

medically prescribed shoe inserts, have refused to give him ice, and have delayed giving him a properly fitting medical boot for his foot.

Mr. Maday alleges defendants have violated his First Amendment right of free speech by denying him delivery of two Sports Illustrated swimsuit edition magazines (February 2015 and February 2016) and a hardcover book (claims 10-12).

Mr. Maday alleges defendants have denied him access to the courts by failing or refusing to give him access to Wisconsin law and interfering with mail he has sent to a Wisconsin lawyer (claims 13 & 19).

Mr. Maday alleges defendants have retaliated against him by filing false disciplinary reports against him, placing him in the Special Housing Unit (SHU), taking his personal property, and failing to investigate reports made by Mr. Maday that unwanted sexual advances were made to him (claims 14 & 15).

Finally, Mr. Maday alleges he is disabled within the meaning of the Americans With Disability Act (ADA). He alleges defendants have violated his rights under the ADA by failing to provide him a proper diabetic diet, failing to provide proper diabetic shoes and socks, failing to provide mobility-impaired showers to him when his foot was in a boot, scheduling glucose draws at times of the day that prevent Mr. Maday from engaging in recreation, and by providing an outside recreation area that is rocky and uneven (claims 16-18).

In the "relief" portion of his complaint, Mr. Maday requests declaratory and injunctive relief as well as nominal, compensatory, and punitive damages. It is these allegations the court now screens.

**DISCUSSION**

**A.    Screening Pursuant to 28 U.S.C. § 1915A**

28 U.S.C. § 1915A requires the court to "screen" prisoner complaints.  It

states as follows:

> **§ 1915A.  Screening**
> **(a) Screening.**—The court shall review, before docketing, if
>     feasible, or in any event, as soon as practicable after docketing,
>     a complaint in a civil action in which a prisoner seeks redress
>     from a governmental entity or officer or employee of a
>     governmental entity.
> **(b) Grounds for dismissal.**—On review, the court shall identify
>     cognizable claims or dismiss the complaint, or any portion of
>     the complaint, if the complaint—
>     **(1)** is frivolous, malicious, or fails to state a claim upon which
>         relief may be granted; or
>     **(2)** seeks monetary relief from a defendant who is immune from
>         such relief.
> **(c) Definition.**—As used in this section, the term "prisoner" means
>     any person incarcerated or detained in any facility who is
>     accused of, convicted of, sentenced for, or adjudicated
>     delinquent for, violations of criminal law or the terms and
>     conditions of parole, probation, pretrial release, or diversionary
>     program.

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), a prisoner's

complaint should be dismissed on screening if it "fails to state a claim upon

which relief may be granted."  This standard is the same standard as is used to

determine whether a complaint satisfies the standards of FED. R. CIV. P.

12(b)(6).  Kane v. Lancaster County Dept. of Corrections, 960 F.Supp. 219

(D. Neb. 1997).  A prisoner complaint is screened for dismissal under 28 U.S.C.

§ 1915  "accepting as true all of the factual allegations contained in the

complaint and affording the plaintiff all reasonable inferences that can be

drawn from those allegations."  Jackson v. Nixon, 747 F.3d 537, 540-41 (8th

6

Cir. 2014).  Further, "a *pro se* complaint, however inartfully pleaded, [is held] to less stringent standards than formal pleadings drafted by lawyers."  Jackson, 747 F.3d at 541. (citation omitted).

The United States Supreme Court addressed the standard district courts are to apply to FED. R. CIV. P. 12(b)(6) motions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The Court adopted a standard by which plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face."  Id. at 570 (emphasis added).

The Court stated that FED. R. CIV. P. 8(a)(2) requires only that a plaintiff plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Id. at 554-55 (citing FED. R. CIV. P. 8(a)(2)).  The Court acknowledged that a complaint does not need "detailed factual allegations" to survive a motion to dismiss, but emphasized a plaintiff's obligation to provide more than a mere recital of the elements of his cause of action.  Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  The Court imposed a "plausibility standard" and held that a claim "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the plaintiff has a valid claim.  Id. at 556.

The Court stated that conclusory allegations were not enough to survive a 12(b)(6) motion to dismiss a claim.  Id. at 556-57.  "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [a valid claim] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.' "

Id. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).  The Court said the plaintiff's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief.  Id.  The Court has held the Twombly Rule 12(b)(6) standard applies to all civil actions. Iqbal, 556 U.S. at 684.

The Iqbal Court stated the plausibility standard requires that the plaintiff allege more than a "sheer possibility" that the defendant committed the alleged unlawful conduct, but does not impose a "probability requirement" at the pleading stage.  Id. (quoting Twombly, 550 U.S. at 556).  The plaintiff must, however, allege sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of [the conduct complained of]."  Twombly, 550 U.S. at 556. Where a plaintiff pleads facts that are merely consistent with a defendant's liability, he has not "nudged [his] claim across the line from conceivable to plausible," and the complaint must be dismissed.  Iqbal, 556 U.S. at 680 (citing Twombly, 550 U.S. at 570).  There is no heightened requirement of fact pleading of specifics--only a requirement that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

The Court identified two "working principles" from Twombly.  Iqbal, 556 U.S. at 678.  First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint.  Id. (citing Papasan, 478 U.S. at 286).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting

<u>Twombly</u>, 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." <u>Id</u>. at 678-79.

Second, in applying the plausibility standard, the Court stated that it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense.*" <u>Id</u>. at 679 (quoting decision below <u>Iqbal v. Hasty,</u> 490 F.3d 143, 157-158 (2d Cir. 2007)).  Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged*–but has not "show[n]"–that he is entitled to relief as required by Rule 8(a)(2).  <u>Iqbal</u>, 556 U.S. at 679.

A reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth.  <u>Id.</u> at 679-680.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief.  <u>Id.</u> at 679; <u>Twombly,</u> 550 U.S. at 555; F<span>ED</span>. R. C<span>IV</span>. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief."  <u>Iqbal</u>, 556 U.S. at 679.  It is with these standards in mind that Mr. Maday's complaint is carefully considered.

**B.    Mr. Maday's Complaint Survives Screening**

**1.    Deliberate Indifference Claims**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  A prisoner's allegation of inadequate medical attention was recognized as a potentially viable claim for a violation of the prohibition against

cruel and unusual punishment, via a § 1983 cause of action, in Estelle v. Gamble, 429 U.S. 97 (1976). To state a cause of action, the prisoner must sufficiently allege "deliberate indifference" to a prisoner's "serious illness or injury." Id., 429 U.S. at 105, "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id.

With regard to the "deliberate indifference" requirement, the courts have made clear that mere negligence or medical malpractice is not enough. Id., 497 U.S. at 107. Likewise, a disagreement with a physician's treatment decisions does not rise to the level of an Eighth Amendment violation. Id., 429 U.S. at 105-06; Randall v. Wyrick, 642 F.2d 304, 308 (8th Cir. 1981). To prevail on a claim of deliberate indifference, a plaintiff must prove: (1) he suffered objectively serious medical needs and; (2) the prison officials actually knew but deliberately disregarded those needs. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997). "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed medical treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Roberson v. Bradshaw, 198 F.3d 645, 646 (8th Cir. 1999).

Even *deliberate* indifference to some medical needs, however, does not result in a violation of the Eighth Amendment right to be free from cruel and unusual punishment. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs

amounts to an Eighth Amendment violation only if those needs are 'serious.'" Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious" medical need has been described as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention" (Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)) and as "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66, 67 (2nd Cir. 1994).

Mr. Maday alleges his feet, due to diabetes and improper footwear and socks, cause him extreme pain. He further alleges that a physician has prescribed treatment at different times including special shoes, ice, a boot, and crutches. He also alleges the defendants have intentionally interfered with that prescribed treatment. As such, Mr. Maday's allegations in his complaint are sufficient to set forth plausible facts necessary to support Eighth Amendment claims. Roberson, 198 F.3d at 646. His deliberate indifference claims are therefore sufficient to survive screening pursuant to 28 U.S.C. §§ 1915 and 1915A.

In this regard, the court notes that Mr. Maday does not name any specific defendants in claim 9. However, liberally construing the complaint and taking the allegations in context, this court construes claim 9 to be asserted against unknown South Dakota Department of Corrections (SDDOC) and South Dakota Department of Health (SDDOH) employees working at the Mike Durfee State Prison (MDSP).

**2.     First Amendment Freedom of Speech Claims**

Under the First Amendment, obscenity is not protected, however sexually explicit materials are.  See Miller v. California, 413 U.S. 15, 23 (1973); Stanley, 394 U.S. at 568.  See also Ashcroft v. Free Speech Coalition, 535 U.S. 234, 240 (2002) (holding the First Amendment generally protects non-obscene pornography for non-prisoners); Reno v. Amer. Civil Liberties Union, 521 U.S. 844, 875 (1997) (stating "In evaluating the free speech rights of adults, we have made it perfectly clear that sexual expression which is indecent but not obscene is protected by the First Amendment.").  Were Mr. Maday a private, free citizen, he would undoubtedly have a right to possess pornographic material.  Reno, 521 U.S. at 875.

However, "incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  Price v. Johnston, 334 U.S. 266, 285 (1948), abrogated on other grounds by McCleskey v. Zant, 499 U.S. 467, 495 (1991).  Generally, the test applied to determine which constitutional rights survive incarceration—and to what extent—requires evaluation of the following four factors:

1.     whether the governmental objective underlying the regulations is legitimate and neutral, and whether the regulations is rationally related to that governmental objective;

2.     whether there are alternative means of exercising the right that remain open to prisoners;

3.     what impact the accommodation of the plaintiff's asserted constitutional right will have on others (guards and inmates) inside the prison; and

4.     whether there are obvious, easy alternatives whose existence show that the regulation in question is not reasonable, but is an "exaggerated response" to prison concerns.

Turner v. Safley, 482 U.S. 78, 89-91 (1987).

Mr. Maday alleges his Sports Illustrated magazines did not contain any nudity or pornography. He also alleges other inmates are allowed to possess hardcover books such as the Bible, ostensibly undermining defendants' security rationale for denying Mr. Maday a hardcover book. Mr. Maday has facially alleged sufficient facts in his complaint to state a First Amendment claim. The court recommends defendants be served with these claims and given an opportunity to respond to them.

### 3.    Denial of Access to the Courts

Prisoners have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977), overruled in part Lewis v. Casey, 518 U.S. 343, 354 (1996).[1] This includes the right by prisoners to pursue direct appeals of their convictions, to seek habeas relief, and to file civil rights actions. Id. at 821-23. This right imposes an obligation on prison authorities to provide indigent inmates with paper and pen to draft legal documents, notary services, and stamps to mail court documents. Id. at 824-25. Prisoners, no less than lawyers, must also "know what the law is in order to determine whether a colorable claim exists, and if so, what facts are necessary to state a cause of

---

[1] The Lewis Court overruled statements in Bounds that suggested that the right of access to the courts required states to enable prisoners to *discover* grievances and to *litigate effectively* once in court. Lewis, 518 U.S. at 354.

action." Id. at 825.  Thus, the right of access to the courts may be protected

where prison officials either provide prisoners with adequate law libraries, or

provide them with assistance from persons trained in the law—although other

methods might also pass constitutional muster.  Id. at 828.  See also Lewis,

518 U.S. at 351.

A prisoner asserting a claim of violation of his or her right of access to

the courts must establish an "actual injury" in order to prevail on a § 1983

claim premised on that right.  Lewis, 518 U.S. at 351-52; Moore v. Plaster, 266

F.3d 928, 933 (8th Cir. 2001) (citing Klinger v. Dept. of Corrections, 107 F.3d

609, 617 (8th Cir. 1997)).  "Actual injury" means "that a nonfrivolous legal

claim had been frustrated or was being impeded" by defendants' failure to

maintain an adequate law library or to provide adequate legal assistance.

Lewis, 518 U.S. at 352-53; Moore, 266 F.3d at 933 (quoting Johnson v.

Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998)).

The Lewis Court emphasized the types of cases outlined in Bounds to

which the right of access to the courts applies:  direct appeals of criminal

convictions, habeas petitions, and civil rights actions to vindicate basic

constitutional rights.  Lewis, 518 U.S. at 354.  Thus, if a prison elects to

provide a law library to its inmates, it need not provide every volume of the

United States Code, most volumes of which concern federal laws that have no

relation to prison inmates.  Id. at 355.  Likewise, access to legal resources

concerning shareholder-derivative actions and slip-and-fall claims would fall

outside the purview of the right of access to the courts.  Id.  Legal materials

addressing these types of claims are simply outside the scope of materials prisoners need to "attack their sentences, directly or collaterally," or "to challenge the conditions of their confinement," matters that are at the heart of the right of access to the courts.  <u>Id.</u>  Denial of legal resources regarding these extraneous topics "is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  <u>Id.</u>

In Mr. Maday's complaint, he alleges he received an electronic tablet from the SDDOC in June, 2017, on which he has access to the legal research engine of Lexis/Nexis.  He alleges, however, that the only law available to him on the SDDOC Lexis/Nexis subscription is South Dakota law.  He argues the SDDOC must provide him with access to Wisconsin law in order that he may file a habeas petition in Wisconsin state court.  He also alleges defendants intercepted and prevented from being delivered a letter Mr. Maday wrote to a Wisconsin attorney seeking assistance.

As to actual injury, Mr. Maday alleges two:  (1) he alleges the time for filing a petition for a writ of certiorari on his direct appeal has already elapsed and (2) he alleges he is being frustrated in attempting to file a collateral attack on his Wisconsin judgment of conviction in Wisconsin state court.

Mr. Maday has facially stated enough facts to assert a denial of access to the courts claim.  The court will order that defendants be served and allowed to respond to Mr. Maday's access to the courts claim.

### 4.  Retaliation

"A prisoner's Eighth Amendment rights are violated if prison officials 'impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right.'" Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007). See also Haynes v. Stephenson, 588 F.3d 1152, 115 (8th Cir. 2009). A *prima facie* case of retaliatory discipline requires a plaintiff to show (1) that he exercised a constitutionally protected right, (2) that he was subsequently disciplined by prison officials, and (3) the motive for imposing the discipline was the exercise of the constitutional right. Id.

To prevail on a claim of retaliation for violation of a First Amendment right, the plaintiff must show (1) that he engaged in a protected activity, (2) that the government defendant took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. Santiago v. Blair, 707 F.3d 984, 991 (8th Cir. 2013).

The third element of the *prima facie* case requires the plaintiff to show that, "but for" the retaliatory motive, the disciplinary action would not have been taken. Haynes, 588 F.3d at 1156. The "but for" test applies to the defendants' motive, not to causation. Beaulieu v. Ludeman, 690 F.3d 1017, 1025 (8th Cir. 2012).

Mr. Maday alleges in claims 14 and 15 that defendants took a number of actions against him in retaliation for the grievances and complaints he made.

Although Mr. Maday does not specify which grievances and complaints, the court assumes Mr. Maday is referring to his medical treatment and mail claims. Because he made these complaints to defendants, Mr. Maday alleges the four defendants named in claims 14 and 15 took away his medically-prescribed shoe inserts, filed false disciplinary reports against him, placed him in the SHU, and refused to investigate Mr. Maday's complaints that he had been the subject of unwanted sexual overtures. Mr. Maday has pleaded sufficient facts to survive screening on his retaliation claims.

**5.  ADA**

The three titles of the ADA each address different aspects of disabled rights. Title I prohibits discrimination against disabled persons in employment. See 42 U.S.C. § 12112. Title III requires places of public accommodation operated by private entities to provide facilities that allow full and equal enjoyment of goods, services and other benefits. See 42 U.S.C. §§ 12181(6), (7), and 12182.

Title II of the ADA prohibits "public entities" from excluding "qualified" disabled persons from programs, activities, or services, or otherwise discriminating against disabled persons. See 42 U.S.C. § 12132.[2] A "qualified individual with a disability" "means an individual with a disability who, with or

---

[2] Section 12132 provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." See 42 U.S.C. § 12132.

without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." See 42 U.S.C. § 12131(2).

A "public entity" is defined in part as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government."[3] See 42 U.S.C. § 12131(1)(A) and (B). Although a state and any department of a state are "public entities" under Title II of the ADA (see Klingler v. Director, Dept. of Revenue, 433 F.3d 1078, 1080 (8th Cir. 2006)), defendants in their individual capacities do not constitute "public entities" subject to suit under Title II of the ADA.

The Eighth Circuit held in an *en banc* decision that Congress' designation of liability for "public entities" under Title II of the ADA necessarily implied that there was no liability for individuals under that statute. See Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (citing Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979)). That decision has been followed by subsequent Eighth Circuit panels. See Dinkins v. Correctional Medical Servs., 743 F.3d 633, 634 (8th Cir. 2014) (*per curiam*) (citing Garcia v. S.U.N.Y. Health Sciences. Ctr. Of Brooklyn, 280 F.3d 98, 107

---

[3] The other part of the definition of "public entity," not relevant here, is "the National Railroad Passenger Corporation, and any commuter authority." See 42 U.S.C. § 12131(1)(C).

(2d Cir. 2001) (interpreting the Rehabilitation Act); <u>Baribeau v. City of Minneapolis</u>, 596 F.3d 465, 484 (8th Cir. 2010).

Other courts have come to the same conclusion as the Eighth Circuit. <u>See e.g.</u> <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1155-56 (9th Cir. 2002) (plaintiff cannot sue defendant in his individual capacity under 42 U.S.C. § 1983 for a Title II ADA violation); <u>Lollar v. Baker</u>, 196 F.3d 603, 610 (5th Cir. 1999) (same); <u>Holbrook v. City of Alpharetta</u>, 112 F.3d 1522, 1531 (11th Cir. 1997) (same);  <u>Wiesman v. Hill</u>, 629 F. Supp. 2d 106, 111-12 (D. Mass. 2009) (holding that there is no liability for "persons" individually under Title II of the ADA, thus dismissing plaintiff's claim against employee of public housing authority); <u>Damron v. North Dakota Com'r of Corrections</u>, 299 F. Supp. 2d 970, 976 (D.N.D. 2004) (holding that prison officials could not be sued in their individual capacities under Title II of the ADA).

These holdings are consistent with the well-accepted principle that there is no individual liability under Title I of the ADA.  <u>Alsbrook</u>, 184 F.3d at 1005 n.8 (citing <u>Butler v. City of Prairie Village</u>, 172 F.3d 736, 744 (10th Cir. 1999); <u>Mason v. Stallings</u>, 82 F.3d 1007, 1009 (11th Cir. 1996); <u>EEOC v. AIC Sec. Investigations, Ltd.</u>, 55 F.3d 1276, 1280-82 (7th Cir. 1995)).

But, a plaintiff may assert a Title II claim for injunctive relief against a state employee in his or her official capacity.  The Eleventh Amendment does not bar the granting of injunctive relief.  <u>Bradley v. Arkansas Dept. of Educ.</u>, 189 F.3d 745 (8th Cir. 1999), <u>rev'd in part</u>, <u>Jim C. v. Arkansas Dept. of Educ.</u>,

235 F.3d 1079 (8th Cir. 2000); Missouri Child Care Assn. v. Cross, 294 F.3d 1034 (8th Cir. 2002).

Claims based on medical treatment decisions, including claims that a defendant failed to properly diagnose or treat a condition, cannot form the basis of an ADA claim under Title II of that act nor under the Rehabilitation Act. Dinkins, 743 F.3d at 634; Burger v. Bloomberg, 418 F.3d 882, 883 (8th Cir. 2005) (*per curiam*). However, claims based on denial of meals or adequate housing based on a plaintiff's disability *can* form the basis for viable ADA and RA claims. Dinkins, 743 F.3d at 634-35 (citing Pa. Dept. of Corr. V. Yeskey, 524 U.S. 206, 210 (1998); Jaros v. Ill. Dept. of Corr., 684 F.3d 667, 672 (7th Cir. 2012)).

The ADA defines "disability" to include any "physical or mental impairment that substantially limits one or more major life activities." Richards v. Minnesota, 2016 WL 7007487 at *5 (D. Minn. Nov. 29, 2016). The regulations promulgated by the Equal Employment Opportunity Commission (EEOC) define "physical or mental impairment" to include "diabetes." Id. (citing 28 C.F.R. § 35.104). Major life activities include eating and the operation of the digestive system. Id. (citing 42 U.S.C. § 12102(2)).

Mr. Maday does not clarify in his complaint whether he is suing the defendants named in his ADA claims (claims 16-18), in their official or individual capacities. The above law makes clear that Mr. Maday cannot receive money damages on his ADA claims nor can he sue any defendant in his or her individual capacities. In the spirit of liberal construction, the court

20

construes Mr. Maday's complaint to seek injunctive and declaratory relief only against defendants in their official capacities as to his ADA claims. His ADA claims, as so limited, may be served on defendants and they be given an opportunity to respond.

## CONCLUSION

Mr. Maday's complaint has been screened as required by the Prison Litigation Reform Act ("PRLA"), 28 U.S.C. § 1915. The Court has determined the complaint is sufficient to survive screening. Accordingly it is hereby

ORDERED:

1. The United States Marshal shall serve a copy of the complaint (Docket 1), Summons, and this Order upon defendants as directed by plaintiff. All costs of service shall be advanced by the United States.

2. From this point forward, whenever Mr. Maday files any motion or pleading with the court, he must also serve the defendants or their attorney if an attorney has appeared for defendants, with a copy of such pleadings. Also, each future pleading that Mr. Maday files with the court must include a certificate, signed under oath, stating the date he mailed a true and correct copy of his document to defendants or their counsel with proper postage. Any paper received by this court which has not been filed with the clerk or which fails to include a certificate of service indicating service on defendants will be disregarded by the court.

DATED January 22, 2018.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge