UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| STANLEY J. MADAY, | **4:17-CV-04168-KES** |
| Plaintiff, | |
| vs. | |
| BOB DOOLEY, CHIEF WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; DENNIS KAEMINGK, SECRETARY OF THE SOUTH DAKOTA DOC, INDIVIDUAL AND OFFICIAL CAPACITY; DR. MARY CARPENTER, DIRECTOR OF THE DEPARTMENT OF HEALTH, INDIVIDUAL AND OFFICIAL CAPACITY; JENNIFER STANWICK-KLIMEK, DEPUTY WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; REBECCA SCHIEFFER, ASSOCIATE WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; ALEJANDRO REYES, ASSOCIATE WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; BRENT FLUKE, ASSOCIATE WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; JOSH KLIMEK, UNIT MANAGER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; TRAVIS TJEERDSMA, CASE MANAGER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; TAMMY DEJONG, CASE MANAGER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; PA MICHAEL JOE HANVEY, MEDICAL PROVIDER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; PA BRAD ADAMS, MEDICAL PROVIDER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; DR. | **REPORT AND RECOMMENDATION AS TO MOTION TO DISMISS BY DEFENDANTS CBM AND CBM EMPLOYEES**<br><br>**DOCKET NO. 62** |

STEPHAN SCHROEDER, MEDICAL
PROVIDER AT MIKE DURFEE STATE
PRISON, INDIVIDUAL AND OFFICIAL
CAPACITY; MISTY TOLSMA-HANVEY,
NURSING SUPERVISOR, AT MIKE
DURFEE STATE PRISON INDIVIDUAL
AND OFFICIAL CAPACITY; LINDSEY
RABBASS, NURSE AT MIKE DURFEE
STATE PRISON, INDIVIDUAL AND
OFFICIAL CAPACITY; ROBIN MYER,
NURSE AT MIKE DURFEE STATE
PRISON, INDIVIDUAL AND OFFICIAL
CAPACITY; CANDICE FEJFAR, NURSE
AT MIKE DURFEE STATE PRISON,
INDIVIDUAL AND OFFICIAL CAPACITY;
DAYNA KLAWITTER, NURSE AT MIKE
DURFEE STATE PRISON, INDIVIDUAL
AND OFFICIAL CAPACITY; DENNIS
CROPPER, CORRECTIONAL OFFICER
AT MIKE DURFEE STATE PRISON,
INDIVIDUAL AND OFFICIAL CAPACITY;
THOMAS HUITEMA, CORRECTIONAL
OFFICER AT MIKE DURFEE STATE
PRISON, INDIVIDUAL AND OFFICIAL
CAPACITY; MICHAEL MEYER,
CORRECTIONAL OFFICER AT MIKE
DURFEE STATE PRISON, INDIVIDUAL
AND OFFICIAL CAPACITY; LORI
STRATMAN, CORRECTIONAL OFFICER
AT MIKE DURFEE STATE PRISON,
INDIVIDUAL AND OFFICIAL CAPACITY;
MIKE GROSSHUESCH,
CORRECTIONAL OFFICER AT MIKE
DURFEE STATE PRISON, INDIVIDUAL
AND OFFICIAL CAPACITY; NICOLE ST.
PIERRE, CORRECTIONAL OFFICER AT
MIKE DURFEE STATE PRISON,
INDIVIDUAL AND OFFICIAL CAPACITY;
MURIEL NAMMINGA, LAUNDRY
SUPERVISOR AT MIKE DURFEE STATE
PRISON, INDIVIDUAL AND OFFICIAL
CAPACITY; CATHERINE SCHLIMGEN,
LEGAL COUNSEL FOR THE SOUTH
DAKOTA DOC, INDIVDUAL AND
OFFICIAL CAPACITY;  UNKNOWN CBM
FOOD SERVICES EMPLOYEES,

INDIVIDUAL AND OFFICIAL
CAPACITIES;  UNKNOWN SOUTH
DAKOTA DOC EMPLOYEES,
INDIVIDUAL AND OFFICIAL
CAPACITES;  UNKNOWN SOUTH
DAKOTA DOH EMPLOYEES,
INDIVIDUAL AND OFFICIAL
CAPACITIES; JON E. LITSCHER,
SECRETARY OF THE WISCONSIN
DOC, INDIVIDUAL AND OFFICIAL
CAPACITY; KATHARINE A. ARISS,
ASSISTANT LEGAL COUNSEL FOR THE
WISCONSIN DOC, INDIVIDUAL AND
OFFICIAL CAPACITY; THOMAS P.
MALONEY, LIBRARY SERVICES AND
EDUCATIONAL TECHNOLOGY
COORDINATOR FOR THE WISCONSIN
DOC, INDIVIDUAL AND OFFICIAL
CAPACITY;  UNKNOWN WISCONSIN
DOC EMPLOYEES, INDIVIDUAL AND
OFFICIAL CAPACITIES; CBM FOOD
SERVICES, MEAL AND COMMISSARY
PROVIDER FOR THE SOUTH DAKOTA
DOC, OFFICIAL CAPACITY; STEPHANIE
HAMILTON, RN AT MIKE DURFEE
STATE PRISON, INDIVIDUAL AND
OFFICIAL CAPACITY; TIFFANY VOIGT,
UNIT COORDINATOR, INDIVIDUAL
AND OFFICIAL CAPACITY; DIANE
ROMKEMA, CASE MANAGER,
INDIVIDUAL AND OFFICIAL CAPACITY;
GLOBAL TEL & LINK CORPORATION;
OFFICIAL CAPACITY; UNKNOWN GTL
EMPLOYEES, INDIVIDUAL AND
OFFICIAL CAPACITIES; LEXIS NEXIS,
OFFICIAL CAPACITY; AND UNKNOWN
LEXIS NEXIS EMPLOYEES,
INDIVIDUAL AND OFFICIAL
CAPACITITES,

Defendants.

## INTRODUCTION

This matter is before the court on the *pro se* amended and supplemental complaint of Stanley J. Maday, an inmate at the Mike Durfee State Prison in Springfield, South Dakota. He alleges claims against numerous defendants under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA). See Docket Nos. 1 & 94. Now pending is a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) by defendants CBM and CBM employees (collectively "CBM"). See Docket No. 62. Mr. Maday resists CBM's motion. See Docket No. 66. This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B), and the January 19, 2018, order of the Honorable Karen E. Schreier, United States District Judge. See Docket No. 9.

## FACTS

In keeping with the standard for Rule 12(b)(6) motions, as detailed below, the following facts are taken from Mr. Maday's complaint and his amended and supplemental complaint. Mr. Maday sues CBM Food Services and Unknown CBM Food Services employees. See Docket No. 1 at p. 2. Mr. Maday asserts "CBM Food services is the meal and commissary provider for the South Dakota [Department of Corrections] DOC. It is sued in its official capacity." Id. at p. 6, ¶ 31. CBM employees are sued in both their "individual and official capacities." Id. at ¶ 32.

Mr. Maday asserts he is a "qualified individual with disabilities under" the ADA because of his history of diabetes, hypertension, hypothyroidism, foot

problems and respiratory disorders.  Id. at p. 7, ¶ 43; p. 31, ¶ 116.  He alleges

he is entitled to a diet that meets his needs as a diabetic.  Id. at p. 31, ¶ 117.

He alleges defendant Dr. Mary Carpenter has been notified that the diet

provided by CBM is detrimental to diabetes, but she does nothing to change it.

Id.  He alleges he was prescribed a diabetic diet and never received one, but he

never identifies who prescribed such a diet.  Id. at p. 31-32, ¶ 118.

Mr. Maday alleges CBM provides a diet based on total calories, but not

based on nutritional values.  Id. at p. 32, ¶ 119.  He alleges CBM provides false

information about the protein and carbohydrates contained in the food it

serves.  Id.  "Health care providers will no longer prescribe me a diabetic diet

because [Mr. Maday] will not receive one."  Id.  "CBM Food Services will not

prepare a diabetic diet because it is not in their interests to do so since this will

interfere with their profit margin.  The CBM dietician alleges that a diabetic diet

meal is provided but one is never issued at meal times."  Id.

Subsequent to filing his initial complaint, Mr. Maday alleges in his

amended and supplemental complaint that he has now been prescribed a

diabetic diet.  However, he argues that CBM provides him with either a heart

healthy tray, or a bland diet tray, but never a diabetic diet tray.  See Docket

No. 94 at p. 20.

Although Mr. Maday alleges CBM lists "fresh fruit" on its regular meal

trays, in fact it has provided only applesauce every single time for the last two

years as the "fruit."  Id. at ¶ 120.  Mr. Maday alleges CBM does not prepare

meals using "conventional recipes."  Id.  He alleges CBM regularly runs out of

menu items in the middle of serving a meal and either replaces it with whatever they want, or simply does not replace the item at all.  Id. at ¶ 121.  Mr. Maday asserts it is impossible to "get the necessary nutritional elements to control diabetes" on the food provided by CBM.  Id. at pp. 32-33, ¶ 122.

Mr. Maday states "[b]y refusing to provide a diabetic diet CBM Food Services is retaliating against me because I am a diabetic.  They do not want to incur the additional cost it would require to provide a diabetic diet.  Therefore, I am being denied a program or service under Title II of the" ADA.  Id. at p. 33, ¶ 122.  He also states, "CBM Food Services, the South Dakota DOC and the South Dakota [Department of Health] DOH are violating my rights under the [ADA] by failing to provide me a diabetic diet necessary for the control of my diabetes.  My health care providers are aware of the fact CBM Food Services provides an unhealthy diet, because they have told me so, but they do nothing to fix the problem.  I am entitled to access to food services under the" ADA.  Id. at p. 43, ¶ 144.

Mr. Maday seeks a declaration that "all listed defendants" have violated his rights under the ADA.  Id. at p. 45, ¶ 151.  He also seeks an injunction from the court ordering that federal funding be withheld from the South Dakota DOC until it is in full compliance with the ADA.  Id. at ¶ 149. Mr. Maday further seeks compensatory damages in the amount of $100,000 and punitive damages in the amount of $300,000 for both his § 1983 and ADA claims.  Id. at p. 48, ¶¶ 162-63.  He demands a trial by jury on all issues triable to a jury and his costs.  Id. at ¶¶ 164-65.

CBM moves for dismissal of Mr. Maday's ADA claims against it. See Docket No. 62. CBM assumes, for purposes of their motion, that Mr. Maday's diabetes likely qualifies as a "disability" under the ADA. Id. at p. 6. However, they argue Title II of the ADA applies only to "public entities" and CBM is not a public entity. Id. Even if CBM could be construed to be a public entity, it argues it is not violating Title II of the ADA because Mr. Maday admits in his complaint his healthcare providers no longer prescribe a diabetic diet for him, so CBM argues it is not denying him a medically-required diet. Id. at pp. 7-8. Furthermore, although Mr. Maday alleges CBM's food has caused his diabetes, he also alleges his diabetes predated his incarceration. Id. at p. 9.

Mr. Maday resists CBM's motion. See Docket No. 66. He alleges there is a difference between what CBM lists as food on its menus, and what it actually serves inmates. Id. Further, he alleges CBM has, in other venues, represented that it *is* a state actor. Id. Therefore, Mr. Maday argues CBM should be held to be a "public entity" for purposes of his ADA claim. Id.

## DISCUSSION

## A.    Standard Applicable to Rule 12(b)(6) Motions

The defendants' motion to dismiss is based on FED. R. CIV. P. 12(b)(6), which allows dismissal if the plaintiff has failed to state a claim upon which relief can be granted. Plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face." Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(emphasis added).

7

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)). A complaint does not need "detailed factual allegations" to survive a motion to dismiss, but a plaintiff must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action. Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). There is also a "plausibility standard" which "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the plaintiff has a valid claim. Id. at 556. The plaintiff's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief. Id.

There are two "working principles" that apply to Rule 12(b)(6) motions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint. Id. (citing Papasan, 478 U.S. at 286). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)). Where the plaintiff's allegations are merely conclusory, the court may

not infer more than the mere possibility of misconduct, and the complaint has *alleged*--but has not "show[n]"--that he is entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth.  Id. at 679-680.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief.  Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.  These are the principles guiding the court's evaluation of defendants' motion.

**B.    Americans With Disabilities Act**

The three titles of the ADA each address different aspects of disabled rights.  Title I prohibits discrimination against disabled persons in employment.  See 42 U.S.C. § 12112.  Title III requires places of public accommodation operated by private entities to provide facilities that allow full and equal enjoyment of goods, services and other benefits.  See 42 U.S.C. §§ 12181(6), (7), and 12182.

Title II of the ADA prohibits "public entities" from excluding "qualified" disabled persons from programs, activities, or services, or otherwise discriminating against disabled persons.  See 42 U.S.C. § 12132.[1]  A "qualified

---

[1] Section 12132 provides:  "Subject to the provisions of this subchapter, no

individual with a disability" "means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." See 42 U.S.C. § 12131(2).

A "public entity" is defined in part as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government."[2] See 42 U.S.C. § 12131(1)(A) and (B). Although a state and any department of a state are "public entities" under Title II of the ADA (see Klingler v. Director, Dept. of Revenue, 433 F.3d 1078, 1080 (8th Cir. 2006)), defendants in their individual capacities do not constitute "public entities" subject to suit under Title II of the ADA.

The Eighth Circuit held in an *en banc* decision that Congress' designation of liability for "public entities" under Title II of the ADA necessarily implied that there was no liability for individuals under that statute. See Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (citing Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979)). That

---

qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." See 42 U.S.C. § 12132.

[2] The other part of the definition of "public entity," not relevant here, is "the National Railroad Passenger Corporation, and any commuter authority." See 42 U.S.C. § 12131(1)(C).

decision has been followed by subsequent Eighth Circuit panels.  See Dinkins v. Correctional Medical Servs., 743 F.3d 633, 634 (8th Cir. 2014) (*per curiam*) (citing Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (interpreting the Rehabilitation Act); Baribeau v. City of Minneapolis, 596 F.3d 465, 484 (8th Cir. 2010).

Other courts have come to the same conclusion as the Eighth Circuit. See e.g. Vinson v. Thomas, 288 F.3d 1145, 1155-56 (9th Cir. 2002) (plaintiff cannot sue defendant in his individual capacity under 42 U.S.C. § 1983 for a Title II ADA violation); Lollar v. Baker, 196 F.3d 603, 610 (5th Cir. 1999) (same); Holbrook v. City of Alpharetta, 112 F.3d 1522, 1531 (11th Cir. 1997) (same);  Wiesman v. Hill, 629 F. Supp. 2d 106, 111-12 (D. Mass. 2009) (holding that there is no liability for "persons" individually under Title II of the ADA, thus dismissing plaintiff's claim against employee of public housing authority); Damron v. North Dakota Com'r of Corrections, 299 F. Supp. 2d 970, 976 (D.N.D. 2004) (holding that prison officials could not be sued in their individual capacities under Title II of the ADA).

These holdings are consistent with the well-accepted principle that there is no individual liability under Title I of the ADA.  Alsbrook, 184 F.3d at 1005 n.8 (citing Butler v. City of Prairie Village, 172 F.3d 736, 744 (10th Cir. 1999); Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996); EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1280-82 (7th Cir. 1995)).

But, a plaintiff may assert a Title II claim for injunctive relief against a state employee in his or her official capacity.  The Eleventh Amendment does

not bar the granting of injunctive relief.  Bradley v. Arkansas Dept. of Educ.,
189 F.3d 745 (8th Cir. 1999), rev'd in part, Jim C. v. Arkansas Dept. of Educ.,
235 F.3d 1079 (8th Cir. 2000); Missouri Child Care Assn. v. Cross, 294 F.3d
1034 (8th Cir. 2002).

## C.    CBM is Not a Public Entity

Mr. Maday sues the CBM defendants only under Title II of the ADA.  No
court has interpreted the ADA definition of "public entity" to encompass private
companies who contract with governmental units to provide goods or services.
In Green v. City of New York, 465 F.3d 65, 78-79 (2d Cir. 2006), the plaintiff
sued a private hospital under Title II of the ADA, asserting the hospital was an
"instrumentality" of the city because it provided services pursuant to a contract
with the city.  The court examined § 12131(1) minutely.  Id.  The word
"instrumentality" appeared in a string of words that included "agency,"
"department," and "special purpose district."  Id. at 79.  An "agency" and a
"department" are units of a governmental entity.  Id.  A "special purpose
district" is a district which is created by a governmental entity to serve certain
specific needs such as sewer, parking, and drainage.  Id.  In this company of
words, the Second Circuit concluded that "instrumentality" was limited to
meaning either a governmental subdivision or an entity created by a
governmental entity.  Id.  The court concluded that a "private hospital
performing services pursuant to a contract with a municipality even if it does
so according to the municipality's rules and under its direction, is not a
creature of any governmental entity.  Instead it is a parallel private entity."  Id.

12

The court accordingly concluded the hospital was not an entity amenable to suit under Title II of the ADA.  Id.

The Eleventh Circuit applied the reasoning of Green in a prison context in Edison v. Douberly, 604 F.3d 1307 (11th Cir. 2010).  In that case, Edison, a state prisoner, sued GEO Care Group, Inc. (GEO), a private company hired by the Florida state prison system to provide prison management and operation services.  Id. at 1308.  Edison asserted a claim under Title II of the ADA.  Id. The court held GEO could not be sued under the ADA because it was not an "instrumentality" of the state.  Id. at 1310.  The court held that merely contracting with a public entity was not enough to render an otherwise private entity an "instrumentality" of the state.  Id.  Rather, as the Green court held, the private entity being sued must either be a subdivision of the governmental entity or be created by that governmental entity.  Id. at 1309-10.

In an unpublished, *per curiam* opinion, the Eighth Circuit adopted the reasoning of the Eleventh Circuit.  Johnson v. Neiman, 504 Fed. Appx. 543, 545 (8th Cir. 2013) (citing Edison).  In that case, the court dismissed a prisoner's Title II ADA claim against Correctional Medical Services and Mental Health Management.  Id.

In Castle v. Eurofresh, Inc., 734 F. Supp. 2d 938, 942-43 (D. Ariz. 2010), a state prisoner sued Eurofresh, Inc. alleging he was denied (because of his disability) to access to a prison job program with six times the wages normally paid for other prison jobs.  The court dismissed the Title II ADA claim against Eurofresh on screening under 28 U.S.C. § 1915.  Id.  Although Castle had

alleged in his complaint that Eurofresh was an "instrumentality" of the state under § 12131(1), the court dismissed this as a legal conclusion, not a statement of fact using the Twombly-Iqbal analysis.  Id.  The court held under the ADA, an entity qualifies as an "instrumentality" only if it was either a governmental unit or was created by a governmental unit.  Id.  Because Eurofresh was a private entity, the court held Title II of the ADA did not apply to it as a matter of law.  Id.

Mr. Maday alleges in his complaint CBM contracts with the South Dakota DOC to provide meal and commissary services.  See Docket No. 1.  He never alleges that CBM is a subdivision of a governmental entity, nor does he allege CBM was created by a governmental entity.  Mr. Maday's complaint, therefore, fails to state a claim against CBM under Title II of the ADA.

Mr. Maday alleges that in other litigation, CBM has held itself out to be a governmental entity, citing Fisher v. Devore, 2017 WL 3634091 (W.D. Ark. July 26, 2017).  The Fisher case did not involve interpretation of the ADA. Rather, that case involved claims brought by an Indiana prisoner under 42 U.S.C. § 1983 alleging defendants, including CBM, failed to provide him with Kosher food in accordance with his religious beliefs.  Id. at *1.  The court analyzed whether CBM was entitled to qualified immunity under § 1983.  Id. CBM in that case, as here, provided food services to the prison pursuant to a contract.  Id.  All food preparation and planning was done by CBM.  Id.  CBM moved for summary judgment alleging there were no material disputes of fact involving its preparation and handling of Kosher food for Fisher.  Id. at **2-11.

14

The court held Fisher had failed to establish that his constitutional rights had been violated and, for that reason, granted summary judgment to CBM. Id. at *11. True, the court stated CBM was entitled to "qualified immunity," but the basis of its holding was that Fisher never demonstrated a violation of a constitutional right, not that CBM was a governmental entity. Id. See Pearson v. Callahan, 555 U.S. 223, 236 (2009) (holding that the two elements of qualified immunity are whether a constitutional right was violated and whether the defendant knowingly violated that clearly established right; courts can decide the qualified immunity question based on either prong of the inquiry).

The discernment as to whether a private actor may partake of qualified immunity under § 1983 is a completely different analytical inquiry than the "instrumentality" inquiry under Title II of the ADA. Compare Filarsky v. Delia, 566 U.S. 377 (2012); and Richardson v. McKnight, 521 U.S. 399 (1997); with Green, 465 F.3d at 78-79. Thus, Fisher does not establish, as Mr. Maday asserts, that CBM held itself out as a governmental entity in that case or is a governmental entity in this case.

Because the court concludes that Mr. Maday's ADA claim against CBM and its employees must fail because CBM is not an "instrumentality" of the state, the court declines to address CBM's other fact-related arguments.

## CONCLUSION

Based on the foregoing law, facts, and analysis, this magistrate judge respectfully recommends that the motion to dismiss filed by CBM Food

Services, Inc. and unidentified CBM employees [Docket No. 62] be granted for the reason that the only claim Mr. Maday asserts against the CBM defendants arises under the ADA and the CBM defendants are not "public entities" as defined by that Act.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1)(B).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED May 30, 2018.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

16