UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| STANLEY J. MADAY,<br><br>    Plaintiff,<br><br> vs.<br><br>BOB DOOLEY, CHIEF WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; DENNIS KAEMINGK, SECRETARY OF THE SOUTH DAKOTA DOC, INDIVIDUAL AND OFFICIAL CAPACITY; DR. MARY CARPENTER, DIRECTOR OF THE DEPARTMENT OF HEALTH, INDIVIDUAL AND OFFICIAL CAPACITY; JENNIFER STANWICK-KLIMEK, DEPUTY WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; REBECCA SCHIEFFER, ASSOCIATE WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; ALEJANDRO REYES, ASSOCIATE WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; BRENT FLUKE, ASSOCIATE WARDEN AT MIKE DURFEE STTAE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; JOSH KLIMEK, UNIT MANAGER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; TRAVIS TJEERDSMA, CASE MANAGER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; TAMMY DEJONG, CASE MANAGER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; PA MICHAEL JOE HANVEY, MEDICAL PROVIDER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; PA BRAD ADAMS, MEDICAL PROVIDER AT MIKE DURFEE STATE PRISON, INDIVIDUAL | 4:17-CV-04168-KES<br><br><br><br><br>REPORT AND RECOMMENDATION AS TO DEFENDANT BRAD ADAMS' MOTION TO DISMISS<br><br>DOCKET NO. 26 |

| | |
|---|---|
| AND OFFICIAL CAPACITY; DR. STEPHAN SCHROEDER, MEDICAL PROVIDER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; MISTY TOLSMA-HANVEY, NURSING SUPERVISOR, AT MIKE DURFEE STATE PRISON INDIVIDUAL AND OFFICIAL CAPACITY; LINDSEY RABBASS, NURSE AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; ROBIN MYER, NURSE AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; CANDICE FEJFAR, NURSE AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; DAYNA KLAWITTER, NURSE AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; DENNIS CROPPER, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; THOMAS HUITEMA, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; MICHAEL MEYER, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; LORI STRATMAN, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; MIKE GROSSHUESCH, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; NICOLE ST. PIERRE, CORRECTIONAL OFFICER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; MURIEL NAMMINGA, LAUNDRY SUPERVISOR AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; CATHERINE SCHLIMGEN, LEGAL COUNSEL FOR THE SOUTH DAKOTA DOC, INDIVDUAL AND OFFICIAL CAPACITY;  UNKNOWN CBM FOOD SERVICES EMPLOYEES, INDIVIDUAL AND OFFICIAL CAPACITIES; UNKNOWN SOUTH DAKOTA DOC EMPLOYEES, INDIVIDUAL AND OFFICIAL CAPACITIES;  UNKNOWN | |

| | |
|---|---|
| SOUTH DAKOTA DOH EMPLOYEES, INDIVIDUAL AND OFFICIAL CAPACITIES; JON E. LITSCHER, SECRETARY OF THE WISCONSIN DOC, INDIVIDUAL AND OFFICIAL CAPACITY; KATHARINE A. ARISS, ASSISTANT LEGAL COUNSEL FOR THE WISCONSIN DOC, INDIVIDUAL AND OFFICIAL CAPACITY; THOMAS P. MALONEY, LIBRARY SERVICES AND EDUCATIONAL TECHNOLOGY COORDINATOR FOR THE WISCONSIN DOC, INDIVIDUAL AND OFFICIAL CAPACITY;  UNKNOWN WISCONSIN DOC EMPLOYEES, INDIVIDUAL AND OFFICIAL CAPACITIES;  CBM FOOD SERVICES, MEAL AND COMMISSARY PROVIDER FOR THE SOUTH DAKOTA DOC, OFFICIAL CAPACITY; STEPHANIE HAMILTON, RN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; TIFFANY VOIGT, UNIT COORDINATOR, INDIVIDUAL AND OFFICIAL CAPACITY; DIANE ROMKEMA, CASE MANAGER, INDIVIDUAL AND OFFICIAL CAPACITY;  GLOBAL TEL & LINK CORPORATION, OFFICIAL CAPACITY;  UNKNOWN GTL EMPLOYEES, INDIVIDUAL AND OFFICIAL CAPACITIES;  LEXIS NEXIS, OFFICIAL CAPACITY; AND  UNKNOWN LEXIS NEXIS EMPLOYEES, INDIVIDUAL AND OFFICIAL CAPACITIES;<br><br>           Defendants. | |

## INTRODUCTION

This matter is before the court on the *pro se* complaint and amended supplemental complaint of Stanley Maday.  See Docket Nos. 1 & 94. Mr. Maday, a prisoner at the South Dakota Mike Durfee State Prison (MDSP), asserts a wide-ranging variety of claims under 42 U.S.C. § 1983 and Title II of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12132.  Id.  Currently

3

pending is a motion to dismiss by defendant Brad Adams pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Docket No. 26.  Mr. Maday has not opposed the motion, though he requested extra time in which to do so.[1]  This case has been referred to this magistrate judge for handling of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier.  See Docket No. 9.  This court respectfully recommends dismissal of Mr. Maday's claim against Mr. Adams.

## FACTS

In keeping with the standard for Rule 12(b)(6) motions (discussed more fully below), the following facts regarding Mr. Adams are taken from Mr. Maday's complaint and amended supplemental complaint.  See Docket Nos. 1 & 94.

Mr. Maday identifies defendant Michael Joe Hanvey, a physician's assistant, as "the" medical provider at MDSP, but notes tht he was subsequently transferred to the South Dakota State Prison (SDSP) in Sioux Falls, South Dakota.  See Docket No. 1 at p. 4.  Mr. Maday identifies Mr. Adams, also a physician's assistant, also as "the" medical care provider at MDSP.  Id.  In his factual allegations from August 12, 2013, through November

---

[1] Mr. Adams' motion to dismiss was filed on February 27, 2018.  See Docket No. 26.  On March 8, 2018, Mr. Maday sought a 60-day extension of time to respond to Mr. Adams' motion.  See Docket No. 35.  The court granted Mr. Maday an extension until May 23, 2018, to file his response.  See Docket No. 37.  Despite this sequence of events, Mr. Maday failed to file a response to Mr. Adams' motion.

4

13, 2015, Mr. Maday refers to "the provider, Michael Joe Hanvey" repeatedly. Id. at p. 10, ¶ 53; p. 11, ¶ 57; p. 12, ¶ 63; and p. 16, ¶ 77.

Mr. Maday mentions seeing Mr. Adams for the first time on September 11, 2015. Id. at p. 13, ¶ 65. On this occasion, Mr. Maday requested treatment for a lesion under his left big toenail and severe pain in his right heel. Id. In response, Mr. Adams scheduled Mr. Maday to see a podiatrist outside the South Dakota prison health system for his toenail. Id. He also scheduled x-rays for Mr. Maday's right heel to determine if bone spurs were causing his pain. Id. Finally, Mr. Adams gave Mr. Maday arch supports to wear inside his shoes to help with his heel pain. Id.

The podiatrist, Dr. Terence Pederson of Avera Medical Group Podiatry, removed Mr. Maday's left big toenail and conducted a biopsy. Id. at p. 13, ¶ 67. Mr. Maday alleged this made the heel pain in his right foot worse because he had to limp on his left foot.[2] Id.

Mr. Maday next saw Mr. Adams on June 17, 2016. See Docket No. 94 at p. 4, ¶ 514. Mr. Maday requested "Dr. Comfort" brand diabetic socks at this visit. Id. Mr. Adams told Mr. Maday that the only diabetic socks available were the ones issued by MDSP laundry. Id. Mr. Adams also offered to prescribe Ted hose stocking for his foot-related diabetic concerns. Id. Mr. Adams also gave Mr. Maday a handout with stretching exercises on it for his plantar fasciitis (heel pain). Id.

---

[2] Mr. Maday asserts in his amended supplemental complaint that other prison medical staff gave him a cam walker boot and crutches to use on November 11, 2015, due to his heel pain. See Docket No. 94 at p. 3, ¶ 512.

5

The next time Mr. Maday asserts he saw Mr. Adams was 11 months later on August 9, 2016. See Docket No. 1 at p. 19, ¶ 83. During the interim since the last time Mr. Maday had seen Mr. Adams, it had been determined that Mr. Maday had suffered a fracture in his foot for which he was again referred to the outside podiatrist, Dr. Pederson. Mr. Adams had not been involved in the treatment of this fracture. Mr. Maday asserts he asked Mr. Adams on August 9, 2016, whether it was normal to have constant pain at the site of a fracture after it was supposed to have healed. Id. Mr. Adams responded it was not unheard of. Id. Because of Mr. Adams' response, Mr. Maday alleges he "did not pursue further action towards the pain in my foot until it began to worsen." Id.

Mr. Maday's pursuit of further treatment for his foot pain came one month later on September 7, 2016, but he did not see Mr. Adams on this occasion, but rather a nurse. Id. at p. 20, ¶ 84. He alleges due to "disorganized lines of therapeutic responsibility," his request for further foot treatment was never honored. Id. at ¶ 85. Mr. Maday never alleges that Mr. Adams knew of, or was responsible for, the fact that Mr. Maday's September 7, 2016, request for foot treatment went unheeded.

Mr. Maday alleges the next time he saw Mr. Adams was on February 7, 2017, for a chronic care visit at which he complained of constant pain in his foot at the site of his stress fracture. Id. at ¶ 86. Mr. Adams ordered that x-rays be taken of Mr. Maday's foot. Id.

Mr. Maday saw Mr. Adams again on February 15, 2017, to go over the x-rays. Id. at p. 21, ¶ 89. Mr. Adams told Mr. Maday the stress fracture was worse with a partial displacement. Id. Mr. Adams wrapped Mr. Maday's foot in a splint because medical did not have a walking cast/boot in stock that fit Mr. Maday. Id. at pp. 21-22, ¶ 89. Mr. Adams also issued crutches to Mr. Maday. Id. at p. 22. Mr. Maday later took the splint off and refused subsequent offers to refit him with a splint.³ Id. at p. 22, ¶ 90.

Apparently, Mr. Adams must have also ordered blood work on Mr. Maday previously, because at the February 15, 2017, visit he also went over the results of the blood tests with Mr. Maday. Id. at p. 22, ¶ 89. Mr. Adams informed Mr. Maday that he was suffering from vitamin B12, vitamin D, and calcium deficiencies along with an elevated rheumatoid factor. Id. Because of this, it appears Mr. Adams prescribed a diabetic diet for Mr. Maday. Id. at p. 32, ¶ 118.⁴ Mr. Adams allegedly told Mr. Maday he was concerned about the "rampant" issue of vitamin B12 deficienies among many inmates at MDSP and he was conducting a study to address the issue. See Docket No. 94 at p. 6,

---

³ This conflicts with what Mr. Maday himself asserts in his amended and supplemental complaint. In that document, he states he *asked* defendant Stephanie Hamilton to assist him in reapplying the splint, but she mocked him and refused. See Docket No. 94 at p. 7, ¶ 521.

⁴ Mr. Maday does not identify who prescribed the diabetic diet for him, but asserts the diet was prescribed because of blood tests showing deficiencies in B12, D, and calcium as well as elevated hemoglobin A-1-C levels. See Docket No. 1 at p. 32-33, ¶ 118. This matches with what Mr. Maday asserts Mr. Adams informed him about his blood tests. Id. at p. 22, ¶ 89.

¶ 520. Mr. Adams prescribed supplemental vitamins and calcium for Mr. Maday at this visit. Id.

Mr. Adams must have also referred Mr. Maday to the podiatrist, Dr. Pederson,[5] again as Mr. Maday saw Dr. Pederson on February 20, 2017. See Docket No. 1 at ¶ 91. Dr. Pederson placed Mr. Maday's foot in an air cast and told him he did not need to use the crutches for short walks. Id. Dr. Pederson also recommended Mr. Maday use an ultrasonic bonegrowth stimulator to accelerate healing of his foot. Id. Mr. Maday thereafter began receiving the ultrasonic bonegrowth stimulator treatments for 20 minutes twice a day for 12 weeks. Id. at p. 23, ¶ 93. Mr. Maday claims he still has constant pain in his right foot at the site of the fracture despite the fact Dr. Pederson gave him a "clean bill of health." Id. at ¶ 95.

Mr. Maday asserts claims against Mr. Adams for deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. Id. at p. 38-39, ¶¶ 136-37. He bases his claims on Mr. Adams' statement to Mr. Maday on August 9, 2016, that the pain in Mr. Maday's foot was normal. Id. Because of this statement, Mr. Maday alleges he experienced a delay in medical treatment that resulted in a mal-union of the bone in his foot which still causes him pain. Id. Also, he faults Mr. Adams for giving him a splint instead of a properly-fitting walking boot once Mr. Adams discovered Mr. Maday's fracture had not healed. The span of

---

[5] In this court's experience with numerous lawsuits from prisoners in South Dakota state prisons, inmates do not see outside medical care providers unless a physician or physician's assistant requests it and gets approval for the request.

time between when Mr. Adams went over the x-rays with Mr. Maday and gave him the splint (February 15) and the time Mr. Maday received an air boot from Dr. Pederson (Februry 20) was five days.  He also faults Mr. Adams for not giving him the name-brand requested diabetic socks Mr. Maday wanted.  See Docket No. 94 at p. 15, ¶ 543.  Finally, he faults Mr. Adams for signing off on nurse Stephanie Hamilton's treatment notes when Mr. Maday asserts Mr. Adams should have known nurse Hamilton's treatment was wrong.  Id.

## DISCUSSION

**A.    Standard Applicable to Rule 12(b)(6) Motions**

Defendant Brad Adams' motion to dismiss is based on FED. R. CIV. P. 12(b)(6), which allows dismissal if the plaintiff has failed to state a claim upon which relief can be granted.  Plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face."  Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)).  A complaint does not need "detailed factual allegations" to survive a motion to dismiss, but a plaintiff must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action.  Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  There is also a "plausibility standard" which "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the plaintiff has a valid claim.  Id. at 556.  The plaintiff's

9

complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief. Id.

There are two "working principles" that apply to Rule 12(b)(6) motions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint. Id. (citing Papasan, 478 U.S. at 286). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)). Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged*--but has not "show[n]"--that he is entitled to relief as required by Rule 8(a)(2). Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth. Id. at 679-680. Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief. Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2). A court should assume the truth only of "well-pleaded factual

allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

A *pro se* complaint is entitled to a liberal construction, but Rule 12(b)(6) remains applicable even to *pro se* litigants. Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); Holloway v. Lockhart, 792 F.2d 760, 761 (8th Cir. 1986), overruled on other grounds, Iqbal, 556 U.S. at 678-79.[6] These are the principles guiding the court's evaluation of Mr. Adams' motion.

## B.   Deliberate Indifference Standard

Mr. Maday has asserted a claim against Mr. Adams that Mr. Adams violated his Eighth Amendment rights by exhibiting deliberate indifference to his serious medical needs. The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Allard v. Baldwin, 779 F.3d 768, 771 (8th Cir. 2015). That prohibition includes prison officials' deliberate indifference to the medical needs of inmates. Id. That is because "deliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).

"This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally

---

[6] The portion of Holloway overruled by Iqbal is the reference to the Conley "no set of facts" language, which is no longer the test under Rule 12(b)(6). Compare Holloway, 792 F.2d at 761-62 (reciting the no-set-of-facts test), with Iqbal, 556 U.S. at 670 (Twombly retired the Conley no-set-of-facts test).

11

denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05. "[T]his does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence are not enough to state a claim. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (prisoner must show more than gross negligence and more than disagreement with treatment decisions).

Deliberate indifference requires the court to make both an objective and a subjective evaluation. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). Mr. Maday is required to show (1) that he suffered objectively serious medical needs and (2) that defendants actually knew of but deliberately disregarded those needs. Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Coleman, 114 F.3d at 784. To establish liability, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). See Docket No. 7, at pages 6-7 (district court screening opinion). A plaintiff asserting deliberate indifference "must show more than even gross negligence"—he "must establish a 'mental

state akin to criminal recklessness: disregarding a known risk to the inmate's health.'" Allard, 779 F.3d at 771-72.  A plaintiff can show deliberate indifference by demonstrating grossly incompetent or inadequate care; showing a defendant's decision to make a less efficacious and easier course of treatment; or demonstrating that a defendant denied access to or intentionally delayed medical care.  Id. at 772.

**C.     Application of the Law to Mr. Maday's Claims Against Mr. Adams**

For pursposes of Mr. Adams' motion to dismiss, the court assumes without so holding that Mr. Maday's heel pain, foot fracture, toenail lesion, and diabetes (all issues Mr. Adams treated Mr. Maday for at one time or another), are serious medical needs.  Even so, Mr. Maday has not alleged in his complaint sufficient facts to show that Mr. Adams was deliberately indifferent to those needs.

Applying the standards of Iqbal and Twombley, the court disregards legal conclusions in Mr. Maday's complaint.  Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Papasan, 478 U.S. at 286.  Mr. Maday uses the phrase "deliberate indifference" repeatedly throughout his complaint.  What the court examines are Mr. Maday's factual allegations and whether those allegations are plausible. Iqbal, 556 U.S. at 679.

What Mr. Maday's own factual allegations demonstrate is that every time Mr. Maday sought treatment from Mr. Adams, Mr. Adams responded with some type of appropriate medical care.  When Mr. Maday complained of a lesion under his toenail and heel pain, Mr. Adams referred Mr. Maday out to a

13

specialist (who removed the toenail and biopsied it), had x-rays taken, and prescribed arch supports. See Docket No. 1 at p. 13, ¶ 65. When Mr. Maday requested diabetic socks, Mr. Adams agreed he could obtain those from laundry or, in the alternative, Mr. Adams offered to prescribe Ted stockings. See Docket No. 94 at p. 4, ¶ 514. Mr. Adams also prescribed stretching exercises for Mr. Maday. Id. A deliberate indifference claim cannot arise simply because Mr. Maday could not get the specific name-brand of diabetic socks he wanted. Mr. Maday has other claims against other defendants that improper-fitting socks were dispensed, but Mr. Adams was not responsible for stocking the socks in the laundry.

When Mr. Maday later complained of pain at the fracture site on his foot, Mr. Adams had x-rays taken and had blood work done. See Docket No. 1 at p. 20, ¶ 86. Mr. Adams then followed up on those diagnostic tests and prescribed a splint, crutches, a diabetic diet, dietary supplements, and also referred Mr. Maday to an outside specialist again. See Docket No. 1 at pp. 21-22, ¶¶ 89, 91; p. 32, ¶ 118; Docket No. 94 at p. 6, ¶ 520. The outside specialist prescribed an air boot and ultrasonic bonegrowth stimulator treatments, which Mr. Maday received, and which resulted in him having a complete healing of the foot fracture. See Docket No. 1 at p. 22, ¶ 91; p. 23, ¶ 93; p. 23, ¶ 95.

Mr. Maday complains that Mr. Adams gave him a splint on February 15 instead of a boot, but even he admits that medical staff did not have in stock at that time a walking boot large enough to fit him. See Docket No. 1 at pp. 22-

23, ¶ 89.  Mr. Adams did the next best thing by applying a splint.  Id.  In any case, Mr. Adams also referred Mr. Maday to the outside podiatrist who *did* give Mr. Maday a proper-fitting boot.  The lapse in time between February 15, when Mr. Maday says he should have received a boot, and the date he actually got a boot from Dr. Pederson, February 20, is a mere 5 days.  Even if Mr. Adams had immediately ordered a larger sized boot for Mr. Maday on February 15, it is unlikely that special order would have arrived any earlier than the 5 days that actually elapsed.  Mr. Adams cannot be faulted that no boot in inventory (they tried one, but it was too small) would fit Mr. Maday.

None of these instances of medical care at Mr. Adams' hands, which Mr. Maday believes fell short of the mark, can possibly be characterized as deliberately indifferent.  A plaintiff asserting deliberate indifference "must show more than even gross negligence"—he "must establish a 'mental state akin to criminal recklessness:  disregarding a known risk to the inmate's health.' " Allard, 779 F.3d at 771-72.  A plaintiff can show deliberate indifference by demonstrating grossly incompetent or inadequate care; showing a defendant's decision to make a less efficacious and easier course of treatment; or demonstrating that a defendant denied access to or intentionally delayed medical care.  Id. at 772.  Mr. Adams' care was responsive to Mr. Maday's complaints and responsible.

Another claim Mr. Maday asserts is that Mr. Adams disregarded his complaint of pain in his foot at the previous fracture site on a medical visit on August 9, 2016.  Interestingly, Mr. Maday describes this event twice, each time

15

differently. In the facts section of his first complaint, Mr. Maday alleges he asked Mr. Adams if it was normal to have constant pain at the site of a fracture after it was supposed to have healed. See Docket No. 1 at p. 19, ¶ 83. Mr. Maday records Mr. Adams' response as "it would not be unheard of." Id.

In Mr. Maday's claims section of that complaint, however, he asserts Mr. Adams told him affirmatively that his pain in his foot was "normal," instead of "not unheard of." Id. at p. 38, ¶ 136. Whichever version of the facts is true, it does not amount to deliberate indifference. Mr. Maday asserts that Mr. Adams' statement placated him so that he delayed seeking medical care for his foot—a delay which lasted only one month. Mr. Maday himself asserts that he reported to medical staff on September 7, 2016, and sought medical attention for his foot pain at the site of his fracture.[7] Id. at p. 20, ¶ 84. Mr. Maday can establish no damages attributable to Mr. Adams as a result of a 29-day delay in seeking medical attention for his foot pain.

Finally, Mr. Maday asserts Mr. Adams was deliberately indifferent because he electronically "signed off" on nurse Stephanie Hamilton's June 27, 2016, treatment note when Mr. Maday asserts that Mr. Adams should have known the treatment the nurse gave was wrong. See Docket No. 94 at pp. 5-6, ¶¶ 517-18. But there is no supervisory liability under § 1983. "[M]ere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under Section 1983. 'The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of

---

[7] Mr. Adams was not the medical care provider at this September 7 visit.

what [he] might see.'" Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994).  Here, Mr. Maday's allegations about Mr. Adams' supervision of nurse Hamilton fall far short of what is needed to establish Mr. Adams' liability on this basis.

## CONCLUSION

Based on the foregoing facts, law and analysis, this court respectfully recommends granting defendant Brad Adams' motion to dismiss [Docket No. 26] and dismissing Mr. Maday's claims against Mr. Adams with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 31st day of May, 2018.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge