UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| STANLEY J. MADAY,<br><br>                Plaintiff,<br><br>     vs.<br><br>BOB DOOLEY, CHIEF WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; DENNIS KAEMINGK, SECRETARY OF THE SOUTH DAKOTA DOC, INDIVIDUAL AND OFFICIAL CAPACITY; DR. MARY CARPENTER, DIRECTOR OF THE DEPARTMENT OF HEALTH, INDIVIDUAL AND OFFICIAL CAPACITY; JENNIFER STANWICK-KLIMEK, DEPUTY WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; REBECCA SCHIEFFER, ASSOCIATE WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; ALEJANDRO REYES, ASSOCIATE WARDEN AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; BRENT FLUKE, ASSOCIATE WARDEN AT MIKE DURFEE STTAE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; JOSH KLIMEK, UNIT MANAGER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; TRAVIS TJEERDSMA, CASE MANAGER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; TAMMY DEJONG, CASE MANAGER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; PA MICHAEL JOE HANVEY, MEDICAL PROVIDER AT MIKE DURFEE STATE PRISON, INDIVIDUAL AND OFFICIAL CAPACITY; PA BRAD ADAMS, MEDICAL PROVIDER AT MIKE DURFEE STATE PRISON, INDIVIDUAL | 4:17-CV-04168-KES<br><br><br><br><br><br>REPORT AND RECOMMENDATION AS TO PLAINTIFF STANLEY J. MADAY'S AMENDED AND SUPPLEMENTAL COMPLAINT |

AND OFFICIAL CAPACITY; DR.
STEPHAN SCHROEDER, MEDICAL
PROVIDER AT MIKE DURFEE STATE
PRISON, INDIVIDUAL AND OFFICIAL
CAPACITY; MISTY TOLSMA-HANVEY,
NURSING SUPERVISOR, AT MIKE
DURFEE STATE PRISON INDIVIDUAL
AND OFFICIAL CAPACITY; LINDSEY
RABBASS, NURSE AT MIKE DURFEE
STATE PRISON, INDIVIDUAL AND
OFFICIAL CAPACITY; ROBIN MYER,
NURSE AT MIKE DURFEE STATE
PRISON, INDIVIDUAL AND OFFICIAL
CAPACITY; CANDICE FEJFAR, NURSE
AT MIKE DURFEE STATE PRISON,
INDIVIDUAL AND OFFICIAL
CAPACITY; DAYNA KLAWITTER,
NURSE AT MIKE DURFEE STATE
PRISON, INDIVIDUAL AND OFFICIAL
CAPACITY; DENNIS CROPPER,
CORRECTIONAL OFFICER AT MIKE
DURFEE STATE PRISON, INDIVIDUAL
AND OFFICIAL CAPACITY; THOMAS
HUITEMA, CORRECTIONAL OFFICER
AT MIKE DURFEE STATE PRISON,
INDIVIDUAL AND OFFICIAL
CAPACITY; MICHAEL MEYER,
CORRECTIONAL OFFICER AT MIKE
DURFEE STATE PRISON, INDIVIDUAL
AND OFFICIAL CAPACITY; LORI
STRATMAN, CORRECTIONAL
OFFICER AT MIKE DURFEE STATE
PRISON, INDIVIDUAL AND OFFICIAL
CAPACITY; MIKE GROSSHUESCH,
CORRECTIONAL OFFICER AT MIKE
DURFEE STATE PRISON, INDIVIDUAL
AND OFFICIAL CAPACITY; NICOLE ST.
PIERRE, CORRECTIONAL OFFICER
AT MIKE DURFEE STATE PRISON,
INDIVIDUAL AND OFFICIAL
CAPACITY; MURIEL NAMMINGA,
LAUNDRY SUPERVISOR AT MIKE
DURFEE STATE PRISON, INDIVIDUAL
AND OFFICIAL CAPACITY;
CATHERINE SCHLIMGEN, LEGAL
COUNSEL FOR THE SOUTH DAKOTA
DOC, INDIVDUAL AND OFFICIAL
CAPACITY;  UNKNOWN CBM FOOD
SERVICES EMPLOYEES, INDIVIDUAL
AND OFFICIAL CAPACITIES;
UNKNOWN SOUTH DAKOTA DOC
EMPLOYEES, INDIVIDUAL AND
OFFICIAL CAPACITIES;  UNKNOWN

SOUTH DAKOTA DOH EMPLOYEES,
INDIVIDUAL AND OFFICIAL
CAPACITIES; JON E. LITSCHER,
SECRETARY OF THE WISCONSIN
DOC, INDIVIDUAL AND OFFICIAL
CAPACITY; KATHARINE A. ARISS,
ASSISTANT LEGAL COUNSEL FOR
THE WISCONSIN DOC, INDIVIDUAL
AND OFFICIAL CAPACITY; THOMAS P.
MALONEY, LIBRARY SERVICES AND
EDUCATIONAL TECHNOLOGY
COORDINATOR FOR THE WISCONSIN
DOC, INDIVIDUAL AND OFFICIAL
CAPACITY; UNKNOWN WISCONSIN
DOC EMPLOYEES, INDIVIDUAL AND
OFFICIAL CAPACITIES; CBM FOOD
SERVICES, MEAL AND COMMISSARY
PROVIDER FOR THE SOUTH DAKOTA
DOC, OFFICIAL CAPACITY;
STEPHANIE HAMILTON, RN AT MIKE
DURFEE STATE PRISON, INDIVIDUAL
AND OFFICIAL CAPACITY; TIFFANY
VOIGT, UNIT COORDINATOR,
INDIVIDUAL AND OFFICIAL
CAPACITY; DIANE ROMKEMA, CASE
MANAGER, INDIVIDUAL AND
OFFICIAL CAPACITY; GLOBAL TEL &
LINK CORPORATION, OFFICIAL
CAPACITY; UNKNOWN GTL
EMPLOYEES, INDIVIDUAL AND
OFFICIAL CAPACITIES; LEXIS NEXIS,
OFFICIAL CAPACITY; AND UNKNOWN
LEXIS NEXIS EMPLOYEES,
INDIVIDUAL AND OFFICIAL
CAPACITIES;

                    Defendants.

## INTRODUCTION

This matter is before the court on the *pro se* complaint and amended

supplemental complaint of Stanley Maday. See Docket Nos. 1 & 94.

Mr. Maday, a prisoner at the South Dakota Mike Durfee State Prison (MDSP),

asserts a wide-ranging variety of claims under 42 U.S.C. § 1983 and Title II of

the Americans With Disabilities Act (ADA), 42 U.S.C. § 12132. Id. Under the

3

Prison Litigation Reform Act (PLRA) it is incumbent upon the court to screen any proposed complaint and to dismiss those claims the court concludes are frivolous. 28 U.S.C. §§ 1915(e)(2)(B) (ii) and 1915A(b)(1). There are several claims and defendants in Mr. Maday's amended and supplemental complaint that do not survive this screening process. As to those claims and defendants, the court recommends dismissal.

## DISCUSSION

**A.    Rule 12(b)(6) and 28 U.S.C. § 1915 Screening Standards.**

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)) and 1915A(b)(1), a prisoner's complaint should be dismissed on screening if it "fails to state a claim upon which relief may be granted." This standard is the same standard as is used to determine whether a complaint satisfies the standards of FED. R. CIV. P. 12(b)(6). Kane v. Lancaster County Dept. of Corrections, 960 F.Supp. 219 (D. Neb. 1997). "In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.'" Jackson v. Nixon, 747 F.3d 537, 541 (8th Cir. 2014) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)). "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper framework." Id. at 544 (quoting Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004)).

4

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a claim if the plaintiff has failed to state a claim upon which relief can be granted.  Plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face." Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)).  A complaint does not need "detailed factual allegations" to survive a motion to dismiss, but a plaintiff must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action. Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  There is also a "plausibility standard" which "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the plaintiff has a valid claim. Id. at 556.  The plaintiff's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief. Id.

There are two "working principles" that apply to Rule 12(b)(6) motions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a complaint. Id. (citing Papasan, 478 U.S. at 286).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

5

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)). Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has alleged--but has not "show[n]"--that he is entitled to relief as required by Rule 8(a)(2). Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth. Id. at 679-680. Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief. Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2). A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. These are the principles guiding the court's examination of the sufficiency of Mr. Maday's amended and supplemental complaint to determine whether it survives screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)) and 1915A(b)(1).

## B. Deliberate Indifference Claims

### 1. The Applicable Legal Standard

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Allard v. Baldwin, 779 F.3d 768, 771 (8th Cir. 2015). That prohibition includes prison officials' deliberate indifference to the

medical needs of inmates. Id. That is because "deliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05.

"[T]his does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence are not enough to state a claim. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (prisoner must show more than gross negligence and more than disagreement with treatment decisions).

Deliberate indifference requires the court to make both an objective and a subjective evaluation. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). Mr. Maday is required to allege (1) that he suffered objectively serious medical needs and (2) that defendant actually knew of but deliberately disregarded those needs. Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that

is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." <u>Coleman</u>, 114 F.3d at 784. To establish liability, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). A plaintiff asserting deliberate indifference "must show more than even gross negligence"—he "must establish a 'mental state akin to criminal recklessness: disregarding a known risk to the inmate's health.'" <u>Allard</u>, 779 F.3d at 771-72.

"[A] total deprivation of care is not a necessary condition for finding a constitutional violation: 'Grossly incompetent or inadequate care can [also] constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment.'" <u>Langford v. Norris</u>, 614 F.3d 445, 460 (8th Cir. 2010) (quoting <u>Smith v. Jenkins</u>, 919 F.2d 90, 93 (8th Cir. 1990)). A plaintiff can also show deliberate indifference by demonstrating that a defendant denied access to or intentionally delayed medical care. <u>Allard</u>, 779 F.3d at 772.

### 2. New Facts Regarding Previously-Asserted Claims

Mr. Maday asserted deliberate indifference claims in his first complaint regarding medical treatment of his toes, heels, and feet as well as claims for proper diabetic shoes, socks, and diet. The additional facts asserted by Mr. Maday that supplement those previous claims against previously-named defendants survive screening. When considering these claims, the court will

take into account the facts alleged in both the initial complaint and the amended and supplemental complaint.

### 3.    New Defendant—Stephanie Hamilton

Mr. Maday seeks to sue a new defendant, Stephanie Hamilton, a registered nurse and employee of the South Dakota Department of Health. See Docket No. 94 at p. 1, ¶ 51. Mr. Maday asserts claims against Ms. Hamilton in both her individual and official capacities. Id. at p. 2.

The facts Mr. Maday asserts against Ms. Hamilton are that on June 27, 2016, Mr. Maday requested a "lay in tray" for meals so he could eat in his cell and not have to walk to the cafeteria. Id. at pp. 5-6, ¶ 517. He alleges that Brad Adams, a physician's assistant and medical care provider at MDSP, had previously given orders that Mr. Maday should stay off his feet if the pain in his feet became too bad. Id. Mr. Maday alleges Ms. Hamilton denied Mr. Maday's request for a "lay in tray" in contravention of Mr. Adams' orders. Id.

Mr. Maday also asserts approximately 8 months later, on February 16, 2017, Mr. Maday asked the nurses to help him reapply the splint Brad Adams had applied to Mr. Maday's leg the previous day. Id. Mr. Maday had to remove the splint due to swelling, but then states he sought to have the nurses reapply it. Id. Mr. Maday asserts Ms. Hamilton mocked him, saying, "Can't you touch your toes?" Id. Mr. Maday never states whether Ms. Hamilton or another nurse assisted with reapplying the splint or refused to do so.

This allegation conflicts with Mr. Maday's description of these events in his original complaint. In his original complaint, Mr. Maday states he took the

splint off after he experienced swelling, but then states "[a]s a result of these difficulties I refused the splint treatment. . ." <u>See</u> Docket No. 1 at p. 22, ¶ 90.

In any event, the reason Brad Adams applied a splint on February 15, 2017, was because the prison did not have a medical walking boot sufficiently large to fit Mr. Maday's foot and calf. Five days after being treated by Mr. Adams, Mr. Maday saw an outside specialist who gave him an air cast, so Mr. Maday was without a cast, boot, or splint for a total of 4 days (one day was with the splint).

It appears Mr. Maday's claim against Ms. Hamilton concerning her alleged conduct on February 16, 2017, is based solely on her tone of voice and words. In the "claims" section of his amended and supplemental complaint, Mr. Maday states "[b]y constantly addressing inmates in a condescending manner, minimalizing their concerns, ignoring their complaints and inserting her own facts into the record, RN Stephanie Hamilton is deliberately indifferent to Plaintiff's serious medical needs. This is a violation of the protections against cruel and unusual punishment guaranteed by the United States Constitution." <u>See</u> Docket No. 94 at p. 17, ¶ 547. Speaking to an inmate in a condescending tone of voice or minimalizing their concerns is not deliberate indifference in violation of the Eighth Amendment. Ignoring an inmate's complaint about a sufficiently serious concern may be gist for an Eighth Amendment claim, but regarding the splint incident, Mr. Maday never alleges Ms. Hamilton outright refused to help him reapply the splint. He never states whether another nurse helped him. Moreover, this sequence of events in the

amended complaint conflicts blatantly with his version of events in his original complaint.  The court finds the allegation against Ms. Hamilton regarding the splint does not state a claim and is not plausible.

As to the issue of the "lay in tray," according to Mr. Maday's own version of the facts, Brad Adams did not issue an order to the effect Mr. Maday was to stay in his cell.  He only stated Mr. Maday should stay off his feet if they became too painful.  Ms. Hamilton's denial of a lay in tray was not deliberate indifference.  "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Coleman, 114 F.3d at 784.  To establish liability, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.  A plaintiff asserting deliberate indifference "must show more than even gross negligence"—he "must establish a 'mental state akin to criminal recklessness:  disregarding a known risk to the inmate's health.' " Allard, 779 F.3d at 771-72.

Although Mr. Maday developed a stress fracture in his foot many months later, there is no evidence the fracture existed as of June, 2017.  Mr. Maday does not allege it *did* exist as of that date.  And there is no indication that Ms. Hamilton knew it existed.  Mr. Maday himself asserts that he told Ms. Hamilton the "last time he was limping because of severe pain from plantar's fasciitis [he] developed a stress fracture in [his] foot." See Docket

11

No. 94 at p. 5, ¶ 517.  Then, again according to Mr. Maday's own version of the facts, Ms. Hamilton wrote in his medical record, "P[atien]t also request medical lay in stating he may get a stress fracture if continues to walk on his feet."  Id. According to Mr. Maday's version of the facts, Brad Adams then later read Ms. Hamilton's entry in the medical record and approved it.  Id. at p. 6, ¶ 518. If Mr. Adams had felt a "lay in tray" was medically necessary, he would have ordered it upon reading Ms. Hamilton's entry in the medical record; he would not have approved it.

The court finds both the lay in tray issue and the splint issue do not state claims against Stephanie Hamilton.  The claims are not plausible, they do not establish a sufficiently serious medical need, and they do not establish deliberate indifference on Ms. Hamilton's part.  The court respectfully recommends that Ms. Hamilton be stricken from the amended and supplemental complaint and that the deliberate indifference claims against her be dismissed.

## C.    Retaliation

### 1.    Applicable Legal Standard

"A prisoner's Eighth Amendment rights are violated if prison officials 'impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right.' "  Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007).  See also Haynes v. Stephenson, 588 F.3d 1152, 115 (8th Cir. 2009).  A prima facie case of retaliatory discipline requires a plaintiff to show (1) that he exercised a

constitutionally protected right, (2) that he was subsequently disciplined by prison officials, and (3) the motive for imposing the discipline was the exercise of the constitutional right. Id.

To prevail on a claim of retaliation for violation of a First Amendment right, the plaintiff must show (1) that he engaged in a protected activity, (2) that the government defendant took adverse action against the plaintiff that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. Santiago v. Blair, 707 F.3d 984, 991 (8th Cir. 2013).

### 2. New Facts Regarding Previously-Named Defendants

Mr. Maday alleges previously-named defendants have interfered with his mail in retaliation for filing this lawsuit against them. He also alleges previously-named defendant Josh Klimek had him handcuffed and brought to the Special Housing Unit (SHU), where he was then released as Mr. Maday had committed no disciplinary infractions. The court will consider these facts in conjunction with the facts alleged in the original complaint against these previously-named defendants.

### 3. Claims Against New Defendants

Mr. Maday seeks to assert a retaliation claim against two new defendants, Tiffany Voight, a Unit Coordinator at MDSP; and Diane Romkema, a Case Manager at MDSP. See Docket No. 94 at p. 2, ¶¶ 52 & 53. Each woman is sued in her individual and official capacities. Id.

In Ms. Voight's case, Mr. Maday alleges mailroom personnel interfered with his mail and did not follow prison policy. Id. at pp. 7-8, ¶¶ 522-23. Following these events, Mr. Maday filed an informal resolution request (IRR) with Ms. Voight. Id. In both instances, Ms. Voight denied the IRR. Id. Mr. Maday alleges Ms. Voigt's actions in denying his IRRs were in violation of the prison's mail policy, section 1.5.0.3. Id.

Likewise, with regard to the trip to the SHU, which Mr. Maday alleges was retaliatory, Ms. Voight's role was in the context of addressing an IRR filed by Mr. Maday. Id. at pp. 11-12, ¶ 523. Mr. Maday alleges Ms. Voight failed to properly investigate the grounds for his IRR as she only interviewed defendant Josh Klimek, who ordered Mr. Maday to be brought to the SHU. Id. Mr. Maday alleges Ms. Voight should also have interviewed Sergeant Tyce, who is the officer who physically brought Mr. Maday to the SHU on the day in question. Id.

After Ms. Voight denied Mr. Maday's IRR about his trip to the SHU, Mr. Maday followed up by filing a grievance, the next step in the administrative complaint process at MDSP. Diane Romkema denied the grievance, allegedly "white washing" defendant Klimek's actions according to Mr. Maday. For this action, Mr. Maday seeks to assert a claim of retaliation against Ms. Romkema.

There is no supervisory liability under § 1983. "[M]ere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under Section 1983. The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he]

14

might see.'" <u>Ripson v. Alles</u>, 21 F.3d 805, 809 (8th Cir. 1994). With regard to both Ms. Voight and Ms. Romkema's actions in the administrative grievance process, Mr. Maday never asserts they knew a subordinate's conduct was violative of § 1983. Nor is there any assertion that they approved, facilitated, condoned, or turned a blind eye to it. Rather, Mr. Maday asserts they were not thorough enough in their attempts to review or investigate or that they failed to follow prison rules. This does not give rise to liability under § 1983. <u>Id.</u>

As to Ms. Voight, Mr. Maday also asserts that she failed to follow the prison's own policy regarding handling of incoming mail addressed to inmates. But violation of an internal prison policy alone does not give rise to liability under § 1983.

That prison grievance processes were not properly followed or were inadequate is not grounds for a § 1983 claim. <u>Flick v. Alba</u>, 932 F.2d 728 (8th Cir. 1991). "To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States." <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993) (citation omitted).

> While a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or state-mandated procedures is a violation of the Constitution. The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.
>
> We conclude [the prisoner's complaint] failed to state a claim because no constitutional right was violated by the defendants' failure, if any, to process all of the grievances submitted for consideration. Cf. <u>Flick v. Alba</u> 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure) (citing with approval <u>Azeez v. DeRobertis</u>,

> 568 F.Supp. 8 (N.D. Ill. 1982)). "[A prison] grievance procedure is a
> procedural right only, it does not confer any substantive right upon
> the inmates. Hence, it does not give rise to a protected liberty
> interest requiring the protections envisioned by the fourteenth
> amendment." Azeez, 568 F.Supp. at 10. . . .

Buckley, 997 F.2d at 495 (other internal citations omitted). See also King v.

Houston, 556 Fed. Appx. 561, 563 (8th Cir. 2014) ("[The prisoner's] allegation

that [prison officials] did not adequately consider his grievances did not state a

claim.") (citing Buckley, 997 F.2d at 495).

Mr. Maday asserts no other deficient behavior on the part of Ms. Voight

other than failure to follow prison mail rules.  In order to prove retaliation

against Ms. Voight, he must at least allege facts that she knew about his

protected activity and that her denial of his IRRs was motivated by an intent to

punish him for exercising that protected activity.  Santiago, 707 F.3d at 991.

Mr. Maday never alleges any such facts as to Ms. Voight.  Therefore, even

assuming the truth of the facts asserted by Mr. Maday, he fails to state a

retaliation claim against Ms. Voight.

The court recommends that Mr. Maday's retaliation claims against

Ms. Voight and Ms. Romkema be dismissed and that Ms. Romkema be stricken

from the caption of the amended and supplemental complaint.

### D.    Due Process

#### 1.    The Standard

The Supreme Court's decision in Sandin v. Conner, 515 U.S. 472, 480-

81 (1995), signified a substantial departure from the Court's prior approach to

due process claims in the prison context.  The Court held that it was time to

16

"return to the due process principles." Id.  States may create liberty interests

which are afforded due process protection.  Id. at 483-84.  But, after Sandin,

those interests are "generally limited to freedom from restraint which, while not

exceeding the sentence in such an unexpected manner as to give rise to

protection by the Due Process Clause of its own force, . . . nonetheless imposes

atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." Id.

To succeed on a procedural due process claim arising out of prison

discipline, a prisoner must either show (1) that he has a liberty interest

protected by the due process clause itself, like the prisoners subjected to a

state mental hospital or forced psychotropic medication, **or** (2) if the liberty

interest is a creature of state regulation only, then the prisoner must show that

the prison action "imposes atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

The Sandin Court distinguished the circumstances of a prisoner from

that of a pretrial detainee or a schoolchild:

> The punishment of incarcerated prisoners, on the other hand,
> serves different aims than those found invalid in Bell [v. Wolfish,
> 441 U.S. 520 (1979) involving pretrial detainees] or Ingraham [v.
> Wright, 430 U.S. 651 (1977) involving schoolchildren].  The process
> does not impose retribution in lieu of a valid conviction, nor does it
> maintain physical control over free citizens forced by law to subject
> themselves to state control over the educational mission.  It
> effectuates prison management and prisoner rehabilitative goals.
> Admittedly, prisoners do not shed all constitutional rights at the
> prison gate, but "[l]awful incarceration brings about the necessary
> withdrawal or limitation of many privileges and rights, a retraction
> justified by the considerations underlying our penal system."
> Discipline by prison officials in response to a wide range of

17

misconduct falls within the expected perimeters of the sentence
imposed by a court of law.

Id. at 485 (internal citations omitted).

The facts presented in Sandin were that Conner was subjected to a strip
search by prison officials and he retorted with angry and foul language directed
at the officer. Sandin, 515 U.S. at 475. He later received notice of being
charged with disciplinary infractions. Id. He appeared before an adjustment
committee and requested to present witnesses at the hearing, which request
was denied. Id. The committee found Conner guilty of the conduct and
sentenced him to 30 days of disciplinary segregation in the SHU. Id. at 475-
76.

The court held that "Conner's discipline in segregated confinement did
not present the type of atypical, significant deprivation in which a State might
conceivably create a liberty interest." Id. at 486. In support of its holding, the
Court noted that Conner's disciplinary segregation mirrored conditions the
state imposed on inmates in protective custody or in administrative
segregation. Id. Further, Conner's confinement did not exceed in duration or
degree of restriction the types of totally discretionary confinement the prison
was free to impose on inmates for reasons other than discipline. Id.

In addition, the misconduct was not sure to affect Conner's chances for
parole. Id. at 487. Although the parole board was required to consider
Conner's disciplinary record when determining whether to grant him parole,
his misconduct did not require the parole board to deny parole, nor would the
absence of any misconduct have guaranteed Conner would receive parole. Id.

18

at 487. Instead, the parole board was required to base its decision on a "myriad of considerations." Id. Finally, Conner was afforded procedural protection in any future parole hearings because the state rules allowed him to explain the circumstances of the discipline that appeared in his record. Id. The Court held that, under the framework of the state rules, the chance that the finding of misconduct would tip the balance of future proceedings before the parole board was "simply too attenuated to invoke the procedural guarantees of the Due Process Clause." Id. Because neither the due process clause itself nor the state prison regulations gave Conner a protected liberty interest, the Court denied his procedural due process claim. Id.

### 2.    Application of the Law to Mr. Maday's New Claim

Mr. Maday asserts a new due process claim against Ms. Voight. See Docket No. 94 at p. 14, ¶ 540. He alleges on May 21, 2018, defendant Thomas Huitema used the public address system to announce that recreation time for all inmates would be canceled if a few inmates that were then congregating in the stairwell did not disperse. Id. Mr. Maday filed a grievance to complain about Mr. Huitema's "unprofessional behavior." Id. Ms. Voight reviewed that grievance and denied it, telling Mr. Maday that recreation for inmates is a privilege, not a right. Id.

No due process claim against Mr. Huitema nor against Ms. Voight is stated by these facts, even assuming them to be true. Mr. Maday does not state whether recreation was actually canceled on the day in question, but it matters not. Denial of recreation on a single day is not the kind of "atypical

and significant hardship" protected by the due process clause. <u>Sandin</u>, 515 U.S. at 486. The court recommends that the due process claim against Mr. Huitema and Ms. Voight be dismissed and that Ms. Voight be stricken from the caption of this case.

## E.     Denial of Access to the Courts

### 1.     The Standard

Prisoners have a constitutional right of access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977), <u>overruled in part</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 354 (1996).[1] This includes the right by prisoners to pursue direct appeals of their convictions, to seek habeas relief, and to file civil rights actions. <u>Id.</u> at 821-23. This right imposes an obligation on prison authorities to provide indigent inmates with paper and pen to draft legal documents, notary services, and stamps to mail court documents. <u>Id.</u> at 824-25. Prisoners, no less than lawyers, must also "know what the law is in order to determine whether a colorable claim exists, and if so, what facts are necessary to state a cause of action." <u>Id.</u> at 825. Thus, the right of access to the courts may be protected where prison officials either provide prisoners with adequate law libraries, or provide them with assistance from persons trained in the law—although other methods might also pass constitutional muster. <u>Id.</u> at 828. <u>See also</u> <u>Lewis</u>, 518 U.S. at 351.

---

[1] The <u>Lewis</u> Court overruled statements in <u>Bounds</u> that suggested that the right of access to the courts required states to enable prisoners to *discover* grievances and to *litigate effectively* once in court. <u>Lewis</u>, 518 U.S. at 354.

A prisoner asserting a claim of violation of his or her right of access to the courts must establish an "actual injury" in order to prevail on a § 1983 claim premised on that right. Lewis, 518 U.S. at 351-52; Moore v. Plaster, 266 F.3d 928, 933 (8th Cir. 2001) (citing Klinger v. Dept. of Corrections, 107 F.3d 609, 617 (8th Cir. 1997)). "Actual injury" means "that a nonfrivolous legal claim had been frustrated or was being impeded" by defendants' failure to maintain an adequate law library or to provide adequate legal assistance. Lewis, 518 U.S. at 352-53; Moore, 266 F.3d at 933 (quoting Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998)).

The Lewis Court emphasized the types of cases outlined in Bounds to which the right of access to the courts applies:  direct appeals of criminal convictions, habeas petitions, and civil rights actions to vindicate basic constitutional rights. Lewis, 518 U.S. at 354. Thus, if a prison elects to provide a law library to its inmates, it need not provide every volume of the United States Code, most volumes of which concern federal laws that have no relation to prison inmates. Id. at 355. Likewise, access to legal resources concerning shareholder-derivative actions and slip-and-fall claims would fall outside the purview of the right of access to the courts. Id. Legal materials addressing these types of claims are simply outside the scope of materials prisoners need to "attack their sentences, directly or collaterally," or "to challenge the conditions of their confinement," matters that are at the heart of the right of access to the courts. Id. Denial of legal resources regarding these

21

extraneous topics "is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id.

### 2.    Application of the Standard

Mr. Maday alleges in his amended and supplemental complaint that on October 1, 2017, the South Dakota Department of Corrections ("DOC") discontinued the practice of providing a staff attorney for inmates to consult with and instead provided all inmates with a tablet with limited internet access and access to a portion of the Lexis-Nexis database. See Docket No. 94 at pp. 9-10. To this end, Global Tel-Link Corporation ("GTL") installed wi-fi service in the MDSP. Id.

Mr. Maday asserts that the DOC, GTL and Lexis-Nexis are conspiring together to deprive him of access to the courts. He alleges the wi-fi service is inadequate and at least one GTL employee acknowledged it was inadequate. Id. He alleges the Lexis-Nexis app was designed for a personal computer, not a tablet, and as a result has many glitches. Id. Because of "navigation issues" and "anemic connectivity," Mr. Maday asserts he must often relaunch the app or re-sign in, which interrupts and disrupts his attempts to research. Id. Despite complaints being made by Mr. Maday and other inmates to the DOC, nothing is done to fix these problems. Id.

To the extent these allegations are asserted against the DOC, the court will consider them together with Mr. Maday's claims and facts asserted in his original complaint against the DOC. However, as to GTL and Lexis-Nexis, the

court recommends dismissal of Mr. Maday's claims from his amended and supplemental complaint.

A claim may be asserted under § 1983 only to the extent a constitutional deprivation takes place "under color of any statute, ordinance, regulation, custom, or usage, of any State. . ." See 42 U.S.C. § 1983. Therefore, before the actions of GTL and Lexis-Nexis, which are private corporations, can be grist for a § 1983 claim, their actions must be "fairly attributable" to the state. Lugar v. Edmondson Oil, 457 U.S. 922, 937 (1982). This means the deprivation was caused by (1) the exercise of a right or privilege created by the state, (2) or by a rule of conduct imposed by the state, (3) or by a person that the state is responsible for. Id. And "the party charged with the deprivation must be a person who may fairly be said to be a state actor," either because "he is a state official," "he has acted together with or has obtained significant aid from state officials," or because "his conduct is otherwise chargeable to the state." Id.

Mr. Maday has not alleged any facts which would satisfy these prerequisites for holding a private party liable under § 1983. He has stated a legal conclusion that GTL and Lexis-Nexis "conspired" with the state, but the court sets aside such conclusory statements under Rule 12(b)(6) and looks instead to the facts which have been pled. Iqbal, 556 U.S. at 679. Those facts are missing from Mr. Maday's amended and supplemental complaint.

Furthermore, the court draws on its "judicial experience and common sense" to conclude that the allegations are not plausible. Id. GTL is a company in business to make a profit. It has no vested interest in jinxing the

availability of wifi at MDSP, an action that could only come back to haunt GTL if the state is dissatisfied with GTL's product. Instead, GTL provides the product and services that its customer—the state—pays for. If the product (wifi) is defective because not enough transmitters have been purchased and installed, the problem rests with the state. Mr. Maday alleges the state has been notified by numerous inmates of these deficiencies. It is up to the state to determine whether to address the alleged problem by purchasing additional product or services from GTL or another vendor.

As for Lexis-Nexis, the court notes that innumerable lawyers, academics, journalists and, yes, judges, regularly use the Lexis-Nexis app. And they do so not only on PCs, but on tablets and other mobile devices. The allegation that the Lexis-Nexis app is defective and was provided to inmates *because* it was defective so as to thwart their access to the courts is beyond implausible.

Accordingly, the court recommends that Mr. Maday's access to the courts claims against GTL, Lexis-Nexis, and their employees be dismissed. The court recommends that these defendants be stricken from the caption.

## CONCLUSION

Based on the foregoing facts, law and analysis, this court respectfully recommends:

      1.    Dismissing all new claims against Stephanie Hamilton and striking Ms. Hamilton from the caption;

      2.    Dismissing all new claims against Tiffany Voight and striking Ms. Voight from the caption;

3.      Dismissing the new claim against Diane Romkema and striking Ms. Romkema from the caption;

4.      Dismissing all new claims against GTL and its employees and striking these defendants from the caption; and

5.      Dismissing all new claims against Lexis-Nexis and its employees and striking these defendants from the caption.

The remaining new claims against existing defendants should be served on defendants and those defendants should be given 30 days in which to file answers to the additional allegations in Mr. Maday's amended and supplemental complaint.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.   Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.   Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED June 7, 2018.

BY THE COURT:

Veronica L. Duffy

VERONICA L. DUFFY
United States Magistrate Judge

25