# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## SOUTHERN DIVISION

| | |
|---|---|
| STANLEY J. MADAY,<br><br>               Plaintiff,<br><br>    vs.<br><br>BOB DOOLEY, Chief Warden At Mike Durfee State Prison, Individual And Official Capacity; DENNIS KAEMINGK, Secretary Of The South Dakota Doc, Individual And Official Capacity; DR. MARY CARPENTER, Director Of The Department Of Health, Individual And Official Capacity; JENNIFER STANWICK-KLIMEK, Deputy Warden At Mike Durfee State Prison, Individual And Official Capacity; REBECCA SCHIEFFER, Associate Warden At Mike Durfee State Prison, Individual And Official Capacity; ALEJANDRO REYES, Associate Warden At Mike Durfee State Prison, Individual And Official Capacity; BRENT FLUKE, Associate Warden At Mike Durfee Sttae Prison, Individual And Official Capacity; JOSH KLIMEK, Unit Manager At Mike Durfee State Prison, Individual And Official Capacity; TRAVIS TJEERDSMA, Case Manager At Mike Durfee State Prison, Individual And Official Capacity; TAMMY DEJONG, Case Manager At Mike Durfee State Prison, Individual And Official Capacity; PA MICHAEL JOE HANVEY, Medical Provider At Mike Durfee State Prison, Individual And Official Capacity; DR. STEPHAN SCHROEDER, Medical Provider At Mike Durfee State Prison, Individual And Official Capacity; MISTY | 4:17-CV-04168-KES<br><br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

TOLSMA-HANVEY, Nursing Supervisor, At Mike Durfee State Prison Individual And Official Capacity; LINDSEY RABBASS, Nurse At Mike Durfee State Prison, Individual And Official Capacity; ROBIN MYER, Nurse At Mike Durfee State Prison, Individual And Official Capacity; CANDICE FEJFAR, Nurse At Mike Durfee State Prison, Individual And Official Capacity; DAYNA KLAWITTER, Nurse At Mike Durfee State Prison, Individual And Official Capacity; DENNIS CROPPER, Correctional Officer At Mike Durfee State Prison, Individual And Official Capacity; THOMAS HUITEMA, Correctional Officer At Mike Durfee State Prison, Individual And Official Capacity; MICHAEL MEYER, Correctional Officer At Mike Durfee State Prison, Individual And Official Capacity; LORI STRATMAN, Correctional Officer At Mike Durfee State Prison, Individual And Official Capacity; MIKE GROSSHUESCH, Correctional Officer At Mike Durfee State Prison, Individual And Official Capacity; NICOLE ST. PIERRE, Correctional Officer At Mike Durfee State Prison, Individual And Official Capacity; MURIEL NAMMINGA, Laundry Supervisor At Mike Durfee State Prison, Individual And Official Capacity; CATHERINE SCHLIMGEN, Legal Counsel For The South Dakota Doc, Individual And Official Capacity; UNKNOWN SOUTH DAKOTA DOC EMPLOYEES, Individual And Official Capacites; UNKNOWN SOUTH DAKOTA DOH EMPLOYEES, INDIVIDUAL AND OFFICIAL CAPACITIES; JON E. LITSCHER, Secretary Of The Wisconsin Doc, Individual And Official Capacity; KATHARINE A. ARISS, Assistant Legal Counsel For The Wisconsin Doc,

| Individual And Official Capacity; THOMAS P. MALONEY, Library Services And Educational Technology Coordinator For The Wisconsin Doc, Individual And Official Capacity; and UNKNOWN WISCONSIN DOC EMPLOYEES, Individual And Official Capacities; | |
| Defendants. | |

Plaintiff, Stanley J. Maday, a Wisconsin prisoner in custody at Mike Durfee State Prison, filed this lawsuit under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA). Dockets 1, 94. The South Dakota and Wisconsin defendants now move for summary judgment. Dockets 125, 145. Maday resists the motions. Docket 173. The matter was referred for a report and recommendation to Magistrate Judge Veronica L. Duffy under 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Duffy recommended granting summary judgment or dismissal of all claims, but one. Docket 188. For the following reasons, the court adopts the report and recommendation as modified below. The court grants in part and denies in part defendants' motions for summary judgment.

## FACTS

In the light most favorable to Maday, the nonmoving party, the facts are as follows:

Maday is a Wisconsin inmate. Docket 1 ¶ 4. Maday is currently held in custody in South Dakota. *Id.* Maday arrived in South Dakota on August 12, 2013. *Id.* ¶ 40. Initially, Maday was housed at the South Dakota State

Penitentiary (SDSP) in Sioux Falls, South Dakota, at the Jameson Unit. *Id.*

Later, he was moved to Mike Durfee State Prison (MDSP) in Springfield, South

Dakota. *Id.* ¶ 41.

## I.    Properly Fitting Shoes and the Comfort Items Policy

At SDSP in the Jameson Unit, Maday received a pair of canvas shoes. *Id.*

¶ 40. Maday found the shoes to be too narrow for his feet. *Id.* Maday alleges

that the shoes immediately began to cause blisters on his feet. *Id.* These

blisters turned into painful calluses. *Id.* Maday requested wider shoes from the

Jameson laundry unit, but his request was denied. *Id.*

Upon his arrival to MDSP, Maday sent a kite request to laundry for wide

shoes. *Id.* ¶ 41. A few days later, the laundry supervisor, defendant Muriel

Namminga, measured Maday's feet and issued him wide leather shoes with

velcro closures. *Id.* Maday alleges that he continued to develop blisters and

calluses on his feet because the wide leather shoes could not be properly

secured on his feet. *Id.* ¶ 44. By November 16, 2014, Maday was on his third

pair of the issued wide leather shoes. *Id.* ¶ 50. Maday alleges that he received

these replacements because of hygiene issues. Docket 192 at 3.

Maday observed other inmates wearing New Balance cross training

shoes. Docket 1 ¶ 42. When Maday inquired about the shoes, the inmates

allegedly informed Maday that they were for diabetic inmates or inmates with

foot problems. *Id.* ¶ 42. At a sick call with medical staff on September 5, 2013,

Maday complained about the calluses on his feet and, for the first time,

requested a pair of New Balance shoes. *Id.* ¶ 45. Maday alleges that he was told

by the unknown nurse that the unit staff had to issue New Balance shoes. *Id.*

When Maday asked unit staff for New Balance shoes, defendants Tammy

DeJong and Travis Tjeerdsma told Maday he needed to be approved by medical.

*Id.* ¶ 46, 55. Maday also asked unit manager, defendant Josh Klimek, about

the shoes; Klimek said it was medical's decision. *Id.* ¶ 48. Maday made several

requests to medical and unit staff for New Balance shoes. *Id.* ¶¶ 42, 45-49, 53-

56.

Defendant Dr. Mary Carpenter, the medical director at MDSP, issued a

memorandum to inmates and staff on February 24, 2014. Docket 173-1 at 26.

The memorandum pertained to inmates' requests for "non-medical issues such

as . . . requests for special shoes[.]" *Id.* The memorandum stated that "Health

Services will not address requests for comfort items or custodial issues"

because "[t]hese comfort items are not necessary for good medical care." *Id.*

Maday claims that the lack of properly fitting shoes caused him to

develop painful blisters and calluses. Docket 1 ¶ 44. Maday alleges that he

went to the medical unit on several dates and complained about his painful

blisters and calluses. The first sick call for this issue was on September 5,

2014. *Id.* ¶ 45. Maday continued to make complaints about the calluses and

blisters at various sick calls on an unknown date, November 16, 19, 21, and

24, 2014. *Id.* ¶¶ 47, 50-53. At the November 19th visit, Maday complained

about the calluses and the inflammation and swelling of his right big toe. *Id.*

¶ 51. On December 3, 2014, Maday went to a sick call to complain about his

calluses and an open sore near a callus on his big right toe. *Id.* ¶ 54. Maday's

sore had drainage and swelling. *Id.* Medical staff told Maday to monitor the site. *Id.* On December 17, 2014, Maday returned to medical to complain about the worsening sore. *Id.* ¶ 56.

On December 18, 2014, Maday had a follow-up visit with medical for his injured toe. *Id.* ¶ 57. The callus was cut down by medical staff. *Id.* This revealed an ulceration, which was cleaned and covered with antibiotics. *Id.* At the December 18th sick call, defendants Michael Hanvey and Misty Tolsma-Hanvey, medical staff at MDSP, emailed Klimek and told Klimek that Maday would benefit from better fitting shoes. *Id.* That same day, Klimek contacted the laundry unit and told them to issue New Balance shoes to Maday. *Id.* ¶ 58. Maday went to laundry, and his feet were measured. *Id.* Maday received his New Balance shoes in January of 2015. *Id.*; Docket 174 at 4. Maday stated that since he received his New Balance shoes, he has no new blisters or calluses, and his old calluses are going away. Docket 1 ¶ 58.

## II. Plantar Fasciitis and 2015 Foot Fracture

In spring of 2015, Maday began to experience pain in his right heel. *Id.* ¶ 61. Maday alleges that he first complained of this severe foot pain at a sick call on July 27, 2015, but medical staff did not address it. *Id.* ¶ 62. At his chronic care appointment on July 28, 2015, Maday told Hanvey about his pain and stated that it was identical to the pain he experienced with his previous plantar fasciitis. *Id.* ¶ 63. Maday alleges that Hanvey said there was nothing he could do for the heel pain. *Id.*; Docket 174 at 6. On September 11, 2015, Maday complained again about the heel pain, and a follow-up appointment was

scheduled. Docket 1 ¶ 64. At his October 14, 2015 follow-up appointment,

Physician Assistant (PA) Brad Adams and Maday discussed the pain in Maday's

heel. *Id.* ¶ 65. PA Adams gave Maday arch supports for the heel pain. *Id.*

Maday's heel was also x-rayed, and it was determined that there was no bone

spur. *Id.* ¶¶ 65-66.

On November 4, 2015, at a sick call, Maday complained to defendant

Lindsey Rabbass, a nurse, about the extreme pain in a different part of his foot.

Docket 174 at 7. Maday requested crutches, which medical staff denied

because crutches were only issued with a doctor's order. *Id.* at 8. Medical staff

issued a medical lay-in tray and Tylenol. *Id.*; Docket 1 ¶ 68. On November 5,

2015, defendant Robin Myer, a nurse, processed Maday's sick call. Docket 1

¶ 69. Like the November 4th appointment, there was no physical examination,

no crutches issued, and no x-rays conducted. *Id.* The medical lay-in tray was

extended and Maday still needed to report for Tylenol. *Id.* On November 6,

2015, Maday made another sick call for the pain in his foot. Docket 174 at 9.

At this sick call, his foot was examined. *Id.* Defendant Candice Fejfar, a nurse,

instructed Maday to rest his foot and issued Tylenol four times a day. *Id.* at 10.

On November 9, 2015, and the morning of November 10, 2015, Maday

attempted two sick calls, but was not seen by anyone. *Id.* at 11. On the

afternoon of November 10, defendant Dr. Stephan Schroeder saw Maday and

ordered an x-ray of his foot. *Id.* Dr. Schroeder advised Maday to avoid weight

bearing activities, but did not issue crutches. *Id.* at 12. Maday's foot was x-

rayed that evening on-site at MDSP. *Id.* at 11-12. On November 11, 2014, Dr.

Daniel Fritz reviewed the x-rays; his impression of the x-ray was an acute nondisplaced fourth metatarsal shaft fracture. Docket 1 ¶ 76; Docket 126-54. On November 13, 2015, Maday had a follow-up appointment where medical staff informed him that he had an "acute nondisplaced 4th metatarsal shaft fracture." Docket 174 at 12-13. He was given a cam/walker boot, issued crutches and a wheelchair, medical lay-in trays, and Tylenol. *Id.* at 13.

### III.    Removal of Arch Supports and 2016 Foot Fracture

On March 26, 2016, defendant Dennis Cropper, a correctional officer, conducted a search of Maday's room. Docket 174 at 59. During the search, Cropper confiscated Maday's arch support inserts. *Id.* Maday informed Cropper that he had a medical order for the arch supports, but Cropper did not return the arch supports. *Id.* at 59-60. A week later, Maday asked Klimek about his arch supports. Docket 1 ¶ 81. Klimek told Maday that he would look into it. *Id.* After another week went by, Maday alleges that he asked Klimek again about the arch supports. *Id.* Klimek responded that he was waiting to hear back from medical. *Id.* Maday received replacement arch supports on April 7, 2016. Docket 94 at 4; Docket 174 at 60. Maday alleges that after this incident, he developed a new limp and inflamed plantar fasciitis. Docket 174 at 60.

On June 27, 2016, Maday told a nurse about his plantar fasciitis pain and requested a medical lay-in tray to stay off his feet per instructions. *Id.* At a sick call on July 5, 2016, Maday complained about the constant ache at the site of his previous fracture. Docket 1 ¶ 82. Maday received a handout with exercises. *Id.* On August 9, 2016, Maday told PA Adams that he was

experiencing pain at the place of his old fracture. Docket 174 at 54, 60. Maday alleges that PA Adams told Maday that this was "not unheard of." Docket 1 ¶ 83. On September 7, 2016, Maday had a sick call with defendant Dayna Klawitter, a nurse. Docket 174 at 62. Again, Maday complained that his current pain was like his previous stress fracture pain. *Id.* Klawitter gave Maday a handout with stretching exercises for his ankle. *Id.*; Docket 173-1 at 62. At two follow-up appointments on September 12 and 16, 2016, Maday's foot pain was not addressed. Docket 174 at 54. Maday continued to perform the stretching exercises. *Id.* At a chronic care appointment on February 7, 2017, Maday complained about the constant pain at the site of his previous fracture. Docket 1 ¶ 86. PA Adams addressed the increase foot pain. Docket 174 at 54. On February 10, 2017, medical staff performed an x-ray on Maday's foot. Docket 1 ¶ 87. Maday's x-rays exhibited an acute stress fracture, which was partially healed. Docket 174 at 63; Docket 173-1 at 69-70. Maday received a walking boot on February 13, 2017. Docket 1 ¶ 88.

On February 15, 2017, Maday had a follow-up appointment with PA Adams to review the x-rays. *Id.* ¶ 89. PA Adams's assessment was a "[d]isp fx of fourth metatarsal bone[.]" Docket 126-61 at 2. At this appointment, Maday's foot was placed in a splint with two ace wraps, and Maday was issued crutches. Docket 1 ¶ 89. Later in the day, Maday removed the splint and ace wraps from his foot and refused to wear it. *Id.* ¶ 90; Docket 174 at 65. Maday told a nurse that he was not flexible enough to put the splint on by himself. Docket 174 at 65. Arrangements were made for Maday to report to the medical

unit to have the splint put on. *Id.* at 65-66. Maday signed a release to discontinue the splint, but he remained compliant with his crutches and wheelchair use. *Id.* at 66.

On February 20, 2017, Maday was referred to Dr. Terence Pederson. Docket 1 ¶ 91; Docket 174 at 63-64. Dr. Pederson provided treatment for Maday's foot. Docket 1 ¶ 91.

## IV. Diabetic Socks

On November 24, 2014, Maday was issued a medical order for diabetic socks. *Id.* ¶ 127. Maday went to the laundry unit and received diabetic socks. Docket 140 ¶ 64; Docket 173-1 at 3-4; Docket 174 at 41. Maday alleges that the diabetic socks are too small because they are "one-size fit all" and 100% cotton so they shrink in the wash. Docket 1 ¶ 127. Maday alleges that the socks do not fit properly because the elastic is too tight and left painful rings around his lower legs. Docket 174 at 41. Maday must fold the elastic top down to eliminate the rings. *Id.* Maday notes that the socks are for feet size 6-12, and Maday's feet are greater than a size 12. *Id.* at 43.

Maday alleges that he made several complaints to defendants about the poorly fitting socks. Docket 94 at 4-5; Docket 174 at 41-44; *see also* Docket 126-29; Docket 126-31. Maday alleged that he complained to Namminga, and in response, Namminga stated that she believed these were the best diabetic socks Wal-Mart had. Docket 1 ¶ 127; Docket 174 at 42-43.

Maday learned that other inmates were issued Dr. Comfort diabetic socks directly from the medical unit. Docket 174 at 41, 44; Docket 173-1 at 1-

2. Maday wanted Dr. Comfort socks because they were available in larger sizes. Docket 174 at 44. On June 17, 2016, Maday requested Dr. Comfort socks because his shoes were worn out and they did not provide support or cushioning. Docket 94 at 4; *see also* Docket 174 at 44, 46. Maday was told that only laundry issued socks were available, but was offered Ted hose stockings as an alternative. Docket 94 at4.

At a chronic care appointment on August 9, 2016, PA Adams wrote in his medical notes that he "evaluated the patient's socks and they do appear to fit adequately." Docket 126-45 at 2. PA Adams noted that he and Maday discussed the reason why his socks did not fit properly was due to the swelling from Maday's dependent edema, not because of ill-fitting socks. *Id.* On October 19, 2016, Maday filed an Informal Resolution Request (IRR) requesting larger diabetic socks. Docket 174 at 43. In his IRR, Maday stated that the socks issued in September were smaller than the usual socks Maday recieved. *Id.*

## V.    Sports Illustrated Swimsuit Edition Magazines

Maday alleges that defendants Nicole St. Pierre and Mike Grosshuesch violated his First Amendment rights when they rejected his February 2015 and 2016 Sports Illustrated Swimsuit Edition Magazines. Docket 1 ¶¶ 96-97. In February of 2015, mailroom supervisor, St. Pierre, denied Maday's Sports Illustrated Swimsuit Edition Magazine because it contained "nudity." *Id.* ¶ 96. Maday exhausted his administrative remedies in attempts to acquire this magazine. Docket 140 ¶¶ 185-88.

Maday's February 2016 Sports Illustrated Swimsuit Edition Magazine

was denied by mailroom supervisor, Grosshuesch, due to "sexually explicit" material. Docket 1 ¶ 97. Maday filed an IRR form, which was denied by St. Pierre. Docket 174 at 79. When Maday requested a Request for Administrative Remedy (AR) form after his IRR was denied, DeJong refused to provide him a form. *Id.* at 81; Docket 172 ¶ 193.

The South Dakota Department of Corrections (DOC) prohibits the purchase and possession of pornographic materials under policy 1.3.C.8. Docket 126-100. Pornography includes materials that feature nudity or sexually-explicit conduct. *Id.* Defendants allege that both magazines contained nudity or sexually explicit material. Docket 140 ¶¶ 195, 198. Maday disputes the content of the magazines and alleges that there is no nudity within the magazines. Docket 174 at 13-16; Docket 1 ¶ 98.

## VI.    Hardcover Books

Maday alleges that he was denied delivery of two hardcover books. Docket 174 at 83. On November 21, 2016, Maday received a notice from property supervisor, defendant Lori Stratman, that a hardcover book sent to Maday was denied per policy. Docket 1 ¶ 99. Maday alleges that the book was sent by a friend through a publisher/distributor. *Id.* Maday exhausted his administrative remedies in his attempts to receive the book. Docket 140 ¶¶ 206-11. On March 6, 2018, Stratman denied delivery of a hardcover book sent to Maday by his son through a publisher. Docket 94 at 8.

Per policy 2.3.C.4, "Hard cover books for individual or group use are not allowed. All books, regardless of purpose or subject matter, must be soft cover.

12

All hardcover books that are already inside the institution may remain, but no new hardcover books will be allowed." Docket 126-103. Inmates are allowed access to hardcover books in the library where they can check them out and bring them to their rooms. Docket 1 ¶ 99; Docket 128 ¶ 15. Additionally, inmates can have hardcover Bibles or Qurans in their possession. Docket 1 ¶ 99.

## VII. Mail

The South Dakota DOC has a policy that limits the incoming correspondence inmates can receive. Docket 140 ¶ 217. Policy 1.5.D.3 requires general correspondence to be on plain white copy or lined white paper. *Id.* Postcards or cards are not permitted. *Id.* Additionally, the policy requires incoming envelopes to be white in color, may only include an affixed canceled stamp or postage label, and the return address must be handwritten or ink-stamped. *Id.* ¶ 221. The policy prohibits padded envelopes, stickers, tape, self-adhesive labels, and sealing wax. *Id.* ¶ 222.

On March 13, 2018, Maday received a mailroom rejection notice that a letter from Dr. Andrea Nelson containing a money order was rejected. Docket 174 at 86-87. Grosshuesch rejected the letter because it contained colored paper, which violated policy 1.5.D.3. *Id.* at 87. Maday alleges that he was not given the option to instruct defendants on how to handle the money order, but he wrote an instruction on a kite request form that the money order should be deposited in his account. *Id.* at 86; Docket 126-106.

On April 4, 2018, a letter sent from Maday's brother was refused and

returned to sender by Grosshuesch. Docket 94 at 8. Maday alleges that he never received a mailroom rejection notice. *Id.* at 11. In response to Maday's IRR, Tiffany Voigt stated that the letter was rejected because "when it is apparent that the correspondence contains contraband without opening the letter, it will be rejected." *Id.* at 8, 11; Docket 174 at 88. Maday admits that the envelope had a return address label affixed to it, but still disputes whether his letter should have been rejected. Docket 174 at 88, 90. Maday disputes the validity of this policy and whether it was in effect when his brother's letter was rejected. *Id.* at 88; Docket 94 at 8. Maday exhausted his administrative remedies. Docket 140 ¶¶ 240-26.

## VIII. Access to the Courts

Maday alleges that defendants are impeding his access to the courts. Docket 1 ¶ 141; Docket 94 at 18. While Maday's petition for post-conviction relief was under review by Wisconsin state courts, Maday did not have access to Wisconsin law. Docket 174 at 92. On April 5, 2017, the Wisconsin Supreme Court issued a ruling on Maday's petition for post-conviction relief. Docket 1 ¶ 100. Maday alleges that he wanted to start working on a collateral attack of his conviction. *Id.* When Maday attempted to go to the law library at MDSP, he realized that there was no Wisconsin law available to him. *Id.* In June of 2017, inmates were given electronic tablets with an application for LexisNexis. *Id.* Only South Dakota law and federal law were available on the tablets. *Id.* Maday asked staff how he could get access to Wisconsin law on the tablets. *Id.* Maday filed a grievance, but it was denied. *Id.*

Maday also attempted to contact the Wisconsin DOC to obtain access to Wisconsin law. *Id.* ¶ 101. Maday wrote a letter to defendant Jon E. Litscher, the Secretary of Wisconsin's DOC. *Id.* Maday received a response letter from defendant Katharine A. Arris, assistant legal counsel for the Wisconsin DOC. *Id.* In the letter, Arris stated that they could not provide any assistance to Maday. *Id.* Additionally, Maday received a denial letter from defendant Thomas P. Maloney, the Library and Education Technology Coordinator of Wisconsin's DOC. *Id.*

Maday alleges that Grosshuesch denied him legal mail. Maday sent a letter to the State Bar of Wisconsin. *Id.* ¶ 102. Maday's letter was denied because Grosshuesch stated that the mail policy did not allow mail to be sent to any state bar. *Id.* Maday disputes whether that is what the policy states. *Id.* Additionally, Maday attempted to send a letter to Attorney Deanne M. Koll, but it was denied because the address included "Care of State Bar of Wisconsin." *Id.* Maday states that the letter was specifically addressed to Deanne Koll. Docket 174 at 19-20; Docket 173-1 at 24. Maday disputes whether the policy prohibits this letter. Docket 174 at 19-20; Docket 1 ¶ 102.

On October 1, 2017, the South Dakota DOC terminated the contract for a staff attorney for inmates. Docket 94 at 9. Inmates were told that they had access to LexisNexis through their electronic tablets. *Id.* Defendants also closed the law library and removed all legal resources from the library. *Id.* at 18. Ultimately, Maday received access to Wisconsin law on April 3, 2018. Docket 174 at 93.

## IX. Grievances and Placement in the Security Housing Unit

Maday alleges that he has filed two complaints with possible Prison Rape Eliminate Act (PREA) implications and received retaliation from defendants for filing these complaints. *Id.* at 21-23. The first complaint alleged that defendant Cropper was groping and "ogling" Maday's roommate. *Id.* at 21. The roommate did not wish to file the complaint, so Maday filed the complaint with the Division of Criminal Investigation (DCI). *Id.* at 21-22. DCI referred the complaint back to the prison, and Maday alleges that no investigation was conducted. *Id.* at 22. After this first complaint, Klimek asked Maday if there were any threats of imminent danger. *Id.* Maday said no and was not placed in the Security Housing Unit (SHU) for protection. *Id.*

On January 9, 2017, Maday filed a second grievance with PREA implications "concerning predatory homosexual behaviors" in the bathroom. Docket 1 ¶ 115; Docket 126-113; Docket 174 at 22. Maday had an issue with the lack of doors on the bathroom stalls. Docket 126-113; Docket 174 at 22. Maday alleges that defendant Jennifer Stanwick-Klimek implemented this policy. Docket 174 at 22. Maday raised his concerned about the bathroom doors with Klimek. *Id.* at 23. Klimek ordered that Maday be placed in the SHU. Docket 1 ¶ 115; Docket 174 at 23. Maday disputes whether defendants placed him in the SHU for protection. Docket 174 at 23.

On April 27, 2018, Sergeant Tycz led Maday to the SHU and told Maday that Klimek told Tycz to put Maday in the SHU. Docket 94 at 11-12. Tycz placed Maday in a holding cell by the entrance of the SHU. Docket 172 ¶ 265.

Once Maday was placed in the holding cell, Tycz spoke with Lieutenant Larson in another room. Docket 94 at 12. Tycz returned and informed Maday that Maday did not need to be in the SHU because he did not do anything wrong. Docket 172 ¶ 266.

## X.  ADA Accommodations

Finally, Maday alleges several ADA violations by defendants. First, Maday alleges that defendants failed to accommodate his diabetes when they failed to provide him with a specialized diet. Docket 174 at 23. On February 4, 2016, Maday was prescribed a 2400 calorie diabetic diet. Docket 94 at 13. Maday alleges that he would request a diabetic diet tray but would receive either a heart healthy or bland diet tray. *Id.* Maday alleges that this occurred at every meal. *Id.* On February 4, 2017, Maday signed a Release of Responsibility form and returned to a regular diet tray. Docket 140 ¶ 84; Docket 174 at 50. Maday stated that he would pick and choose what to eat on the tray. Docket 94 at 13. Because of this, Maday alleges he struggled to maintain healthy blood sugar levels. *Id.*

Second, Maday alleges that he was not able to use the recreation yard (Sports Complex) or the large recreation yard west of the East and West Crawford living units for several reasons. Docket 174 at 75. Maday's access to these recreation facilities was limited due to his mobility issues, scheduling conflicts, and the condition of the recreation facilities. *Id.* at 76-77; Docket 1 ¶¶ 123-25. Maday was unable to attend West Crawford's recreation time (10:00 a.m.) because he had his blood glucose level checks between 10:00 and 10:30

a.m. everyday. Docket 1 ¶ 123.

In the spring of 2015, the large recreation yard next to the West Crawford living unit was opened to inmates for occasional recreation time. *Id.* ¶ 60. Maday spent his recreation time walking laps. *Id.* Maday alleges that the condition of the recreation yard and the large Crawford recreation yard prevented him from continuing his lap-walking because he feared he would reinjure himself. *Id.* ¶¶ 60, 124. The recreation yard had potholes, large rocks, broken asphalt, and uneven terrain. *Id.* ¶ 60. MDSP had an alternate recreation area in the gym, but Maday was not allowed to use it because of his walking boot/cast. *Id.* ¶ 125. Maday claims that he should have been allowed to use the handicap recreation area. *Id.*

Next, Maday alleges that he did not receive handicap accommodations when he broke his foot. *Id.* ¶ 126. While Maday's foot was broken, Maday did not have access to the handicap accessible shower. *Id.* ¶¶ 80, 126. Maday had to use the standard inmates shower, which he alleges had a slick tile floor and no handrails. *Id.* ¶ 126.

## STANDARD OF REVIEW

The court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). In conducting its de novo review, this court may then "accept, reject, or modify, in whole or in part,

18

the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)); *see also Helton v. Southland Racing Corp.*, 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); Fed. R. Civ. P. 56(e).

"A dispute is genuine when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.' " *Westchem Agric. Chems. Inc., v. Ford Motor Co.*, 990 F.2d 426, 429 (8th Cir. 1993) (quoting *Anderson*, 477 U.S. at 248). "A fact is material when it might affect the outcome of the suit under governing law." *Davis v. Or. Cty.*, 607 F.3d 543, 548 (8th Cir. 2010) (citing *Anderson*, 477 U.S. at 248). "Only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48.

The availability of summary judgment is essentially a question of determining "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. Though pro se litigants are entitled to a liberal construction of their pleadings, Federal Rule of Civil Procedure 56 remains equally applicable to them. *Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987).

## I.     Deliberate Indifference

### A.     Properly Fitting Shoes

Maday alleges a deliberate indifference claim against several defendants for their failure to provide him with properly fitting shoes. Docket 1 ¶¶ 40-59, 129, 131. Maday's first claim for deliberate indifference is directed at non-medical staff: an unknown laundry supervisor and Namminga. *Id.* ¶129. Maday's second claim is directed at medical and MDSP staff: Hanvey, Tolsma-Hanvey, Klimek, Tjeerdsma, and DeJong. *Id.* ¶ 131. In the report and recommendation, Magistrate Judge Duffy recommended that the court grant

defendants' summary judgment motion for qualified immunity on this claim. Docket 188 at 27.

A majority of Maday's objections to the report and recommendation are to non-material facts, like Magistrate Judge Duffy's use of the word "abscess" compared to Maday's assertion that he developed "lesions." *See* Docket 192 at 3. The court will only address Maday's objections that go to the substantive law or material facts because this is a motion for summary judgment.

Maday objects to Magistrate Judge Duffy's finding that Maday's serious medical need, the abscess on his callus, started on December 18, 2014. Docket 192 at 2 (citing Docket 188 at 18). The first element to a deliberate indifference claim to serious medical needs requires Maday to show he suffered objectively serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Maday argues that his calluses, sore, and ulcers on his feet constitute serious medical needs because of his diabetes. Docket 192 at 2-3. Generally, calluses alone do not constitute a serious medical need. *See*, *e.g., Stevens v. City of New York*, 2013 WL 81327, at *3 (S.D.N.Y. Jan. 8, 2013) (finding calluses allegedly caused by prison-issue footwear was not serious a medical need); *Wagle v. Skutt*, 2011 WL 6004344, at *5 (E.D. Mich. Nov. 7, 2011) (same); *Liverman v. Gubernik*, 2010 WL 3703314, at *12 (E.D. Pa. Sept. 21, 2010) (same); *Grear v. Gelabert*, 2009 WL 607407, at *5 (W.D. Mich. Mar. 9, 2009) (holding petitioner's calluses did not constitute a serious medical need because there was no infection and did not require medical treatment). Here, Maday's calluses—prior to December 18, 2014—do not rise to the level of a

serious medical need. In viewing the facts in the light most favorable to Maday, the court will consider Maday's open sore and ulcer—that was treated on December 18, 2014—to rise to the level of a serious medical need because the injuries required medical treatment. Thus, this objection is overruled.

Next, Maday objects to Magistrate Judge Duffy's finding that the facts alleged by Maday do not show deliberate indifference. Docket 192 at 3 (citing Docket 188 at 22). Magistrate Judge Duffy found that defendants attempted to address Maday's complaints, and that the steps defendants took do not show a mental state akin to criminal recklessness. Docket 188 at 23. Magistrate Judge Duffy notes several steps defendants took to address Maday's complaints like giving him wide leather shoes, replacing those shoes three times, giving him moleskin and pumice stone for his calluses, and giving him continued access to medical care. *Id.* at 22-23. Maday argues that defendants did not attempt to address his complaints. Docket 192 at 3, 5. Maday also objects to Magistrate Judge Duffy's findings that defendants were not aware of Maday's serious medical needs. *Id.* at 3 (citing Docket 188 at 24-25). Maday argues that he complained on numerous occasions about his calluses. *Id.* at 6.

The second element to a deliberate indifference claim requires Maday to demonstrate that defendant actually knew of but deliberately disregarded Maday's serious medical needs. *Dulany*, 132 F.3d at 1239. There is no deliberate indifference on the part of Namminga because she quickly gave Maday the requested wide shoes when Maday initially asked for wider shoes and when Maday had a medical order for New Balance shoes. On his arrival to

MDSP, Maday requested wide shoes. Docket 1 ¶ 40. "A few days later" Namminga issued Maday wide leather shoes. *Id.* ¶ 41; Docket 192 at 3. Maday argues that the provided wide shoes did not properly secure to his feet and caused him to keep developing blisters. Docket 1 ¶ 44. But Maday never informed Namminga personally that the leather shoes were causing the problem with his feet. Docket 140 ¶ 18. Additionally, there was no medical order instructing Namminga to issue Maday New Balance shoes until December 18, 2014. *Id.* ¶ 21. Once Namminga received this order, she immediately ordered the shoes. Thus, Maday failed to show that Namminga "actually knew of" Maday's blisters and that the shoes were causing the issue.

As to the medical defendants, the record demonstrates that the staff did not ignore Maday's complaints about his sore/ulcer and the need for proper fitting shoes. On December 3, 2014, Maday complained to medical staff about the open sore, and medical staff advised him to monitor it. Docket 1 ¶ 54. On December 18, 2014, the open sore—that was now an ulceration—was cleaned and antibiotics were applied. *Id.* ¶ 57. Once Maday developed a serious medical need, medical staff emailed Klimek and stated Maday would benefit from better fitting shoes. *Id.* Maday was sent to the laundry unit, his feet were measured, and New Balance shoes were ordered. *Id.* ¶ 58. Maday received his New Balance shoes six weeks later. *Id.* This does not constitute deliberate indifference because once defendants became aware of Maday's serious medical need, they monitored the injury, and when the injury did not improve, they ordered the necessary shoes.

Maday's objections are premised on his belief that the accommodations or treatments did not fit his preferred choices. "Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). The fact that Maday believed he should have been prescribed New Balances at an earlier date does not establish a claim that defendants were deliberately indifferent to his serious medical need. Thus, both of Maday's objections are overruled.

Because the court overruled all of Maday's objections on this claim, the court adopts Magistrate Judge Duffy's analysis and conclusion for this claim. The court grants summary judgment in favor of defendants on this claim.

### B.     Policy Allowing Non-Medical Staff to Decide Proper Footwear

In his complaint, Maday alleges that the South Dakota DOC has a policy that restricts medical staff from prescribing necessary footwear and permits non-medical staff to do so. Docket 1 ¶ 130. Maday claims that this policy resulted in deliberate indifference to inmates' serious medical needs by Bob Dooley, Dennis Kaemingk, Dr. Carpenter, Jennifer Stanwick-Klimek, Rebecca Schieffer, Brent Fluke, Alejandro Reyes, and Tolsma-Hanvey. *Id.* Magistrate Judge Duffy recommended that the court grant summary judgment on this claim. Docket 188 at 27-28.

Maday makes three objections to this portion of the report and recommendation. Docket 192 at 4, 6-7. Maday's first two objections relate to Magistrate Judge Duffy's determination that defendants did not allow non-

medical staff to determine medical issues. Docket 188 at 27-28. First, Maday

alleges that he demonstrated that medical staff adopted the policy with his

affidavits and exhibits. Docket 192 at 4, 6. He points to Dr. Carpenter's

memorandums from 2014 and 2016 (Docket 173-1 at 26, 27). Docket 192 at 4.

Maday interprets the memorandums to say that medical staff cannot issue

comfort items, which include New Balances shoes. *Id.* The court, however,

agrees with Magistrate Judge Duffy's reading of the memorandums. Both

memorandums state that health services staff provide medical treatment,

which does not include providing certain "comfort items." Docket 173-1 at 26,

27. The memorandums "directly relate[] to requests by offenders for non-

medical issues[.]" *Id.* Thus, medical staff can prescribe these items if they are

for medical issues and this objection is overruled.

Second, Maday argues that defendants failed to explain why Klimek was

involved in obtaining Maday's New Balances. Docket 192 at 4. Klimek's

involvement was limited to medical staff emailing him that Maday would

benefit from better fitting shoes and Klimek informing the laundry unit that

Maday needed New Balances. These facts came from Maday's complaint and

from defendant's statement of undisputed facts, which Maday did not object to

specifically. Docket 1 ¶ 58; Docket 140 ¶ 23. Thus, this objection is overruled.

Maday's third objection relates to Magistrate Judge Duffy's statement

that Maday's version of the events supports defendants' asserted policy. Docket

192 at 7 (citing Docket 188 at 28). Maday argues that the report and

recommendation ignores the fact that the New Balances did not come from

25

medical staff, but instead from the laundry unit. Docket 192 at 7. The fact that the laundry unit was the entity that issued the New Balances does not support Maday's interpretation of the policy. It was the medical staff's order that initiated the issuance of the New Balances from the laundry unit. Docket 1 ¶¶ 57-58. Thus, this objection is overruled.

Because the court overruled all of Maday's objections on this claim, the court adopts Magistrate Judge Duffy's analysis and conclusion. The court grants summary judgment in favor of defendants on this claim.

### C.    Plantar Fasciitis

In his complaint, Maday alleges that defendants Hanvey, Tolsma-Hanvey, Rabbass, Fejfar, Myer, and other unknown staff were deliberately indifferent to his serious medical needs when they failed to treat his plantar fasciitis. *Id.* ¶ 133. Magistrate Judge Duffy recommended that the court grant defendants' motion for summary judgment on this claim. Docket 188 at 30.

Maday has two objections to the report and recommendation as it relates to Maday's plantar fasciitis. Docket 192 at 7. First, Maday argues that Magistrate Judge Duffy gave preferential treatment to defendants' argument that Maday never informed defendants of his pain. *Id.* Maday alleges that Magistrate Judge Duffy made an improper credibility determination when she cited defendants' affidavits instead of Maday's affidavit. *Id.* (citing Docket 188 at 29-30).

In the report and recommendation, Magistrate Judge Duffy relies on defendants' asserted sequence of events. *See* Docket 188 at 29. Magistrate

Judge Duffy references defendants' affidavits and cites to several documents submitted by defendants in the record. *See id.* at 29-30. Based on this evidence, Magistrate Judge Duffy determined that Maday did not inform medical staff about his heel pain until October 14, 2015. *Id.* at 30. Maday, however, submitted his own affidavit that disputed defendants' affidavits and supporting material. Docket 174. Maday asserts that he first complained to medical staff about his heel pain on July 27, 2015, and continued to complain to no avail until November 13, 2015. *Id.* at 6, 12-13. Magistrate Judge Duffy resolved this dispute by accepting defendants' affidavits and supporting evidence rather than Maday's affidavit. *See Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990). "[S]uch a credibility determination is inappropriate in ruling on a motion for summary judgment." *Id.* Thus, this objection is sustained.

But Maday's allegations, even assuming they are true, do not rise to the level of deliberate indifference. Maday's allegations show that defendants responded to his complaints of heel pain with increased treatment over time. *See Fletcher v. Butts*, 994 F.2d 548, 549 (8th Cir. 1993) (per curiam) (holding that conservative treatment over time did not establish deliberate indifference). He first complained to medical staff that he was experiencing severe pain in his heel on July 27 and 28, 2015. Docket 174 at 6. His next complaint of heel pain to medical staff did not occur until October 14, 2015. *Id.* At this appointment, PA Adams ordered an x-ray and issued Maday arch support inserts, which he received immediately. *Id.* at 6-8. Maday alleges, "The period between July 28,

2015 and October 14, 2015 totals 78 days that Plaintiff was subject to the wanton and unnecessary infliction of pain." *Id.* at 7. The delay between his July complaint and treatment in October is due to Maday's failure to notify medical staff of his continued pain. Once Maday made medical staff aware that his pain persisted, the record shows that medical staff acted in treating it. At Maday's November 4, 2015 appointment, medical staff issued Maday a medical lay in tray with meals on the unit so Maday would not have to walk on his foot and told Maday he could receive Tylenol four times a day. Docket 1 ¶ 68; Docket 174 at 8-9. "[T]he delays plaintiff complains of are typical both in prison and in ordinary life for a condition like plantar fasciitis." *McGuire v. Bryson*, 2014 WL 4467849, at *3 (E.D. Mo. Sept. 9, 2014).

Maday alleges his plantar fasciitis should have been treated with better cushioning for his feet with diabetic socks, crutches or a cane for assistance with moving, hospital visits, access to the handicap shower, arrangements for blood sugar and medical passes at his unit, and x-rays. Docket 174 at 6, 8-12. This case involves no more than a mere disagreement by Maday with the course of treatment that defendants provided. In his affidavit, Maday mentions several times that medical staff's failure to provide his desired treatment shows deliberate indifference. *See id.* at 7-12. "[W]ell-established law dictates that such cases are not cognizable." *Goodrich v. Hacker*, 2017 WL 1055968, at *9 (N.D. Iowa Mar. 20, 2017) (citing Eighth Circuit Court of Appeals cases holding disagreement with treatment plan does not constitute deliberate indifference); *see, e.g.*, *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118-19 (8th Cir.

2007) (explaining that difference of medical opinion or course of treatment does not constitute deliberate indifference); *Dulany*, 132 F.3d at 1239 (holding that prison doctors remain free to exercise independent medical judgment and that inmates have no constitutional right to their requested course of treatment); *Long*, 86 F.3d at 765. Thus, Maday fails to establish a deliberate indifference claim.

For his second objection, Maday argues that Magistrate Judge Duffy allowed introduction of affidavits that were impermissibly based on "information and belief" in violation of Federal Rule of Civil Procedure 56(c). Docket 192 at 7. This objection is an attempt to reargue Maday's motion to strike (Docket 155), which Magistrate Judge Duffy denied. Docket 188 at 118-24. Maday cannot object to Magistrate Judge Duffy's determination on the motion to strike. Additionally, though Magistrate Judge Duffy states that "defendants have asserted by affidavit," she cites no specific affidavits from defendants, but instead cites to documents in the records, i.e. sick call reports. *See* Docket 188 at 29-30 (citing Docket 126-78 through Docket 126-83). Federal Rule of Civil Procedure 56(c)(1) permits parties to support their assertions that a fact cannot be genuinely disputed by "citing to particular parts of materials in the record including . . . documents . . . ." Thus, this objection is overruled.

The court adopts Magistrate Judge Duffy's analysis and conclusion as to this claim. Summary judgment as to Maday's plantar fasciitis deliberate indifference claim is granted in favor of defendants.

**D.    Failure to Treat a Fracture in Maday's Foot for 9 Days**

In his complaint, Maday alleges that defendants Dr. Carpenter, Hanvey, Tolsma-Hanvey, Dr. Schroeder, and unknown South Dakota Department of Health/Correctional Health Services (DOH) violated his right to be free from cruel and unusual punishment when they were deliberately indifferent to his broken metatarsal. Docket 1 ¶ 132. Maday alleges that he was forced to walk on his broken metatarsal for ten days, which caused him excruciating pain. *Id.* In the report and recommendation, Magistrate Judge Duffy recommended that the court grant summary judgment. Docket 188 at 35.

Maday has five objections to this portion of the report and recommendation. Docket 192 at 7-8. First, Maday objects to Magistrate Judge Duffy's statement that on November 13, 2015, Maday received medical care he deemed "acceptable." *Id.* at 7 (citing Docket 188 at 31). Maday argues that he demonstrated by affidavit and exhibits that he did not receive medical treatment until November 13, despite his attempts to receive treatment at a sick call on November 4, 2015. Docket 192 at 7-8. Maday states that Magistrate Judge Duffy "completely ignores" the fact that he went in on November 4 for pain in his foot. *Id.* But Magistrate Judge Duffy did not ignore this fact as she noted in the report and recommendation that Maday reported his severe pain in his foot to medical staff on November 4, 5, 6, 9, and 10, 2015. Docket 188 at 30. Thus, this objection is overruled.

Second, Maday objects to the report and recommendation's discussion of his visit with Dr. Schroeder. Docket 192 at 7 (citing Docket 188 at 31). Maday

argues that Magistrate Judge Duffy "completely ignores the fact" that Dr. Schroeder told Maday to avoid weight bearing activities but did not issue him crutches or a cane. *Id.* Though Magistrate Judge Duffy does not provide this fact in the report and recommendation, the court does not find that she needed to include it. The fact that Dr. Schroeder did not issue Maday crutches when Maday believes he should have does not constitute a material fact to Maday's deliberate indifference claim because "a prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Meuir*, 487 F.3d at 1118-19 (alteration in original) (quoting *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992)). Thus, this objection is overruled.

Third, Maday objects to Magistrate Judge Duffy's reliance on defendants' affidavits as they relate to his complaints of pain at his November 4 and 5, 2015 sick calls. Docket 192 at 8. He argues that Magistrate Judge Duffy made an "impermissible credibility determination" when the report and recommendation gave "more weight" to defendants' affidavits than his affidavit. *Id.* In the report and recommendation, Magistrate Judge Duffy only cites Maday's allegations for these two sick calls. *See* Docket 188 at 30 ("Mr. Maday alleges he reported to prison medical staff on November 4, 5, 6, 9, and 10, 2015, complaining each day of severe pain in his right foot."). She goes on to state that no action was taken at any of these visits. *Id.* at 30-31. Magistrate Judge Duffy only relies on Maday's allegations and does not reference any of defendants' affidavits for those sick calls. Because Magistrate Judge Duffy

accepts Maday's allegations as true, she did not make an impermissible credibility determination here. Thus, this objection is overruled.

Fourth, Maday objects to Magistrate Judge Duffy's consideration of defendants' affidavits because he alleges the affidavits are based upon "information and belief" and not "personal knowledge" as required by Federal Rule of Civil Procedure 56(c)(4). Docket 192 at 8. Again, this is an attempt by Maday to reargue his motion to strike (Docket 155), which Magistrate Judge Duffy denied. *See* Docket 188 at 118-24. For the reasons stated above, this objection is overruled.

Lastly, Maday objects to Magistrate Judge Duffy's conclusion that a two-day delay in receiving treatment does not constitute deliberate indifference. Docket 192 at 10. Maday alleges that the delay was nine day and not two days as determined by Magistrate Judge Duffy. *Id.* Maday alleges that he did not receive appropriate or his preferred treatment immediately. *See* Docket 174 at 59. Maday first complained of the extreme pain on November 4, 2015. *Id.* at 7. After repeated sick calls on November 5, 6, and 9, his foot was x-rayed on November 10, 2015. *Id.* at 8-12. On November 11, 2015, Maday's foot pain was diagnosed as an "acute nondisplaced 4th metatarsal shaft fracture." *Id.* at 13. Two days after his diagnosis, on November 13, 2015, Maday was put in a cam/walker boot, issued crutches and a wheelchair, medical lay-in trays, and Tylenol. *Id.* A two-day delay between diagnosis and Maday's preferred treatment does not amount to a constitutional violation. *See Nahkahyen-Clearsand v. Lincoln Reg'l Ctr.*, 2017 WL 3172856, at *3 (D. Neb. July 25,

2017), aff'd, 2018 WL 1633473 (8th Cir. Feb. 22, 2018) (finding defendants were not deliberately indifferent when plaintiff broke his foot, was given an ice pack and crutches the same day, had an x-ray two days after the injury, and placed in a boot five days after he learned his foot was broken). Additionally, between his initial complaint and final diagnosis, Maday received various treatments like medical lay-in trays, Tylenol, and he was educated to rest his feet. Docket 1 ¶¶ 68-69; Docket 174 at 8. *See Witt v. Bell*, 551 F. App'x 240, 241 (5th Cir. 2014) (per curiam) (finding plaintiff's allegations that he only received over-the-counter pain relief and a treatment plan for his broken toe to heal on its own did not rise to the level of a constitutional violation).

Maday's belief that his treatment plan should have included crutches or a cane, a hospital visit, access to handicap showers, arrangements for medical passes in his unit, or an x-ray earlier in his treatment plan does not amount to a constitutional violation. *See Valladares v. Hubbard*, 490 F. App'x 72, 72 (9th Cir. 2013) ("[N]either a short delay in treatment that did not result in further injury, nor [plaintiff's] disagreement with defendants' medical judgment or course of treatment, constitutes deliberate indifference.) Thus, Maday's allegations do not establish that defendants were deliberately indifferent to his broken metatarsal.

Because the court overruled all of Maday's objections on this claim, the court adopts Magistrate Judge Duffy's analysis and conclusion. The court grants summary judgment in favor of defendants on this claim.

### E. Removal of Arch Supports

In his complaint, Maday alleges that Cropper deliberately interfered with Maday's prescribed medical care when Cropper removed Maday's arch supports from his room. Docket 1 ¶ 134. Maday alleges that this action resulted in a refracture of his healed metatarsal and caused him severe pain. *Id.* Additionally, Maday alleges that Klimek was deliberately indifferent to Maday's serious medical needs when Klimek refused to intervene. *Id.* ¶ 135. Magistrate Judge Duffy recommended that the court grant summary judgment on this claim. Docket 188 at 37.

Maday has two objections to this portion of the report and recommendation. Docket 192 at 9. First, Maday argues that Magistrate Judge Duffy's statement that the court and Maday are not experts in reading x-rays demonstrates the need for an expert. *Id.* (citing Docket 188 at 36). The court construes this objection as an attempt by Maday to reargue his motion for expert witness (Docket 175), which Magistrate Judge Duffy denied (Docket 188 at 124-131; Docket 189). Thus, this objection is overruled.

Second, Maday argues that Magistrate Judge Duffy disregards the fact that a genuine issue of material fact remains because a reasonable probability exists that Cropper's confiscation of the arch supports initiated the new problems with Maday's metatarsal. Docket 192 at 9. "[A] causal connection between an event and an injury may be inferred in cases in which a visible injury or a sudden onset of an injury occurs. . . . However, when the injury is a sophisticated one, i.e., requiring surgical intervention or other highly scientific

technique for diagnosis, proof of causation is not within the realm of lay understanding and must be established through expert testimony." *Turner v. Iowa Fire Equip. Co.,* 229 F.3d 1202, 1210 (8th Cir. 2000) (internal quotation omitted).

Maday has failed to present any medical evidence that there is a causal link between the confiscation of the arch supports and his acute stress fracture. Maday primarily relies on allegations in his complaint and affidavits to support a causal connection, though some of his allegations are supported by medical evidence. On January 5, 2016, medical staff found Maday's stress fracture to be healed. Docket 126-57. On March 26, 2016, Cropper confiscated Maday's arch supports. Docket 174 at 59. Maday received replacements on April 7, 2016. *Id.* at 60. On June 27, 2016, Maday complained to medical staff that he had a "constant ache" at the site of his previous fracture. Docket 1 ¶ 82; *see also* Docket 126-43. At this sick call, the nurse noted that Maday requested a medical lay-in because Maday told the nurse that he "may get a stress fracture if [he] continues to walk on his feet." Docket 126-43; Docket 174 at 60. On February 9, 2017, Maday was diagnosed with a "partially healed fourth metatarsal fracture." Docket 126-60. The only medical evidence presented was Maday's subjective complaints contained within his sick call notes, the healed fracture from January of 2016, and the partially healed fracture from February 2017.

Thus, the court agrees with Magistrate Judge Duffy's finding that there is no proof of a causal nexus between Cropper's confiscation of the arch supports and Maday's reoccurrence of pain in his foot. This objection is overruled.

Because the court overruled all of Maday's objections to this claim, the court adopts Magistrate Judge Duffy's analysis and conclusion. The court grants defendants' motion for summary judgment for this claim.

### F. Failure to Properly Treat Foot Fracture in August of 2016

In his complaint, Maday alleges that medical staff and Dayna Klawitter were deliberately indifferent to his serious medical needs when they did not diagnosis his fracture until February of 2017, gave him ankle exercises, did not have a walking boot on site to fit Maday, and referred him to Dr. Pederson. Docket 1 ¶¶ 136-37. Magistrate Judge Duffy recommended that the court grant summary judgment on this claim. Docket 188 at 40.

Maday has three objections to this portion of the report and recommendation. Docket 192 at 9. All of Maday's objections to this portion of the report and recommendation do not pertain to Magistrate Judge Duffy's overall analysis or conclusion. Instead, Maday attacks Magistrate Judge Duffy's discussion of the facts.

First, Maday makes a factual objection to Magistrate Judge Duffy's finding that Maday's x-ray "showed no acute fracture or dislocation, but instead a partially healed fourth metatarsal fracture." *Id.* (citing Docket 188 at 38). Maday argues that Magistrate Judge Duffy "ignores a salient fact" that Dr. Pederson diagnosed Maday's metatarsal fracture healed prior to the February

2017 x-ray. *Id.* Though Magistrate Judge Duffy did not mention the healed metatarsal x-ray from January of 2016 in this section of the report and recommendation, she discussed it on the page before during her analysis on Maday's arch support claim. *See* Docket 188 at 32. Magistrate Judge Duffy noted that on January 4, 2016, doctors proclaimed Maday's foot to be healed. *Id.* at 36 (citing Docket 173-1 at 68). Furthermore, the medical evidence in the record supports Magistrate Judge Duffy's finding. On February 10, 2016, Dr. Stephen Peters read Maday's recent x-ray and stated his impression was a partially healed fourth metatarsal fracture. Docket 126-60. At a follow-up appointment with Maday on February 15, 2016, PA Adams's assessment was a "[d]isp fx of fourth metatarsal bone." Docket 126-61 at 2. He reported this exact information to Maday at the appointment. *Id.* The only proof Maday offers to support his statement that his foot was "refractured" is Maday's own interpretation/reading of the x-rays. Docket 192 at 9. Nowhere in the medical evidence do the doctors call the injury a "refracture." For these reasons, this objection is overruled.

Second, Maday argues that Magistrate Judge Duffy offered no explanation for how Maday's foot went from healed to partially healed. *Id.* It is not Magistrate Judge Duffy's duty to explain how Maday's foot went from healed to partially healed. It is Maday's duty to present medical evidence that provides such an explanation, and he has failed to provide any evidence that can explain how his fourth metatarsal went from healed to partially healed. *See Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (explaining that

plaintiff must place verifying medical evidence into record to establish effect lapse in treatment had on medical condition). Thus, this objection is overruled.

Third, Maday contends that Magistrate Judge Duffy made an unreasonable credibility determination when she stated that Maday refused to wear the splints defendants offered. Docket 192 at 9. In the report and recommendation, Magistrate Judge Duffy stated that Maday made the informed choice not to follow the medical staff's recommendation to wear a splint and ace wrap. Docket 188 at 39. Maday argues that Magistrate Judge Duffy "automatically assumes" Maday refused the splint and walked out without aid of crutches, but he did use crutches and a wheelchair. Docket 192 at 9. Nowhere in the report and recommendation does Magistrate Judge Duffy make such an assumption. Though she does not mention whether Maday used assistive devices to walk, she also does not specifically mention that he made the decision to not use them. *See* Docket 188 at 39-40. Thus, this objection is overruled.

Because the court has overruled all three of Maday's objections, the court adopts Magistrate Judge Duffy's analysis and conclusion as to this claim. The court grants the summary judgment motion in favor of defendants on the failure to treat Maday's fracture claim.

### G. Failure to Provide Properly Fitting Diabetic Socks

In his complaint, Maday alleges that Namminga, Hanvey, Tolsma-Hanvey, Klimek, Tjeerdsma, DeJong, and Dr. Carpenter were deliberately indifferent when they failed to give Maday properly fitting diabetic socks even

though Maday has a medical order for them. Docket 1 ¶ 146. In the report and recommendation, Magistrate Judge Duffy recommended the court grant summary judgment on this claim. Docket 188 at 43-44.

Maday makes one factual objection to this section. Docket 192 at 9. Maday states that Magistrate Judge Duffy inserted her "own version" of the facts when she stated that PA Adams told Maday that his diabetic socks were the appropriate size. *Id.* (citing Docket 188 at 41). Maday argues that PA Adams never said his socks were the appropriate size; instead, PA Adams said the socks appeared to fit appropriately. *Id.*

Magistrate Judge Duffy makes two references about PA Adam's comments on the fit of the socks. First, Magistrate Judge Duffy states that PA Adams told Maday "that his diabetic socks were the appropriate size[.]" Docket 188 at 41. Second, she stated that PA Adams evaluated the socks and concluded that the socks "fit him adequately." *Id.* at 42-43. In his medical notes, PA Adams states, "I evaluated the patient's socks and they do appear to fit adequately." Docket 126-45 at 2. PA Adams goes on to explain in his notes that he discussed with Maday that the socks do not fit properly because of the swelling from Maday's dependent edema, not because of ill-fitting socks. *Id.* Thus, after comparing PA Adam's notes with Magistrate Judge Duffy's discussion, the court does not find that Magistrate Judge Duffy inserted her own version of the facts. Thus, this objection is overruled.

Because the court overruled Maday's objection, the court adopts Magistrate Judge Duffy's analysis and conclusion as to this claim. The court grants summary judgment in favor of defendants on this claim.

## II.     First Amendment Claims

### A.     February 2016 Sports Illustrated Magazine

#### 1.     Maday's Objections to the Report and Recommendation

In his complaint, Maday alleges Grosshuesch violated Maday's First Amendment rights when Maday's February 2016 Sports Illustrated Swimsuit Edition magazine was confiscated for "sexually explicit" material. Docket 1 ¶ 139; Docket 94 at 17. In the report and recommendation, Magistrate Judge Duffy recommended that the court grant summary judgment on this claim because Maday failed to exhaust his administrative remedies. Docket 188 at 49. Maday objects to Magistrate Judge Duffy's finding that he failed to exhaust the administrative remedies. Docket 192 at 10, 20.

"An inmate must exhaust all available administrative remedies before bringing a § 1983 suit." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (citations omitted). "Inmates are excused from exhausting remedies 'when officials have prevented prisoners from utilizing the procedures, or when officials themselves have failed to comply with the grievance procedures.' " *Id.* at 452 (quoting *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005)). " '[A] remedy that prison officials prevent a prisoner from utiliz[ing] is not an available remedy . . . .' " *Id.* (alterations in original) (quoting *Miller*, 247 F.3d at 740).

Magistrate Judge Duffy noted that Maday filed an IRR (Docket 126-98), which was denied (Docket 126-99), but did not follow the next step by filing an AR (Docket 127 ¶ 24). Docket 188 at 49. Maday, however, objects to this finding and argues that he exhausted his administrative remedies. Docket 192 at 10, 20. In defendants' statement of undisputed material facts, defendants claim the record reflects that Maday elected not to pursue an AR. Docket 140 ¶ 193 (citing Docket 127 ¶ 27). By accepting the facts submitted by defendants, Maday alleges that Magistrate Judge Duffy made an "impermissible credibility determination." Docket 192 at 10.

In his affidavit, Maday stated that after his IRR was denied, he requested an AR from DeJong. Docket 174 ¶ 193. Maday alleges that DeJong refused to give him an AR. *Id.* Thus, viewing the facts in the light most favor to the non-moving party, the court finds that DeJong refused to give Maday an AR. Because DeJong refused to give Maday an AR, the second step in the grievance was not available to him. Thus, Maday exhausted his available administrative remedies by completing an IRR. Maday's objection is sustained.

### 2.    Qualified Immunity as to Money Damages

Because the court sustained Maday's objection, the court must now conduct a de novo review of his claim. Maday alleges his First Amendment rights were violated when Grosshuesch confiscated his February 2016 Sports Illustrated Swimsuit Edition magazine. Docket 1 ¶ 139. In their summary judgment motion, defendants argue that they are entitled to summary judgment based on qualified immunity to the extent that Maday seeks

monetary damages for this claim. Docket 126 at 83. Defendants argue that the state of relevant law in 2015 to 2016 did not indicate that prison officials were precluded from rejecting/censoring magazines containing revealing images intended to sexually arouse the viewer. *Id.*

Public officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerarld*, 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular officer. *Id.* at 819. In analyzing a qualified immunity defense, the court must consider two factors: (1) whether a constitutional right has been violated on the facts alleged, taken in the light most favorable to the party asserting the injury, and (2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In his complaint, Maday states that his First Amendment rights were violated because defendants confiscated his magazine under the DOC's Pornography Policy 1.3.C.8, but there was no sexually explicit material in the magazine. Docket 1 ¶ 97. Maday alleged in his complaint that Lieutenant Dykstra said he could not find any sexually explicit photos in the magazine. *Id.* The court interprets Maday's claim to be that defendants were not following their own policy. Maday notes that the policy defines "nudity" as "a pictorial or

other graphic depiction where . . . genitalia, pubic area, buttocks or female breast are exposed." Docket 126-100; Docket 173 at 4. Defendant's reasoning for confiscating the magazine was that it contained females whose breasts were "covered with less than fully opaque material[.]" Docket 133 ¶ 11; *see also* Docket 135 ¶ 13. Maday alleges that this criterion is nowhere in the policy. Docket 173 at 4. "[T]here is no federal constitutional liberty interest in having . . . prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). Thus, there was no constitutional right violated by defendants when they failed to follow their pornography policy.

Also, Maday states that the DOC pornography policy as applied to this specific magazine is an unconstitutional violation of his First Amendment rights. Docket 1 ¶ 97; Docket 173 at 4; Docket 174 at 10-11. Defendants argue that the magazine contains numerous images that feature sexual explicit material and nudity. Docket 126 at 77. Maday does not challenge the pornography policy on its face, but, rather, as applied to the censorship of this specific magazine.

"In such an as-applied challenge, [the court] consider[s] whether a ban on *these particular items* is reasonably related to a legitimate penological objective." *Murchison v. Rogers*, 779 F.3d 882, 887 (8th Cir. 2015) (internal quotation omitted) (emphasis in original). "Prison officials have broad discretion to censor or restrict an inmate's receipt of a publication to serve a legitimate penological interest[.]" *Id.* The court must conduct an independent review of the evidence to determine whether defendants' decision to apply the regulation and

withhold this magazine was an " 'exaggerated response to prison concerns' and therefore unconstitutional as applied." *Kaden v. Slykhuis*, 651 F.3d 966, 969 (8th Cir. 2011) (quoting *Williams v. Brimeyer*, 116 F.3d 351, 354 (8th Cir. 1997)). "[S]ummary judgment [is] appropriate only if [the prison officials] present[] some specific evidence of why this particular item implicates prison concerns." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 986 (8th Cir. 2004).

The court reviewed the three versions of the 2016 magazine. Dockets 126-128, 126-129, 126-30. The policy prohibits nudity, and nudity is defined as exposed female breasts and buttocks. Docket 126-100. The magazine contains several pictures of exposed female breasts, i.e. the entire breast is uncovered and only the nipple is covered by material or the models' hands. Docket 126-130 at 72, 79, 86, 90, 102, 141, 162. And in some pictures, nipples are visible through sheer clothing, i.e. swimsuit top made of chain, wet light-colored material, mesh tops. *Id.* at 39, 74, 147, 149. Additionally, the magazine contains images of exposed buttocks. *Id.* at 38, 67, 78, 82, 84, 89, 96, 133, 138-39, 150, 163, 208. Thus, the 2016 magazine falls within the prohibited material as contemplated by the pornography policy.

Defendants' reasoning for restricting this specific magazine was that "allowing Maday, a convicted sex offender, to possess the items in question would . . . be detrimental to his treatment and rehabilitation." Docket 126 at 82. After reviewing the material and deferring to the prison officials' expertise, the court finds that defendants' censorship of the 2016 Swimsuit Edition was reasonably related to a legitimate penological objective and was not an

exaggerated response to prison concerns related to this item. *Murchison*, 779 F.3d at 888; *Kaden*, 651 F.3d at 969.

As to defendants' qualified immunity defense, the court finds that the law regarding what may constitute "nudity" or "sexually-explicit" material was not so clearly established that it would have put defendants on notice that their conduct was unconstitutional. Defendants have provided case citations to several federal district courts that have found such censorship does not violate the Constitution. Docket 126 at 78-82; *see, e.g.*, *Heard v. Bravo*, 2015 WL 13658597, at *2 (D.N.M. Aug. 24, 2015) ("The Court found that the obscenity regulation at issue in this case does not rise to the level of a constitutional violation and is reasonably related to legitimate penological objectives."); *Prison Legal News v. Stolle*, 2014 WL 6982470, at *16 (E.D. Va. Dec. 8, 2014) (granting summary judgment in favor of defendants because there is no controlling precedent that indicates that "jail is prohibited from excluding all incoming publications containing revealing images of individuals in sexual poses overtly intended to sexually arouse the viewer[.]"); *Elfand v. Cty. of Sonoma*, 2013 WL 1007292, at *4 (N.D. Cal. Mar. 13, 2013) (upholding the constitutionality of a jail's censorship of issues of *Maxim Magazine* and *GQ Magazine* that displayed pictures of women and men in "underwear, bikinis, and tight and scant clothing revealing breasts and buttocks" to include an image of a woman in a "see-through bra and 'thong' underwear with her buttocks raised"); *Woods v. Dir.'s Review Comm.*, 2012 WL 1098365, at *1, *4 (S.D. Tex. Mar. 30, 2012) (concluding that the defendants were entitled to

qualified immunity in a case challenging a Texas prison's censorship of nude photos that had been "blurred in such a way as to disguise or cover up any exposed nudity," and noting that there was "no clear statement" in the law that would put an official on notice that it was unlawful to ban such images). Maday provided no case law to support his position.

Thus, the court grants summary judgment in favor of defendants based on qualified immunity on Maday's monetary damages claim for his 2016 magazine.

### 3. Injunctive Relief / Official Capacity Claim

In addition to his request for monetary damages for defendants' confiscation of his 2016 Sports Illustrated magazine, Maday requests "an order from this court requiring the South Dakota DOC to change its vague policy on censorship and allow photos into its facilities that meet the requirements of the [BOP's] definition[.]" Docket 1 ¶ 154. Maday sued defendants in their individual and official capacity. *Id.* ¶¶ 5-38.

Qualified immunity only protects defendants from claims for monetary relief in their individual capacity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "[S]tate officials may be sued in their official capacity for equitable relief." *Grantham v. Trickey*, 21 F.3d 289, 295 (8th Cir. 1994). Defendants failed to address Maday's injunctive relief claim against defendants in their official capacity. Defendants did not provide any argument on whether a constitutional right exists in general, did not provide any discussion on the supporting rationale to South Dakota DOC's pornography policy, and they did not discuss the *Turner* factors.

*See Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Thus, Maday's injunctive relief claim as to defendants in their official capacity survives summary judgment.

### B.     February 2015 Sports Illustrated Magazine

In his complaint, Maday alleges that St. Pierre violated his First Amendment rights when she confiscated his 2015 Sports Illustrated Swimsuit Edition magazine. Docket 1 ¶ 138. In the report and recommendation, Magistrate Judge Duffy recommended granting summary judgment in favor of defendants based on qualified immunity for this claim's monetary damages. Docket 188 at 56. As to Maday's request for injunctive relief for this claim, Magistrate Judge Duffy recommended that Maday's request for injunctive relief against defendants in their official capacities survives summary judgment. *Id.* at 57.

Maday makes several objections to this portion of the report and recommendation. Docket 192 at 10-11. First, Maday objects to Magistrate Judge Duffy's discussion of his argument that inmates are still able to obtain pornographic images through their electronic tablets. *Id.* at 10. Magistrate Judge Duffy stated that she did not need to address this issue because the fact that defendants' pornography policy can be evaded does not render it unconstitutional or that defendants are granting permission to possess pornography. Docket 188 at 55. Maday argues that there can be no legitimate penological interest in denying such items when defendants are providing the same content elsewhere. Docket 192 at 11.

"[T]he mere fact that other similar materials depicting [sexually explicit conduct] exist within the prison walls does not preclude summary judgment on the basis that this [sexually explicit] material violates prison regulations." *Murchison*, 779 F.3d at 890. "The existence of similar material within the prison walls may serve to show inconsistencies in the manner in which material is censored such as to undermine the rationale for censorship or show it was actually censored for its content." *Id.* Maday alleges that defendants provide images of fully exposed female breasts to inmates. Docket 174 at 16. Maday alleges inmates can access such images by purchasing the "GTL" music app on the electronic tablets. *Id.* But Maday failed to present any evidence that the same Sports Illustrated Swimsuit Edition magazine was available to anyone else in the prison. Although Maday has alleged that a few materials were available in the prison which demonstrates at least some inconsistency in the manner of censoring such material, Maday has not "demonstrated inconsistencies that rise to a level of randomness or that undermine the rationale for censoring this particular item." *Murchison*, 779 F.3d at 890. Thus, this objection is overruled.

For his second objection, Maday argues that Magistrate Judge Duffy impermissibly afforded more weight to defendants' affidavits that they rectified the issue of inmates obtaining sexually explicit material from their tablets. Docket 192 at 11. Maday argues that defendants' allegations of a solution are genuine issues of material fact. *Id.* In the report and recommendation, Magistrate Judge Duffy specifically stated that she did not need to resolve the

dispute between defendants' and Maday's alleged facts for this issue. Docket 188 at 55. Because Magistrate Judge Duffy did not make a determination on this issue and for the reasons stated above on the availability of other prohibited material, this objection is overruled.

For his third objection, Maday argues that Magistrate Judge Duffy "simply [took] defendants' assertions as an article of faith that their actions are serving a legitimate penological interest." Docket 192 at 11. Maday alleges that the first *Turner* factor requires statistics that demonstrates a difference between the number of harassment incidents against female staff before and after the pornography ban. *Id.*

Here, defendants do not need to present statistical evidence that harassment incidents have decreased since the ban. The Eighth Circuit Court of Appeals has held that "*Turner* does not require 'actual proof that a legitimate interest will be furthered by the challenged policy,' only that the interest being served and the policy have an 'objectively rational' connection." *Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024, 1027 (8th Cir. 2004) (quoting *Herlein v. Higgins*, 172 F.3d 1089, 1091 (8th Cir.1999)). "[P]rison policies may be legitimately based on prison administrators' reasonable assessment of *potential* dangers." *Prison Legal News v. Livingston*, 683 F.3d 201, 216 (5th Cir. 2012) (emphasis in original). Defendants' asserted legitimate penological interest is to avoid creating a sexualized atmosphere in the prison. Docket 126 at 82. They allege that allowing convicted sex offenders, like Maday, to possess such items would be detrimental to the inmates' treatment and rehabilitation. *Id.* The

court finds "that the interest advanced here was not dependent on a showing of previous harms based on the same material." *Murchison*, 779 F.3d at 890. Thus, this objection is overruled.

Because the court overruled all of Maday's objections, the court adopts Magistrate Judge Duffy's analysis and conclusion as to this claim. The court grants summary judgment in favor of defendants on this claim for monetary damages based on qualified immunity. As to Maday's claim for injunctive relief for this claim, the court finds that it survives summary judgment.

### C. Hardcover Books

In his complaint, Maday alleges that his First Amendment rights were violated by Stratman when two hardcover books sent to Maday were denied per "an arbitrary policy." Docket 1 ¶ 140. Magistrate Judge Duffy recommended that the court grant summary judgment in favor of defendants. Docket 188 at 62.

Maday makes six objections to this portion of the report and recommendation. First, Maday objects to Magistrate Judge Duffy's analysis that the hardcover book ban is reasonably related to legitimate penological objectives of security and prevention of contraband. Docket 192 at 12 (citing Docket 188 at 58). Maday argues that Magistrate Judge Duffy "takes it as an article of faith" that defendants are correct when they state there is a legitimate penological interest. *Id.* He argues that this is a genuine issue of material fact. *Id.*

"[Reviewing courts] must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The Eighth Circuit has held that the need for institutional security is a legitimate penological interest. *Ivey v. Ashcroft*, 1995 WL 486565, at *1 (8th Cir. 1995). Here, defendants stated that "[s]uch books are considered a threat to security within the prison. Not only can such books be used as a weapon, contraband can easily be hidden inside the binding." Docket 128 ¶ 14. Such rationale was upheld by the United States Supreme Court. *See Bell v. Wolfish*, 441 U.S. 520, 551 (1979) ("[H]ardback books are especially serviceable for smuggling contraband into an institution; money, drugs, and weapons easily may be secreted in the bindings . . . . They also are difficult to search effectively.").

"The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton*, 539 U.S. at 132. In his objections, Maday attempts to disprove the validity of the policy. Docket 192 at 11-12. Maday argues that there can be no legitimate penological interest because defendants provide thousands of hardcover books in the prison library. *Id.* Also, Maday notes that defendants do not argue that their staff is "too incompetent" to search the books for contraband. *Id.* at 12; Docket 174 at 17. Besides these conclusory statements and hypothetical situations, "[t]here is simply no evidence in the record to indicate that [South Dakota DOC] officials

have exaggerated their response to this security problem and to the administrative difficulties posed by the necessity of carefully inspecting each book mailed from unidentified sources." *Bell*, 441 U.S. at 551. Thus, Maday failed to meet his burden of disproving the validity of the prison regulation. This objection is overruled.

For his second objection, Maday alleges that Magistrate Judge Duffy's and defendants' interpretation of *Bell* is "skewed" and *Bell* is inapplicable to the present case. Docket 192 at 12. Maday cites and discusses a paragraph from *Bell* where the Supreme Court summarizes the lower courts' decisions and quotes the prison warden's affidavit (*see id.* at 12)—this is not the Supreme Court's holding or analysis, it is simply a summary of the procedural history. *See Bell*, 441 U.S. at 549. The Supreme Court reversed the lower courts and upheld the policy. *Id.* at 550-52, 563. Therefore, Maday's interpretation of *Bell* is incorrect.

Maday argues that he "was denied delivery of two hardcover books that were sent directly from a publisher in full compliance of the ruling in *Bell.*" Docket 192 at 12. Maday contends that Magistrate Judge Duffy ignored *Bell*'s holding. *Id.* at 13. Maday states that the Supreme Court in *Bell* held that "the denial of delivery of books sent from a publisher, book club or bookstore was a violation of an inmates First Amendment rights." *Id.*

In *Bell*, the Supreme Court held, "[A] prohibition against receipt of hardback books unless mailed directly from publishers, book clubs, or bookstores does not violate the First Amendment rights of MCC inmates." *Bell*,

52

441 U.S. at 550. In its analysis, the Court noted that the prison's policy allowed for the pre-trial detainees to receive hardcover books from publishers, book stores, and book clubs. *Id.* at 552. Nowhere in its opinion did the Court state that a policy that prohibits hardcover books from a publisher, book club, or bookstore would violate an inmate's First Amendment right. Maday's assertion that that is the holding in *Bell* is incorrect.

Here, the DOC policy prohibits all hardcover books from entering the prison. Docket 126-105. The fact that the policy upheld by the Supreme Court in *Bell* is distinguishable from the present policy does not render the present policy unconstitutional. Here, a more restrictive policy for prison inmates is comparable to the less restrictive policy in *Bell* where the plaintiff was a pre-trial detainee. *See Bell*, 440 U.S. at 552 ("We are also influenced in our decision by the fact that the rule's impact on pretrial detainees is limited to a maximum period of approximately 60 days."); *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) ("The Constitution affords greater protection to a pretrial detainee compared to a convicted inmate . . . ."). Thus, this objection is overruled.

For his third objection, Maday objects to Magistrate Judge Duffy's analysis of searching hardcover books. Docket 192 at 13. Maday argues that this discussion shows Magistrate Judge Duffy's prejudicial bias against him because she makes this argument for defendants. *Id.* (citing Docket 188 at 62). In reviewing this section of the report and recommendation, the court does not see how Magistrate Judge Duffy's analysis is an argument for defendants.

Instead, Magistrate Judge Duffy addresses Maday's argument that attempts to disprove the validity of the regulation. *See* Docket 188 at 61-62. Maday argued that defendants could search the hardcover books to ensure no contraband was hidden. Docket 192 at 13. Magistrate Judge Duffy provided two case citations where the courts noted the disadvantages of requiring prison officials to search such books. Docket 188 at 62 (citing *Bell*, 441 U.S. at 549, 551; *Pfeil v. Lampert*, 603 F. App'x 665, 669 (10th Cir. 2015)). The court finds that the cases cited support Magistrate Judge Duffy's reliance on them. Thus, this objection is overruled.

Next, Maday objects to Magistrate Judge Duffy's statement that "a number of courts have premised their denial of First Amendment claims regarding hardbound books on the inmates' failure to establish there was no reasonable alternative." Docket 192 at 13 (citing Docket 188 at 60). Maday argues that the circumstances of the instant case are considerably different from the cited cases because MDSP's library allows prisoners to check out hardcover books "without restriction." *Id.* Maday states that the cited cases do not state whether the libraries in those cases contained hardcover books. *Id.* The court agrees with Maday's statement; in the court's review of the cited cases, none of the cases states whether the libraries contained hardcover books. But in all the cases some hardcover books were allowed or present in the institutions. *See Dunlap v. Losey*, 40 F. App'x 41, 43 (6th Cir. 2002) (finding plaintiff failed to state a claim for the temporary deprivation of his hardcover Bible); *Leachman v. Thomas*, 2000 WL 1239126, at *4 (5th Cir. 2000)

54

(per curiam) (noting there are exceptions to the policy and several types of hardcover books are allowed); *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992) (stating plaintiff has access to hardcover law books in the jail's law library). Thus, the court finds Magistrate Judge Duffy's citation to these cases was proper. This objection is overruled.

Additionally, Maday argues that there is a genuine issue of material fact the jury must address. Docket 192 at 13. There is no dispute that MDSP allows prisoners to check out hardcover books from the library. Docket 174 at 17; Docket 128 ¶¶ 14-15, 19. This fact goes against Maday's position as discussed by Magistrate Judge Duffy. *See* Docket 188 at 61. The fact that MDSP has numerous books—that have previously been searched for contraband by defendants and likely are searched again when the items are checked in to the library—shows that Maday had reasonable alternatives for receiving the books he was denied. Thus, this objection is overruled.

Maday also objects to Magistrate Judge Duffy's statement that Maday could have checked the books out in the prison library if available. Docket 192 at 13-14 (citing Docket 188 at 61). Maday argues that Magistrate Judge Duffy is arguing on behalf of defendants. *Id.* at 13. Defendants make this argument in their brief and various affidavits, "Maday had alternative means of obtaining reading material, such as a relatively large prison library . . . ." Docket 126 at 88; *see, e.g.*, Docket 128 ¶¶ 18-19. Thus, this objection is overruled.

Lastly, Maday objects to Magistrate Judge Duffy's discussion of reasonable alternatives to the confiscated books. Docket 192 at 13-14 (citing

Docket 188 at 61). In the report and recommendation, Magistrate Judge Duffy states that Maday could have requested the donors send him the books in softcover from the publishers or Maday could have ordered the books in softcover himself. Docket 188 at 61. Maday argues that these statements show Magistrate Judge Duffy's disdain for Maday and "misses the point that the books were gifts." Docket 192 at 14 (emphasis omitted). In applying *Turner* to First Amendment claims, one factor courts must consider is "whether alternative means are open to inmates to exercise the asserted right[.]" *Overton*, 539 U.S. at 132 (citing *Turner*, 482 U.S. at 89-91). "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." *Turner*, 482 U.S. at 90 (internal quotations omitted). "Alternatives . . . need not be ideal, however; they need only be available." *Overton*, 539 U.S. at 135. Here, Magistrate Judge Duffy listed all the readily-available alternatives Maday could have used to obtain the two books. *See* Docket 188 at 61. Magistrate Judge Duffy did not need to consider the specific reasoning why the books were sent to Maday, only whether alternatives existed. Thus, this objection is overruled.

Because the court overruled all Maday's objections for his hardcover books claim, the court adopts Magistrate Judge Duffy's analysis and conclusion. The court grants summary judgment in favor of defendants on this claim.

### D. Denial of Mail Because it Contained Colored Paper

In his amended complaint, Maday alleges that Grosshuesch violated Maday's First Amendment rights when a letter sent to Maday was rejected because it contained contraband—colored paper. Docket 94 at 7-8, 17. In the report and recommendation, Magistrate Judge Duffy recommended the court grant summary judgment on this claim. Docket 188 at 65.

Maday makes two objections to this portion of the report and recommendation. Docket 192 at 14. First, Maday objects to Magistrate Judge Duffy's finding that Maday did not raise a constitutional issue. *Id.* Magistrate Judge Duffy found that Maday did not raise a constitutional issue because Maday claimed that defendants did not follow their own policy for handling mail containing contraband. Docket 188 at 62. Maday argues that he did raise a constitutional violation because the denial of mail violates the First Amendment. Docket 192 at 14.

In reviewing his amended complaint, the court agrees with Magistrate Judge Duffy's interpretation of Maday's claim. Maday alleges that once defendants determined the letter violated the policy, he should have been given the opportunity to direct defendants on how to handle the allowed items according to policy 1.5.D.3. Docket 94 at 7-8. He alleges that he was not given this option. *Id.* The court interprets this claim as defendants' failure to follow their own policy. "A violation of prison policy alone does not give rise to section 1983 liability." *Moore v. Rowley*, 126 F. App'x 759, 760 (8th Cir. 2005); *see also Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997) (no § 1983 liability for violating prison policy).

As to Maday's argument that the denial of mail violates the First Amendment, "inmates have a right to receive mail[.]" *Weiler v. Purkett,* 137 F.3d 1047, 1050 (8th Cir. 1998) (citing *Turner,* 482 U.S. at 89, 92). But "that right may be limited by prison regulations that are reasonably related to legitimate penological interests." *Id.* Defendants assert that the limitations on colored paper were put in place "to impede the introduction of narcotics and synthetic narcotics into the SDDOC facilities through the use of colored paper in greeting cards." Docket 126 at 90; Docket 129 ¶ 7. "Officials with the SDDOC had reason to believe that suboxone, methamphetamine, LSD and other narcotics were capable of being smuggled into prison using greeting cards and colored paper." Docket 129 ¶ 7. The Supreme Court has held that "deterring the use of drugs . . . within the prisons" is a legitimate interest. *Overton,* 539 U.S. at 134. Defendants' limitation of what type of paper correspondence can be sent in is reasonably related to the legitimate penological interest of deterring drug use. Thus, this objection is overruled.

Second, Maday objects to Magistrate Judge Duffy's summary of defendants' argument. Docket 192 at 14. In the report and recommendation, Magistrate Judge Duffy states that "defendants assert they have a legitimate penological objective." Docket 188 at 64. Maday argues that Magistrate Judge Duffy made this argument for defendants. *Id.* Yet, as noted above, defendants provided this argument in their brief and supporting affidavit of Kaemingk. Docket 126 at 90; Docket 129 ¶ 7. Also, Maday argues that a penological interest cannot exist when there is a retaliatory act and that this is a genuine

issue of material fact. Docket 192 at 14. In his objections to the report and recommendation and his amended complaint, Maday alleges a retaliatory action by Grosshuesch in denying the letter from Dr. Nelson. *Id.*; Docket 94 at 19.

Maday presents no facts to support this retaliation claim. Instead, Maday states that the policy Grosshuesch cited in his affidavit (Docket 126-120) became effective on April 17, 2018, but Grosshuesch's rejection notice is dated March 13, 2018. The court reviewed policy 1.5.D.3. Docket 126-120. The policy was revised on April 17, 2018. *Id.* at 19. The revisions from April of 2018 do not appear to have changed the colored paper restrictions. *See id.* Thus, the fact that the policy prohibited colored paper before Maday filed the current action goes against his retaliation claim.

Because Maday failed to present evidence to support his retaliation claim, Maday speculates that Grosshuesch rejected the letter in retaliation for Maday filing this action. Speculative and conclusory allegations cannot support a retaliation claim. *Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999) (per curiam); *Atkinson v. Bohn,* 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam). Additionally, the court previously stated that defendants presented a rational penological concern for restricting colored paper. *See Sisneros v. Nix*, 95 F.3d 749, 752-53 (8th Cir. 1996) (stating plaintiff could not satisfy the test for retaliation because his transfer was motivated by rational penological concerns); *Goff v. Burton,* 7 F.3d 734, 738 (8th Cir. 1993) ("[I]f the discipline which the prisoner claims to have been retaliatory was in fact imposed for an

actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail."). Thus, this objection is overruled.

Because the court overruled all of Maday's objections to his denial of mail claim, the court adopts Magistrate Judge Duffy's analysis and conclusion. The court grants summary judgment in favor of defendants on this claim.

### E. Rejection of Letter from Maday's Brother

In his amended complaint, Maday alleges that Grosshuesch violated his First Amendment rights when a letter sent to Maday was refused and returned to sender. Docket 94 at 8, 17. In the report and recommendation, Magistrate Judge Duffy recommended that the court grant summary judgment on this claim. Docket 188 at 68.

Maday makes two objections to this portion of the report and recommendation. He argues that this denial is a violation of his First Amendment rights and is "exacerbated by the fact that it was a retaliatory act." Docket 192 at 14. In the report and recommendation, Magistrate Judge Duffy found that Maday did not state a constitutional claim because she interpreted his claim as defendants' failure to follow the policy. Docket 188 at 65. Maday's amended complaint alleges that he never received notice from the mailroom that the letter from his brother was rejected. Docket 94 at 8. In response to Maday's IRR, Vogit stated that when it is apparent that a letter contains contraband, the letter will be rejected without being opened. *Id.* Maday alleged that "this [was] contrary to policy[.]" *Id.* He argues that policy 1.5.D.3 provides

that incoming letters will be opened and inspected. *Id.* The court interprets Maday's claim as defendants' failure to follow their own policy. For the reasons stated above, defendants' failure to follow their own policy is not a constitutional claim. *See Moore*, 126 F. App'x at 760. This objection is overruled.

As to the retaliatory act claim, Maday again fails to present evidence to support the claim. In his affidavit, Maday states that defendants cite to the current version of policy 1.5.D.3 that went into effect on April 17, 2018. Docket 174 at 88. He alleges that "the complete denial of the correspondence . . . was therefore, more likely than not, an act of retaliation by Defendant Grosshuesch." *Id.* The court cannot find any facts submitted by Maday to demonstrate that Grosshuesch rejected the mail in retaliation for Maday's filing of the case and not because of legitimate penological reasons as contemplated by the policy. As stated above, conclusory and speculative allegations cannot support a retaliation claim. *Cooper*, 189 F.3d at 784. Thus, this objection is overruled.

Because the court overruled all of Maday's objections to the rejection of his brother's letter, the court adopts Magistrate Judge Duffy's analysis and conclusion as to this claim. The court grants summary judgment in favor of defendants.

### F. Denial of Access to the Courts Claims

In his complaint, Maday alleges that South Dakota DOC staff, Dooley, Stanwick-Klimek, Schieffer, Reyes, Catherine Schlimgen, and Wisconsin DOC

staff, Jon E. Litscher, Katharine A. Ariss, and Thomas P. Maloney, denied him

access to Wisconsin case law and other legal resources that caused him to

miss his deadline to file a writ of certiorari to the United States Supreme Court

and prevented him from filing his Wisconsin state habeas petition. Docket 1 ¶¶

100-03, 141. Maday alleges that these actions are a violation of his First, Fifth,

Sixth, and Fourteenth Amendment rights. *Id.* ¶ 141. In the report and

recommendation, Magistrate Judge Duffy recommended that the court grant

summary judgment in favor of defendants on all of Maday's denial of access to

the courts claims. Docket 188 at 77.

Maday made several objections to this portion of the report and

recommendation. Docket 192 at 14-18. Many of the objections are to non-

dispositive matters, and therefore, the court will not address them. The court

finds that there are four substantive objections. First, Maday objects to

Magistrate Judge Duffy's summary of the procedural history of Maday's

criminal case and post-conviction relief. *Id.* at 14 (citing Docket 188 at 71).

Maday argues that Magistrate Judge Duffy affords preferential treatment to

materials submitted by defendants when the information is "clearly erroneous."

*Id.* In the report and recommendation, Magistrate Judge Duffy stated that

"defendants have provided the context necessary to evaluate Mr. Maday's

claims." Docket 188 at 71. Maday argues that his verified complaint provides

the context necessary to evaluate his claim. Docket 192 at 14.

In support of the court's procedural history summary, Magistrate Judge

Duffy cites to materials in the record submitted by defendants. *See* Docket 188

at 71-73. This evidence includes: the United States District Court for the District of Wisconsin's opinion and order (Docket 126-125); the case summary of Maday's criminal conviction in Columbia County, Wisconsin from the Wisconsin courts' website (Docket 126-126); the Wisconsin Supreme Court's opinion (*Wisconsin v. Maday*, 892 N.W.2d 611 (Wis. 2017)); the Wisconsin Court of Appeal's opinion (*Wisconsin v. Maday*, 2015 WL 6509465 (Wis. Ct. App. Oct. 29, 2015)). Maday's verified complaint (Dockets 1, 94) and affidavit (Docket 174) provide no facts about the procedural history of Maday's case. Additionally, Maday did not dispute the evidence submitted by defendants. Thus, the court finds all the information contained within the record is properly considered. Fed. R. Civ. P. 56(e)(2). Thus, this objection is overruled.

Maday notes that Magistrate Judge Duffy provides two erroneous statements in her summary. First, Maday states that Magistrate Judge Duffy was incorrect when she stated that Maday's counsel filed a state habeas petition. Docket 192 at 14 (citing Docket 188 at 71-72). Maday alleges that his appellate counsel filed a direct appeal. *Id.* The Wisconsin case summary shows that a motion for postconviction relief under Wis. Stat. Ann. § 809.30 was filed by Maday's counsel on October 23, 2014. Docket 126-126 at 6. On December 10, 2014, Andrew W. Voigt noted an event in the court summary entitled "Writ of Habeas Corpus" and issued his order denying Maday's motion for post-conviction relief on February 2, 2015. *Id.* at 5. The court does not need to resolve this dispute as it is not dispositive.

Second, Maday argues that Magistrate Judge Duffy incorrectly states that Maday's petition was filed on December 10, 2014. Docket 192 at 14-15 (citing Docket 188 at 72 n.13). The court's review of the evidence shows that the report and recommendation incorrectly recites this fact. Assistant State Public Defender, Steven D. Grunder, filed Maday's motion for postconviction relief on October 23, 2014. Docket 126-126 at 6; *see* Docket 126-126 at 1, 6 (noting Grunder represented Maday from November 24, 2014 to April 15, 2015). Andrew W. Voigt was the judge presiding over the motion. *See id.* at 5 (order by Voigt allowing C.M. to visit Maday). Thus, the court modifies this portion of the report and recommendation to state that Assistant State Public Defender, Steven D. Grunder, filed Maday's motion for postconviction relief on October 23, 2014. Overall, both of these errors in the report and recommendation are non-dispositive.

For Maday's second substantive objection, Maday objects to Magistrate Judge Duffy's finding that defendants satisfied their obligation to provide access to the courts because Maday had counsel throughout his first state habeas proceeding. Docket 192 at 16 (citing Docket 188 at 74). Maday argues that there is no rational reason why Magistrate Judge Duffy thinks that a defendant has no right to assist his attorney with preparation of a criminal defense. *Id.* The right of access to the courts may be protected where prison officials either provide prisoners with adequate law libraries or provide them with assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Here, Magistrate Judge Duffy is correct that defendants did

not need to provide Maday with access to legal resources because he was represented by counsel. This objection is overruled.

Next, Maday objects to Magistrate Judge Duffy's finding that Maday was not entitled to Wisconsin law in order to pursue a petition for a writ of certiorari. Docket 192 at 17 (citing Docket 188 at 74-75). Maday argues that "[d]espite Magistrate [Judge] Duffy's assertion to the contrary," Wisconsin statutes and administrative code provide that plaintiff should have been granted access to Wisconsin legal resources from the first day of his incarceration in South Dakota. *Id.* The statutes and codes relied upon by Maday do not state that Maday must be given access to legal materials. *See id.* (citing Wis. Stat. Ann. §§ 301.21(1m)(a)(10), 302.25(4)(e), 302.26; Wis. Admin. Code DOC § 309.155). Generally, the sources say that inmates confined outside of Wisconsin have the same legal rights as inmates confined in Wisconsin. *See* Wis. Stat. Ann. § 302.25(4)(e). "The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." *Id.* Even if Maday was held in custody in a Wisconsin prison, Maday had no legal right to access legal resources because he was represented by counsel. *See Bounds*, 430 U.S. at 828; *Wise v. Kaiser*, 371 F. App'x 673, 674 (7th Cir. 2010) ("Because access to legal materials is required only for unrepresented litigants, the state was not required to provide [represented defendant] with anything more." (internal quotation omitted)). The fact that the South Dakota DOC did not grant Maday access to Wisconsin legal

resources did not deprive him of any legal right that an inmate in Wisconsin would have.

Additionally, the Wisconsin administrative codes state the requirements for providing inmates access to the judicial process and legal materials. *See* Wis. Admin. Code DOC § 309.155. "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' " *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quoting *Bounds*, 430 U.S. at 825). Defendants complied with the administrative code because they did not interfere with Maday's communication with and representation by his appointed counsel. Wisconsin law does not require defendants to provide Maday with representation to counsel and access to legal resources. This objection is overruled.

Lastly, Maday objects to a footnote contained in Magistrate Judge Duffy's discussion that Maday did not exhaust his administrative remedies as it applies to Maday's denial of legal mail claim. Docket 192 at 18 (citing Docket 188 at 75 n.14). In the report and recommendation, Magistrate Judge Duffy recommended the court dismiss Maday's legal mail claim because he did not file an AR and therefore, did not exhaust his administrative remedies. Docket 188 at 75. Maday does not object to this conclusion by Magistrate Judge Duffy. Instead, Maday objects to the footnote where Magistrate Judge Duffy applied policy 1.5.D.3 to the letter Maday addressed to the Wisconsin State Bar. *Id.* at 75 n.14; Docket 192 at 18. Maday argues that Magistrate Judge Duffy litigates

for defendants when she states that the letter is not considered legal mail under the policy. Docket 192 at 18.

Though Maday did not object to Magistrate Judge Duffy's failure to exhaust administrative remedies finding, the court finds that Maday exhausted his administrative remedies. In response to defendants' arguments that he did not exhaust, Maday stated that he was unable to file an AR because DeJong refused to provide him with a form. Docket 174 at 96. "Inmates are excused from exhausting remedies when officials have prevented prisoners from utilizing the procedures[.]" *Porter*, 781 F.3d at 452 (internal quotation omitted). Because DeJong prevented Maday from completing an AR, the court finds that Maday exhausted all the remedies available to him.

In reviewing Maday's claim that defendants denied him access to the court by failing to mail the letter addressed to an attorney at the Wisconsin State Bar address, the court agrees with Magistrate Judge Duffy's analysis in the footnote. *See* Docket 188 at 75 n.14. Maday argues that the letter is legal mail because it was addressed to an attorney and he should not have to pay postage. Docket 127 ¶¶ 42-43. The letter is addressed to "Atty Deanne M. Koll c/o State Bar of WI." Docket 173-1 at 24. The address on the letter is the mailing address to the State Bar of Wisconsin. Docket 127 ¶ 44.

The policy defines privileged or legal correspondence as mail directly to or from a court, judge, or attorney. Docket 126-120 at 2. Attachment 1 to policy 1.5.D.3 provides examples of outgoing correspondences that are not considered legal mail; the South Dakota State Bar association is listed as an example.

Docket 127 ¶¶ 42-43. Thus, if mail sent to the South Dakota State Bar Association is not legal mail, then mail sent to the Wisconsin State Bar Association is not legal mail. If Maday sent the letter directly to attorney Deanne Koll's office, it would be classified as legal correspondence under the policy. Furthermore, defendants did not prohibit Maday from sending this letter in its entirety; they returned the letter to Maday and asked him to pay for postage. Requiring Maday to pay postage for a non-legal letter does not constitute a denial of Maday's access to the courts. Thus, Maday's objection as it pertains to Magistrate Judge Duffy's analysis on the policy is overruled.

Because the court overruled all of Maday's objections to his denial of access to the courts claims, the court adopts Magistrate Judge Duffy's analysis and conclusion. The court grants summary judgment in favor of defendants on the denial of access to Wisconsin law claim. Additionally, Maday did not object to Magistrate Judge Duffy's findings as it pertains to the elimination of the contract attorney and the law library. Thus, the court adopts the report and recommendation as it pertains to these claims, and grants summary judgment in favor of defendants on the contract attorney and law library claims.

As to the legal mail claim, the court modifies Magistrate Judge Duffy's report and recommendation to state that Maday exhausted his administrative remedies on his legal mail claim, and the court grants summary judgment on the legal mail claim

### G. Retaliation Claims

In his complaint, Maday alleges that defendants Klimek, Cropper, Thomas Huitema, Grosshuesch, and Michael Meyer retaliated against him by placing him in the SHU, interfering with his mail, and taking his personal property because Maday filed complaints and grievances. Docket 1 ¶¶ 142-43; Docket 94 at 10-12, 18-19. In the report and recommendation, Magistrate Judge Duffy recommended that the court grant summary judgment on all Maday's retaliation claims. Docket 188 at 84, 87-88. Maday filed three objections to the portion of the report and recommendation that discusses the SHU and the mail. Docket 192 at 18. Because Maday does not object to Magistrate Judge Duffy's findings about the arch support retaliation claim (Docket 188 at 87), the court adopts the report and recommendation and grants summary judgment on this claim.

### A. Segregation in the SHU

The first two objections relate to the claims of being placed in the SHU. First, Maday objects to Magistrate Judge Duffy's conclusion that summary judgment should be granted. Docket 192 at 18. Maday argues that he provided an affidavit and exhibits that showed defendants acted in a "questionable manner" and thus, raises a genuine issue of material fact. *Id.*

To establish a retaliation claim, Maday must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the

protected activity." *Spencer v. Jackson Cty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). In order to succeed on a retaliation claim, a plaintiff must show that the "adverse action taken against him was 'motivated at least in part' by his protected activity . . . ." *Id.* (quoting *Revels*, 382 F.3d at 876). Although " '[t]he causal connection is generally a jury question, . . . it can provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury.' " *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012) (alteration in original) (quoting *Revels*, 382 F.3d at 876).

Maday's affidavit and exhibits provide very little facts for the court to find that his placement in the SHU on two occasions was "motivated at least in part" by his protected activity. In his complaint, Maday alleges that on January 9, 2017, he filed a second grievance with PREA implications concerning "predatory homosexual behaviors." Docket 1 ¶ 115; Docket 126-113. Defendants do not dispute this statement. Docket 128 ¶ 35. In his complaint, Maday alleged that he was placed in the SHU because defendants wanted to "punish him" for filing his second PREA complaint. Docket 1 ¶ 115. Maday provides no other facts to support his claim that the filing of the PREA complaint was the motivating factor for the SHU placement. *See Cornell v. Woods,* 69 F.3d 1383, 1387-88 (8th Cir. 1995) (holding inmate must show that impermissible retaliation was actual motivating factor for transfer).

Conversely, defendants state Maday was sent to the SHU under policy 1.3.E.6, PREA Response and Investigation of Sexual Abuse/Harassment.

Docket 128 ¶ 35. The policy provides that an inmate may be held in involuntary segregated housing for a maximum of 24 hours while the assessment is completed. *Id.* ¶38; *see also id.* ¶¶ 36-37. Later, Maday alleged that he was placed in the SHU in January because he filed grievances against Klimek. Docket 174 at 101. Yet Maday does not provide any evidence of said grievances that would allow the court to see whether a causal connection exists. Speculative and conclusory allegations cannot support a retaliation claim. *Cooper*, 189 F.3d at 784; *Atkinson,* 91 F.3d at 1129.

As to the April 2018 SHU incident, Maday's claim fails again. The only evidence presented by Maday is that Sergeant Tycz lead him to the SHU and told Maday that defendant Klimek told Tycz to put Maday in the SHU. Docket 94 at 11; Docket 172 ¶ 265. Maday was placed in a holding cell next to the entrance of the SHU. Docket 94 at 11. Maday was released moments later when Tycz told Maday that Maday was not supposed to be placed in the SHU. Docket 172 ¶ 266. Maday failed to present any evidence of a protected activity that would have been a motivating factor behind this action. Again, speculative and conclusory allegations cannot support a retaliation claim. *Cooper*, 189 F.3d at 784; *Atkinson,* 91 F.3d at 1129. Thus, this objection to Magistrate Judge Duffy's recommendation to grant summary judgment is overruled.

Maday's second objection is to Magistrate Judge Duffy's reliance on Klimek's affidavit where he alleged that the April 2017 SHU incident was a mistake. Docket 192 at 18 (citing Docket 188 at 83). Maday argues that Magistrate Judge Duffy affords preferential treatment to defendants' submitted

material and is an impermissible credibility determination. *Id.* Maday argues that he pointed out defendants provided contradictory information. *Id.*

In the report and recommendation, Magistrate Judge Duffy discusses the April 2017 SHU incident and notes that Klimek stated this incident occurred because of a mistake. Docket 188 at 83 (citing Docket 130 ¶¶ 41-44). Magistrate Judge Duffy could not give preferential treatment to defendants' materials on this issue because there was no opposing evidence in the record. Maday and defendants presented the same facts concerning this incident. Docket 140 ¶¶ 265-66; Docket 174 at 103. Thus, the only information presented to the court on the rationale of the incident is defendants. And when Maday failed to properly address defendants' assertions of fact, Magistrate Judge Duffy permissibly considered the facts to be undisputed. Fed. R. Civ. P. 56(e)(2). Thus, this objection is overruled.

Because the court overruled all of Maday's objections to his SHU retaliation claims, the court adopts Magistrate Judge Duffy's analysis and conclusion as to these claims. The court grants summary judgment in favor of defendants.

### B. Censorship of Maday's Mail

In the report and recommendation, Magistrate Judge Duffy provided an analysis and recommendation on Maday's claim that defendants retaliated against him by censoring his mail. Docket 188 at 87-88. Maday objects and states that there was no reason for this analysis because he never claimed his 2015 Sports Illustrated Swimsuit Edition magazine was confiscated in

retaliation. Docket 192 at 18. In his amended complaint, Maday makes a general allegation that Grosshuesch retaliated against Maday after Maday named Grosshuesch in the lawsuit by "censoring [Maday's] mail[.]" Docket 94 at 19. If Maday states that this should not be construed as a retaliation claim, then the court will not construe it so. Thus, this objection is sustained. The court finds that Maday did not state or allege a retaliation claim as it relates to the confiscation of his 2015 Sports Illustrated Swimsuit Edition magazine.

Maday did not object to any other portion of the report and recommendation as it relates to the retaliation by censoring mail claims. The court adopts Magistrate Judge Duffy's analysis and conclusion as to these claims. The court grants summary judgment in favor of defendants.

## H. ADA Claims

In his complaint, Maday states four claims alleging defendants violated the ADA. Maday's objections only pertain to his diabetic diet, recreation, and diabetic sock claims.

Because Maday did not object to Magistrate Judge Duffy's other findings under the ADA discussion, the court adopts her analysis and conclusions. Thus, the court grants summary judgment in favor of defendants on all of Maday's ADA claims against each defendant whose job it is to render medical care to inmates: Hanvey, Schroeder, Tolsma-Hanvey, Rabbass, Myer, Fejfar, Klawitter, and all unknown employees of the DOH. Docket 188 at 91-92. The court also grants summary judgment in favor of defendants on all ADA claims against all defendants in their individual capacities because there is no

individual liability under the ADA. *Id.* at 92. Next, the court grants summary judgment on all claims for monetary damages under the ADA because Maday does not allege that defendants violated his ADA rights because of intentional discrimination. *Id.* at 106. The court grants summary judgment on Maday's punitive damages claims to the extent that the claim is based on ADA violations because punitive damages are not allowed under the ADA. *Id.* As to the mobility accommodations, the court finds that Maday's request for injunctive relief and declaratory relief are moot because Maday is no longer mobility-impaired and is not entitled to compensatory damages. *Id.* at 114-15.

**A. Recreation**

In his complaint, Maday claims that defendants violated the ADA because Maday could not use the recreation yard due to a schedule conflict with his blood glucose level checks and the recreation yard's uneven/rocky terrain and broken sidewalks. Docket 1 ¶ 145. In the report and recommendation, Magistrate Judge Duffy found that the only remedy available to Maday on this claim was prospective injunctive relief, and thus, Maday's allegation based on the lack of access to recreation time/facilities was moot. Docket 188 at 109.

Maday has two objections to this portion of the report and recommendation. First, Maday objects to Magistrate Judge Duffy's finding that Maday raised a new claim in his affidavit when he stated that the recreation yards were too crowded to use. Docket 192 at 19 (citing Docket 188 at 110). Maday argues that Magistrate Judge Duffy misconstrues his affidavit. *Id.*

Maday states that he was not attempting to amend his claim but was providing context concerning the accommodations defendants claim they made. *Id.*

Maday only alleged three issues with the recreation time/facilities in his complaint: scheduling conflict, uneven and rocky terrain, and broken sidewalks. Docket 1 ¶¶ 123, 124, 145. Maday's assertion about overcrowding in the recreation yard is a new allegation that should have been placed in his amended complaint and not in his affidavit. Even if the court considered this allegation to be Maday providing context, it has no impact on Magistrate Judge Duffy's finding on this claim. Magistrate Judge Duffy's holding was based on mootness, not on the reasonableness of the accommodations. Docket 188 at 109-10. Thus, this objection is overruled.

Next, Maday objects to Magistrate Judge Duffy's discussion on the new recreation area. Docket 192 at 18 (citing Docket 188 at 108). Maday argues that Magistrate Judge Duffy was not provided an accurate accounting on the actual size of the recreation yard. *Id.* at 19. He states that based on a few photos, Magistrate Judge Duffy assumes the recreation area is adequate. *Id.* Magistrate Judge Duffy reviewed three photos submitted by defendants. Dockets 126-91 to 126-93. Maday never disputed whether these photos were accurate representations of the size and condition of the recreation area. Instead, Maday's arguments focused on the "parking lot" recreation area, which is no longer in use, and the crowdedness of the area. Docket 174 at 78; Docket 130 ¶ 34. Because there was no evidence in the record that disputed the adequacy of the size and condition of the recreation area, Magistrate Judge

Duffy permissibly reviewed the photos and determined them to be adequate. *See* Fed. R. Civ. P. 56(e)(2).

Because the court overruled all of Maday's objections to his ADA recreation claims, the court adopts Magistrate Judge Duffy's analysis and conclusion to this claim. The court finds Maday's allegations based on lack of access to recreation time/facilities is moot.

## B. Diabetic Diet

In his complaint, Maday claims that the DOC and DOH violated his rights under the ADA because they failed to provide him a diabetic diet. Docket 1 ¶ 144. In the report and recommendation, Magistrate Judge Duffy recommended that the court grant summary judgment in favor of defendant on Maday's ADA diabetic diet claim. Docket 188 at 113.

Maday has one objection. He argues that Magistrate Judge Duffy made an impermissible credibility determination when she found that Maday's exhibit (Docket 173-1 at 33-56) supported defendants' position. Docket 188 at 112. Maday alleges that the highlighted portions of the report show defendants did not provide a diabetic diet. Docket 192 at 19. Maday contends that if Magistrate Judge Duffy interpreted the report differently, then this establishes there is a genuine issue of material fact. *Id.*

This is not a disputed fact. Both parties agree that the report is an accurate representation of the independent dietician's investigation and survey of the food at South Dakota's prisons. Neither party disputes any of the facts or statements contained in the report. In his affidavit, Maday states that CBM

employees would hand him a heart healthy diet tray, though he was prescribed a diabetic diet tray. Docket 174 at 48. In the report, the dietician noted that defendants provide a diabetic-heart healthy diet—so a heart healthy diet tray and diabetic diet tray are the same. Docket 173-1 at 40. Thus, the report Maday relies on is the same report that negates his claim. This objection is overruled.

Because the court overruled Maday's objection about his ADA diabetic diet claim, the court adopts Magistrate Judge Duffy's analysis and conclusion. The court grants summary judgment in favor of defendants on Maday's ADA diabetic diet claim.

### C. Diabetic Shoes and Socks

In his complaint, Maday alleges that defendants violated the ADA when they failed to provide him with proper fitting shoes and diabetic socks in compliance with his medical orders. Docket 1 ¶ 146. In the report and recommendation, Magistrate Judge Duffy recommended that the court grant summary judgment on these claims because defendants fulfilled their obligations to provide reasonable accommodations by giving Maday diabetic shoes and appropriate hosiery. Docket 188 at 113-14.

Maday makes three objections to this portion of the report and recommendation. Docket 192 at 19. First, Maday objects to Magistrate Judge Duffy's determination that defendants accommodated Maday by issuing him three pairs of shoes in the first year. *Id.* (citing Docket 188 at 113). Maday argues that this is incorrect because defendants issued Maday three pair of

shoes that year for hygiene and wear-and-tear issues. *Id.* Regardless of the number of replacement pairs defendants issued, there is no dispute in the facts that Maday was issued wide shoes to accommodate his diabetes.

When Maday arrived at the SDSP, he was issued a pair of narrow canvas shoes. Docket 1 ¶ 40. The shoes immediately caused issues. *Id.* Upon his arrival to MDSP, Maday sent a kite for wider shoes. *Id.* ¶ 41. A few days later, Maday was issued a pair of wide leather shoes with velcro closures. *Id.*; Docket 140 ¶ 17; Docket 172 ¶ 17. And once medical staff issued a medical order for New Balances, Maday received them. Docket 1 ¶¶ 57-58; Docket 174 at 3-4. Thus, Maday was issued two different types of shoes to accommodate his diabetic feet between his arrival in South Dakota in August of 2013 and the issuance of his New Balances in January of 2015. The court agrees with Magistrate Judge Duffy and finds that defendants fulfilled their obligation for reasonable accommodations by issuing Maday two different types of footwear for diabetics. This objection is overruled.

Second, Maday objects to Magistrate Judge Duffy's finding that defendants gave Maday the diabetic socks he requested, though not the specific brand. Docket 192 at 19 (citing Docket 188 at 113). Maday argues that he never requested diabetic socks; he only requested better fitting socks. *Id.* It is undisputed that Maday has a medical order for diabetic socks. Docket 174 at 41; Docket 126-28. The same day the medical order was issued, November 24, 2014, Maday received diabetic socks from laundry. Docket 174 at 41. It should be noted that laundry issued socks Maday considered properly fitting at some

point because Maday stated he was issued two pair of socks that fit appropriately in his AR. Docket 126-31. It is also undisputed that Maday made requests for "better fitting socks." Docket 174 at 43; Docket 126-29; Docket 126-31. Magistrate Judge Duffy's wording that defendants gave Maday "the diabetic socks he requested" encompasses properly fitting diabetic socks. This objection is overruled.

Third, Maday objects to Magistrate Judge Duffy's finding that PA Adams said the socks were the correct size. Docket 192 at 19 (citing Docket 188 at 113-14). Maday argues that this is not correct. This objection is the same as the objection Maday made for his deliberate indifference sock claim. For the reasons stated above, *see supra* Part I.G., this objection is overruled.

Because the court overruled Maday's objections on his ADA diabetic socks and shoes claims, the court adopts Magistrate Judge Duffy's analysis and conclusion on these claims. The court grants summary judgment in favor of defendants.

## CONCLUSION

Thus, it is ORDERED:

1. Maday's objections (Docket 192) are overruled except as follows:

    a. On Heel Pain Credibility (Docket 192 at 7).

    b. On Exhaustion of Administrative Remedies for 2016 Sports Illustrated (Docket 192 at 10).

    c. On Censorship Retaliation Claim (Docket 192 at 18).

2. The report and recommendation (Docket 188) is adopted as modified.

3. Defendants' motions for summary judgment (Dockets 125, 145) are

   granted on all claims as to all defendants except as follows:

   a. On Maday's injunctive relief claims regarding the 2015 and

      2016 Sports Illustrated Swimsuit Edition magazines against

      defendants St. Pierre and Grosshuesch in their official capacity.

Dated September 30, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE