UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| STANLEY J. MADAY,<br><br>              Plaintiff,<br><br>vs.<br><br>**MIKE GROSSHUESCH**, Correctional Officer at Mike Durfee State Prison, Official Capacity; and **NICOLE ST. PIERRE**, Correctional Officer at Mike Durfee State Prison, Official Capacity,<br><br>              Defendants. | 4:17-CV-04168-KES<br><br>ORDER GRANTING ST. PIERRE AND GROSSHUESCH'S RENEWED MOTION FOR SUMMARY JUDGMENT |

      Plaintiff, Stanley J. Maday, a prisoner currently in custody at the Mike Durfee State Prison (MDSP), originally filed this action against numerous Wisconsin and South Dakota defendants alleging claims under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act. Docket 1. The court granted defendants' motions for summary judgment on all claims, except Maday's injunctive relief claims against defendants Nicole St. Pierre and Mike Grosshuesch in their official capacity regarding the 2015 and 2016 Sports Illustrated Swimsuit Edition magazines (SI magazines). Docket 199. Following that decision, St. Pierre and Grosshuesch filed a renewed motion for summary judgment on the injunctive relief claims. Dockets 204. Maday did not oppose the renewed motion. For the following reasons, the court grants St. Pierre and Grosshuesch's renewed motion for summary judgment.

**FACTUAL BACKGROUND**

A comprehensive overview of the facts giving rise to this litigation is provided by the opinion issued by this court on September 30, 2019. *See* Docket 199. The following will summarize the portions of those facts most relevant to the issues currently under consideration and will continue to view all facts in a light most favorable to Maday as the nonmoving party.[1]

The 2014 version of the South Dakota Department of Corrections (SDDOC) pornography policy (2014 policy) prohibits inmates from purchasing, possessing, or attempting to possess "pornographic materials." Docket 126-100 at 1. In pertinent part, the 2014 policy provides as follows:

> **Pornographic Material:**
> Includes books, articles, pamphlets, magazines, periodicals, or any other publications or materials that feature nudity or "sexually

---

[1] Under Local Rule 56.1, motions for summary judgment "must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." D.S.D. Civ. LR 56.1A. And typically, "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. Civ. LR 56.1D. St. Pierre and Grosshuesch, however, did not file a statement of material facts with their renewed motion; instead, they filed a brief in support of the motion, as well as two accompanying affidavits. Dockets 205-207. Maday did not file anything in opposition to the renewed motion. Presumably, both sides wish to rely on their statements of material facts filed in conjunction with the original motion for summary judgment. Docket 140; Docket 172. Out of fairness and because neither side filed a statement of material facts with respect to the renewed motion as required by local rule, the court will assume any new facts raised in the renewed motion and accompanying affidavits are admitted but that Maday continues to dispute facts previously objected to. *See generally Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993) ("Even if a motion for summary judgment on a particular claim stands unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law on that claim.").

explicit" conduct. Pornographic material may also include books, pamphlets, magazines, periodicals or other publication or material that features, or includes photographs, drawings, etchings, paintings, or other graphic depictions of nudity or sexually explicit material.

**Nudity:**
"Nudity" means a pictorial or other graphic depiction where male or female genitalia, pubic area, buttocks or female breasts are exposed. Published material containing nudity illustrative of medical, educational or anthropological content may be excluded from this definition.

**Sexually Explicit:**
"Sexually Explicit" includes written and/or pictorial, graphic depiction of actual or simulated sexual acts, including but not limited to sexual intercourse, oral sex or masturbation. Sexually explicit material also includes individual pictures, photographs, drawings, etchings, writings or paintings of nudity or sexually explicit conduct that are not part of a book, pamphlet, magazine, periodical or other publication.

*Id.* Pornographic materials are considered contraband, and "[a]ny offender found in violation of [the] policy may be subject to disciplinary action." *Id.* at 1-2. The warden or superintendent of each SDDOC institution is directed to "ensure procedures are in place to prevent pornographic material from being brought into the institution." *Id.* at 2. The 2014 policy provides that "[a]ll incoming and outgoing correspondence or publications depicting pornography or containing pornographic material will be rejected . . . ." *Id.* An administrative appeals process is available to offenders who disagree with decisions by prison staff that a particular item satisfies the definition of pornography. *Id.*

Back in 2013, Maday was convicted of three counts of first-degree sexual assault of a child in Wisconsin state court. Docket 1 ¶ 4; *see Wisconsin v. Maday*, 892 N.W.2d 611 (Wis. 2017). Maday, a former Wisconsin corrections

3

officer, is currently in custody at the MDSP, a SDDOC facility, because Wisconsin believed it would be best for Maday not to serve his sentence at the prison where he was formerly employed. Docket 1 ¶ 4; *see* Docket 140 ¶ 1. South Dakota and Wisconsin have an agreement that allows for such an arrangement. Docket 140 ¶ 1.

In February of 2015, Nicole St. Pierre, a mailroom supervisor at MDSP, denied Maday access to the February 2015 Sports Illustrated Swimsuit Edition magazine. Docket 140 ¶ 184; Docket 172 ¶ 184; Docket 126-95. St. Pierre attested that the 2015 edition magazine was denied on the grounds that it was " 'sexually explicit' and contained 'nudity,' " as prohibited by the 2014 policy. Docket 135 ¶ 10. The following year, Mike Grosshuesch, a different mailroom supervisor at the prison, denied Maday access to the February 2016 version of the Sports Illustrated Swimsuit Edition magazine. Docket 140 ¶ 184; Docket 172 ¶ 184. Grosshuesch denied the 2016 edition magazine on the grounds that it contained sexually explicit material and nudity, again in violation of the 2014 policy. Docket 140 ¶ 184; Docket 172 ¶ 184.

After exhausting his administrative remedies, Maday filed suit seeking monetary damages and injunctive relief on the grounds that St. Pierre and Grosshuesch violated his First Amendment rights by confiscating the magazines. Docket 1 ¶¶ 138-39, 154. He sued St. Pierre and Grosshuesch in their individual and official capacities. *Id.* ¶¶ 27-28. This court granted summary judgment in favor of St. Pierre and Grosshuesch based on qualified immunity with respect to Maday's monetary damages claims for the SI

4

magazines. Docket 199. In denying the motion for summary judgment on the injunctive relief claims against St. Pierre and Grosshuesch in their official capacities, this court reasoned:

> Qualified immunity only protects defendants from claims for monetary relief in their individual capacity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "[S]tate officials may be sued in their official capacity for equitable relief." *Grantham v. Trickey*, 21 F.3d 289, 295 (8th Cir. 1994). Defendants failed to address Maday's injunctive relief claim against defendants in their official capacity. Defendants did not provide any argument on whether a constitutional right exists in general, did not provide any discussion on the supporting rationale to South Dakota DOC's pornography policy, and they did not discuss the Turner factors. See *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Thus, Maday's injunctive relief claim as to defendants in their official capacity survives summary judgment.

*Id.* at 46-47. Citing their belief that "they were [not] at liberty[] in their 'motion based on the qualified immunity defense,' to address Maday's claim for injunctive relief," St. Pierre and Grosshuesch renewed their motion for summary judgment and included arguments addressing whether Maday is entitled to the injunctive relief he has requested. Docket 205 at 4-5.

## LEGAL STANDARD

Pro se filings must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Even with this construction, "a pro se [filing] must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citing Kaylor v. Fields, 661 F.2d 1177, 1183 (8th Cir. 1981)); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Summary judgment on all or part of a claim is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the

5

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also In re Craig*, 144 F.3d 593, 595 (8th Cir. 1998). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has met this burden, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. Of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). "Further, 'the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, the dispute must be outcome determinative under prevailing law.' " *Id.* at 910-11 (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992)). The facts, and inferences drawn from those facts, are "viewed in the light most favorable to the party opposing the motion" for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

In sum, the order issued by this court on September 30, 2019, held that St. Pierre and Grosshuesch were protected by qualified immunity from claims for monetary damages because there was no "clearly established" right for

Maday to receive the SI magazines at the time they were confiscated. Docket 199 at 46, 50 (adopting the magistrate judge's qualified immunity analysis with respect to the 2015 magazine). In that order, this court found that Maday "does not challenge the pornography policy on its face, but rather, as applied to the censorship of this specific magazine." Docket 199 at 43. This conclusion is supported by the fact that Maday's complaint and briefs allege that the DOC pornography policy "as applied" to these specific magazines is an unconstitutional violation of his First Amendment rights. Docket 1 ¶¶ 96, 97; Docket 173 at 4-5; Docket 174 at 15-16.

St. Pierre and Grosshuesch now contend that they are entitled to a judgment in their favor on the official capacity claims for the same reasons that they were successful on the personal capacity claims. Maday did not respond to St. Pierre and Grosshuesch's renewed motion for summary judgement. Additionally, although Maday did file a motion asking the court to reconsider portions of its September 30, 2019, opinion, Maday did not object to or seek clarification of that portion of the opinion that characterized his challenge to the pornography as an as-applied challenge rather than a facial challenge under the First Amendment. Thus, the court will only consider whether the DOC pornography policy as applied to these specific magazines is an unconstitutional violation of Maday's First Amendment rights.

One of the most basic principles embodied in First Amendment is that "[a]s a general matter . . . government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Brown v.*

7

*Entm't Merchants Ass'n*, 564 U.S. 786, 790-91 (2011) (quoting *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002)). There are, however, exceptions to that principle. *Id.* The Supreme Court held in *Turner v. Safley,* 482 U.S. 78, 84 (1987), that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," including those protections offered by the First Amendment. But as the Eighth Circuit recently noted, "*Turner* acknowledged that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' " *Sisney v. Kaemingk*, 886 F.3d 692, 697 (8th Cir. 2018) (quoting *Turner*, 482 U.S. at 84).

Cases dealing with the constitutional rights of prisoners "require courts to strike a balance between two competing principles." *Id.*  When examining constitutional claims brought by people who are incarcerated, courts are instructed to exercise "a policy of judicial restraint," because "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner,* 482 U.S. at 84-85. *Turner* counseled additional restraint where, as here, "a state penal system is involved[.]" *Id.* at 85 (citing *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). Given these interests, "a lesser standard of scrutiny is appropriate in determin[ing] the constitutionality of prison rules." *Id.* at 81.

*Turner's* ultimate holding was that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably

8

related to legitimate penological interests." *Id.* at 89. There are four factors relevant to whether a prison regulation satisfies this test:

> (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; (4) and whether there exist alternatives to accommodate the prisoner with a *de minimis* cost.

*Murchison v. Rogers*, 779 F.3d 882, 887 (8th Cir. 2015) (quoting *Turner*, 482 U.S. at 89-91).

In the First Amendment context, prisoners may raise both as-applied and facial challenges to prison policies. *Sisney*, 886 F.3d at 697 (citing *Thornburgh v. Abbott*, 490 U.S. 401, 403 (1989)). In an as-applied First Amendment challenge as is raised herein, the court is instructed to apply the *Turner* factors outlined above to "consider 'whether a ban on *these particular items* is reasonably related to a legitimate penological objective.' " *Murchison*, 779 F.3d at 887 (quoting *Williams v. Brimeyer*, 116 F.3d 351, 354 (8th Cir. 1997)).

This court conducted an independent review of three versions of the 2016 magazine and the 2015 magazine. *See generally Murchison*, 779 F.3d at 888 (holding that the court must conduct an independent review of the evidence to verify there has not been an exaggerated response to prison concerns). The 2016 edition "contains several pictures of exposed female breasts, i.e. the entire breast is uncovered and only the nipple is covered by material or the models' hands. And in some pictures, nipples are visible

9

through sheer clothing, i.e. swimsuit top made of chain, wet light-colored material, mesh tops." Docket 199 at 44 (citations omitted). The 2015 edition "reveals multiple photographs of fully exposed female buttocks . . . [and] female breasts fully revealed through sheer material . . . ." Docket 188 at 49. Both the 2015 and 2016 magazines feature a sexually explicit theme throughout.

Because it has been determined that the content in both SI magazines is substantially similar, the court will treat both editions as one in the same for the purposes of the as-applied analysis. In determining the reasonableness of the 2014 policy as it was applied to Maday's SI magazines, the court must first consider "whether there exists a 'valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it.' " *Murchison*, 779 F.3d at 887 (quoting *Turner*, 482 U.S. at 89). "[T]he governmental objective must be a legitimate and neutral one . . . without regard to the content of the expression," but "courts must be deferential to the prison officials' views of what material may be inflammatory." *Id.* (citing *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 986 (8th Cir. 2004)).

In support of their renewed motion, St. Pierre and Grosshuesch have argued that the prohibition of this particular type of magazine within the prison walls serves a number of valid objectives: "rehabilitation of inmates, maintenance of order and security within the institution and the prevention of sexual harassment of correctional staff." Docket 206 ¶ 21. These are legitimate government objectives. *See Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993) (holding that security is a valid penological goal, and rehabilitation is a

10

legitimate objective); *see also Thornburgh*, 490 U.S. at 415 (affirming that security is central to all other corrections goals). And with regard to the neutrality requirement, there is no evidence in the record to suggest that St. Pierre or Grosshuesch's censorship of the SI magazines was done for any other purpose than to serve the objectives described above. *Dawson*, 986 F.2d at 261 (holding neutrality requirement satisfied where policy furthers government interest unrelated to suppression of expression).

With the objectives underlying the 2014 policy deemed legitimate and neutral as applied, the issue becomes whether censorship of the SI magazines within the prison is rationally related to those objectives. This "does not require 'actual proof that a legitimate interest will be furthered by the challenged policy,' only that the interest being served and the policy have an 'objectively rational' connection." *Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024, 1027 (8th Cir. 2004) (quoting *Herlein v. Higgins*, 172 F.3d 1089, 1091 (8th Cir. 1999)). Maday argues that prohibition of his magazines is "unnecessary" because any connections between allowing the magazines into the prison and possible impacts on prison security are "arbitrary." Docket 1 at 39-40. But that is not the standard. *See* 2 Michael B. Mushlin, *Rights of Prisoners* § 6:12 (5th ed. 2019) ("That there are studies that find to the contrary does not matter since the government does not have to be 'right' when it bans sexually explicit material, it only has to act 'reasonably.' "). Given the sexually explicit nature of the content featured throughout the SI magazines, it was reasonable for St.

11

Pierre and Grosshuesch to believe banning the magazines would serve legitimate governmental interests.

Maday further contends that no such rational relationship exists because in the past other inmates allegedly were able to access images in violation of the 2014 policy through their prison issued tablets. Docket 174 at 16. This argument also is without merit. That the government's policy to protect its interests can occasionally be undermined by defiance does not necessarily render the connection between the policy and its goal irrational. While *Murchison* held that "[t]he existence of similar material within the prison walls may serve to show inconsistencies in the manner in which material is censored such as to undermine the rationale for censorship," there is no evidence in the record that St. Pierre or Grosshuesch have been inconsistent in their prohibition of SI magazines in the prison. 779 F.3d at 890.

The next question is whether there are alternative means for Maday to exercise his asserted constitutional right. *Id.* at 891. Here, "courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation," and " 'the right' in question must be viewed sensibly and expansively." *Id.* (citing *Turner*, 482 U.S. at 90; *Thornburgh*, 490 U.S. at 417). The question is not whether Maday has an available alternative to view and read these particular SI magazines, but whether there are similar means of expression adequately available to him. *Thornburgh*, 490 U.S. at 418.

St. Pierre and Grosshuesch have offered evidence that inmates at SDDOC facilities are able to access a variety of books and magazines on "a wide range of subjects, including sports," through the prison library. Docket 206 ¶ 34. They even admit that prisoners have access to versions of Sports Illustrated that, unlike the swimsuit edition, do not contain nudity. *Id.* Maday argues that the SI magazines at issue contain valuable information on swimsuits. Docket 174 at 15. But after giving proper deference to prison authority, the court finds there are ample alternative means of expression that are available to Maday through the prison library.

Under the third *Turner* factor, "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner*, 482 U.S. at 90. Courts are instructed to "remember that 'prison officials may well conclude that certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of a prison.' " *Murchison*, 779 F.3d at 892 (quoting *Thornburgh*, 490 U.S. at 412).

St. Pierre and Grosshuesch have pointed to numerous adverse effects on SDDOC facilities that could result from allowing Maday to access the SI magazines. They suggest that similar such magazines have been known to be sold, rented, or bartered by inmates in violation of other SDDOC policies. Docket 207 ¶ 20. They further allege that accommodation of Maday's asserted right to view the magazines could increase the risk of assault among inmates

13

and against staff. *Id.* Maday has failed to raise any genuine dispute to these contentions and has not suggested a way that his right might be accommodated without infringing on the "liberty and safety [of] everyone else, guards and other prisoners alike." *Turner*, 482 U.S. at 92.

The fourth and final *Turner* factor provides that "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns . . . ." *Id.* (citing *Block v. Rutherford*, 468 U.S. 576 (1984)). That is, where "an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91. The *Turner* decision qualified, however, that "[t]his is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.* at 90-91.

Again, Maday has failed to raise any obvious alternatives that would fully accommodate his asserted constitutional right without compromising the valid penological interests St. Pierre and Grosshuesch are trying to protect. The court agrees that it would not be reasonable to expect SDDOC staff to go through the SI magazines and tear out the numerous images that might negatively impact the prison environment. *See* Docket 207 ¶ 28.

Maday has argued that the SI magazines do not feature nudity or sexually explicit material as defined by the 2014 policy, which suggests he

14

thinks the policy was vague as it was applied to him. It is true that "[a] fundamental tenet of due process is that to be sanctioned one must have received fair notice that one's allegedly violative conduct was prohibited," and "[i]t is beyond cavil that this principle applies within the prison setting." *Coffman v. Trickey,* 884 F.2d 1057, 1060 (8th Cir. 1989); *see also Williams v. Nix,* 1 F.3d 712, 716 (8th Cir. 1993). The plain language of the policy provides that magazines that "feature" at least one pictorial of nudity are prohibited, and there is no genuine dispute as to whether the SI magazines at issue contained at least one nude photograph. As this court held previously, both SI magazines contained numerous images of exposed buttocks and female breasts. So, to the contrary of Maday's assertions, images in the SI magazines fall squarely within the definition of "nudity" as contemplated and prohibited by the 2014 policy. Nor is a finding that the SI magazines feature a sexually explicit theme throughout an exaggerated response to prison concerns. Thus, the 2014 policy was not unconstitutionally vague as applied to Maday's SI magazines.

## CONCLUSION

Maday is not entitled to have his SI magazines returned because censorship of the SI magazines was reasonably related to a legitimate penological interest and the 2014 policy was constitutional as applied. Thus, it is

ORDERED that St. Pierre and Grosshuesch's renewed motion for summary judgment (Docket 204) is granted.

Dated August 20, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE